# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
Case No.:
Division:

H.C., a minor, by and through his parent and
natural guardian Jenny C., *et al.*, on
behalf of himself and all others similarly situated,

Plaintiffs,

v.

RIC BRADSHAW, Palm Beach County Sheriff,
in his individual and official capacity; *et al.*,

Defendants.


## DECLARATION OF SABARISH P. NEELAKANTA

I, Sabarish P. Neelakanta, pursuant to 28 U.S.C. § 1746, declare as follows:

1. I am an attorney licenses by the State of Florida and admitted to practice before this Court.

2. I have personal knowledge of the facts contained in this declaration, to which I am competent to testify.

3. Attached as Exhibit A-1, is a true and correct copy of the *Palm Beach Sheriff's Office Corrections Operating Procedures #919.00 – Inmate Rules and Disciplinary Process (eff. 07/11/16)*.

4. Attached as Exhibit A-2, is a true and correct copy of the *Palm Beach Sheriff's Office Corrections Operating Procedures #920.00 – Inmate Classification Process (eff. 03/30/16)*.

5. Attached as Exhibit A-3, is a true and correct copy of the *Palm Beach Sheriff's Office Corrections Operating Procedures #923.00 – Juvenile Admission, Classification and Housing (eff. 10/10/14)*.

6. Attached as Exhibit A-4, is a true and correct copy of the *Palm Beach Sheriff's Office Corrections Operating Procedures #932.00 – Inmate Services and Programs (eff. 01/22/15).*

7. Attached as Exhibit A-5, is a true and correct copy of the *Palm Beach County Sheriff's Office Department of Corrections – Inmate Rules & Regulations (rev. 04/18).*

8. Attached as Exhibit A-6, is a true and correct copy of the *Cooperative Agreement between the School Board of Palm Beach County, Florida and the Palm Beach County Sheriff's Office (Jail) (eff. 06/01/16).*

**I certify under penalty of perjury that the foregoing is true and correct.**

Dated: June 20, 2018 in Lake Worth, Florida

_____
Sabarish P. Neelakanta

# EXHIBIT A-1

|  Palm Beach County Sheriff's Office Corrections Operating Procedures | COP # 919.00 | Page 1 of 9 |
|---|---|---|

| SUBJECT: **Inmate Rules and Disciplinary Process** |||
|---|---|---|
| INDEX AS: **Inmate Rule and Discipline Process** |||

| ISSUED DATE: | SUPERSEDES DATE: | EFFECTIVE DATE: | REFERENCES: ACA - 4-ALDF-2A-47, 2A-50, 3A-01, 3A-02, 6C-01 |
|---|---|---|---|
| 01/04/77 | 07/13 | 07/11/16 | through 6C-18 FCAC - 7.01, 7.03 through 7.06, 7.09, 7.11 FMJS - 13.01 to 13.13 |

I. **PURPOSE:** The purpose of this Corrections Operating Procedure is to establish a list of inmate rules and guidelines for the inmate disciplinary process.

II. **SCOPE:** This Corrections Operating Procedure applies to all Sheriff's Office personnel assigned to the Department of Corrections.

III. **DISCUSSION:** Inmates will be required to conform to the standards of conduct reflected in this policy. An inmate violating any facility rule or regulation may be subject to disciplinary action under the provisions of this policy. Inmates who knowingly violate a jail rule on two or more occasions may be punishable as a misdemeanor of the second degree.

IV. **DEFINITIONS:**

A. Special Management Inmate - An individual who presents a serious threat to the safety and security of the facility, staff, general inmate population, or himself/herself.

B. Segregation Unit - A housing unit that separates inmates who threaten the security or orderly management of the institution from the general population.

C. Segregation - The confinement of an inmate to an individual cell that is separated from the general population. There are three forms of segregation:

    1. Administrative Segregation - A unit housing inmates whose continued presence in the general population poses a serious threat to life, property, self, staff, or other inmates. Administrative segregation also includes all inmates on a court ordered or administrative telephone restriction.

    2. Disciplinary Detention - A unit housing inmates found guilty of serious or repeated rule violations.

    3. Protective Custody - A status that describes inmates requesting or requiring protection from others.

D. Inmate Rulebook - Facility's rules of inmate conduct and sanctions for violations; it is provided to the inmates during the intake process.

E. Contraband - Anything not authorized for retention or receipt by the inmate and not issued through regular facility channels.

F. Disciplinary Committee - A committee of at least three members appointed by the division commander or designee to conduct a disciplinary hearing. The members may not have participated in the investigation or be named as witnesses in the case against the inmate.

G. Disciplinary Hearing Officer - An individual appointed by the division commander or designee to conduct a disciplinary hearing. The individual must hold the rank of sergeant or higher and may not have participated in the investigation or be a witness in the case against the inmate.

H. Resolution of Minor Infractions - The resolution of any minor infraction by the investigating staff member through sanctions listed in this policy.

I. Major Infractions – Category I or II offenses

J. Minor Infractions – Category III or IV offenses

| COP # 919.00 | Page 2 of 9 |
|---|---|

**V.     PROCEDURES:**

   A.     Each inmate shall be provided with a copy of the Inmate Rules & Regulations Rulebook during the admission process. Inmates will be required to sign (or initial) that they have received a copy of these rules and regulations.

   B.     The inmate is responsible for keeping their rulebook while incarcerated by the Palm Beach County Sheriff's Office (PBSO) detention facilities and returning it upon release from custody.

   C.     Staff members shall answer questions from inmates regarding the inmate rules and regulations to help them understand and follow the rules. Translation services are also provided.

   D.     All personnel that work with inmates receive sufficient training so that they are thoroughly familiar with the rules of conduct, and rationale for and the sanctions available.

   E.     Rules of inmate conduct specify acts prohibited within the facility and the range of penalties that can be imposed for various degrees of violation. The rules are reviewed annually and updated, if necessary.

   F.     An inmate is placed in disciplinary detention for a rule violation only after a hearing.

**VI.    INFRACTIONS:**

   A.     CATEGORY I OFFENSES:

      1-1     Battery of any staff member
      1-2     Sexual battery
      1-3     Making threats of sexual assault/battery to another
      1-4     Setting a fire or tampering with an electrical outlet, fixture or fire detection / suppression device
      1-5     Rioting or encouraging others to riot
      1-6     Escape, attempting or planning escape
      1-7     Possession, attempted possession, or introduction of any explosive, ammunition, or other weapon
      1-8     Throwing, tossing or expelling bodily, hazardous or chemical fluids or material

   B.     CATEGORY II OFFENSES:

      2-1     Battery of any person (other than a staff member)
      2-2     Engaging in sexual acts with others
      2-3     Fighting
      2-4     Extortion, blackmail, protection, demanding or receiving money or anything of value in return for protection against others to avoid bodily harm, or under the threat of informing
      2-5     Being in an unauthorized area
      2-6     Interfering with the taking of count
      2-7     Tampering with or blocking any locking device
      2-8     Possession or attempted possession of contraband (any item possessed by an inmate or found within the facility that is illegal by law or not authorized for retention or receipt by the inmate and not issued through regular facility channels)
      2-9     Conduct which disrupts or interferes with the security or orderly running of the institution
      2-10    Giving or offering any official or staff member a bribe, or anything of value
      2-11    Refusing to obey an order of any staff member
      2-12    Indecent exposure, lewd exhibitionism or obscene conduct
      2-13    Destroying, altering, damaging or defacing government property or the property of another person
      2-14    Making or consuming intoxicants, or being intoxicated
      2-15    Making sexual proposals
      2-16    Wearing a disguise or mask

C.   **CATEGORY III OFFENSES:**
- 3-1   Threatening another with bodily harm or any offense against his/her person or his/her property
- 3-2   Refusing to work, encouraging others to refuse to work, or participating in work stoppage
- 3-3   Engaging in or encouraging a group demonstration
- 3-4   Failing to stand count
- 3-5   Stealing (theft)
- 3-6   Insolence toward a staff member
- 3-7   Lying or providing a false statement to a staff member
- 3-8   Mutilating, altering, or misuse of issued clothing, bedding, linen, or mattress
- 3-9   Misuse of authorized medication
- 3-10  Failure to identify oneself to any staff member when requested to do so
- 3-11  Conduct that is disruptive or interferes with a regularly authorized program, service, or activity to include, but not limited to: recreation, visitation, canteen, religious programs, library, law library, substance abuse awareness programs, or clinic
- 3-12  Violation of alternative custody program rules and regulations to include, but not limited to: tampering or destroying electronic monitoring equipment, failure to return to a facility or residence, or use of intoxicants
- 3-13  Counterfeiting, forging, or unauthorized reproduction of any document, article of identification, money, security or official paper
- 3-14  Loaning of property or anything of value for profit or increased return
- 3-15  Unexcused absence from work or any assignment
- 3-16  Failing to perform work as instructed by a staff member
- 3-17  Tattooing or self-mutilation
- 3-18  Unauthorized use of mail or telephone
- 3-19  Giving money or anything of value to, accepting money or anything of value from, another inmate, a member of his/her family, or friends
- 3-20  Smoking where prohibited or possession of smoking paraphernalia
- 3-21  Failure to wear wristband (identification band)
- 3-22  Altering, damaging, or tampering with wristband (identification band)

D.   **CATEGORY IV OFFENSES:**
- 4-1   Using abusive or obscene language
- 4-2   Adulteration of any food or drink
- 4-3   Gambling, preparing or conducting a gambling pool, possession of gambling paraphernalia, trading, bartering, or gambling for food trays
- 4-4   Malingering or feigning an illness
- 4-5   Participating in an unauthorized meeting or gathering
- 4-6   Failure to follow safety or sanitation regulations
- 4-7   Using any equipment or machinery contrary to instructions or posted safety standards
- 4-8   Being unsanitary or untidy, failing to keep one's person and one's quarters clean
- 4-9   Unauthorized contact with the public
- 4-10  Correspondence or contact with a visitor in violation of posted regulations
- 4-11  Use of another inmate's identification or information for any reason is prohibited.

## VII.   DISCIPLINARY REPORTS AND HEARINGS:

A.   Any staff member witnessing or having reasonable belief that an inmate has committed a violation of the rules and regulations shall prepare an inmate disciplinary report and incident report. A separate disciplinary report and supporting documentation will be provided for each rule infraction.
- 1.   The inmate disciplinary report shall include:
  - a.   Specific rule(s) violated
  - b.   A formal statement of the charge

      c.      Any unusual inmate behavior

      d.      Staff and inmate witnesses (where the disclosure of witnesses would endanger the welfare of the inmate or staff member, the names of informants shall be maintained in a confidential file)

      e.      An explanation of the event, including details of the infraction, who was involved, what transpired the time, date and location of the occurrence

      f.      Any physical evidence and its disposition (do not attach any sharps)

      g.      Any immediate action taken by staff members, including use of control

      h.      Reporting staff member's signature, date, and time of report

2. The reporting employee shall forward the disciplinary report, along with any supporting documentation (i.e. inmate incident report) to the shift or section supervisor.

3. The supervisor shall review the report and supporting documents and cause the investigation to be completed. After the investigation has been completed, the disciplinary report is forwarded to the disciplinary coordinator.

4. The disciplinary coordinator shall log the document, attach a disciplinary hearing form, and cause the hearing process to move forward.

B. Criminal Prosecution - Where an inmate allegedly commits an act covered by criminal law, the supervisor will forward a copy of all related reports to the jail investigator. The jail investigator shall determine whether or not the information will be filed with the State Attorney's office for prosecution.

C. Pre-Hearing Segregation - Segregation is authorized for inmates who are charged with a rule violation (normally category I or II offenses) and whose continued presence in general population would pose a serious threat to themselves, other inmates, staff, property, or the security and orderly running of the facility. The watch commander or designee can order immediate segregation when it is necessary to protect the inmate or others. The division commander or designee shall review the justification for segregation within seventy two (72) hours. Inmates placed in pre-hearing segregation, who pose a serious threat to the safety of staff or others may be restricted from recreation and/or visitation pending review by the segregation review committee.

D. Investigations:

1. When an alleged rule violation is reported, the shift supervisor will cause an appropriate investigation to determine if the circumstances support the charges. The investigation shall begin within twenty four (24) hours from when the violation is reported and will be completed without unreasonable delay, unless there are exceptional circumstances for delaying the investigation.

2. An inmate charged with a rule violation shall receive a written statement of the charges (a copy of the disciplinary report), including a description of the incident and specific rule violated by the investigating officer. The inmate is given the statement at the same time that the disciplinary report is filed with the disciplinary committee but no less than twenty four (24) hours prior to the disciplinary hearing. The hearing may be held within twenty four (24) hours with the inmate's written approval. The investigator will record in the appropriate box of the disciplinary report the time, date, and his/her signature of the delivery of charges.

3. At the time the charges are delivered to the inmate, the investigator will inform the inmate that a hearing will be held no later than five (5) days (excluding weekends and holidays) after the incident. The inmate will have no less than twenty four (24) hours prior to the hearing to prepare his/her defense, unless the inmate has elected to waive the twenty four (24) hour requirement. If the inmate chooses to waive this requirement, the waiver must be in writing and signed by the inmate. The officer shall also have the inmate note in the appropriate box of the disciplinary report the time and date of the signing of the waiver.

4.     Upon completion of the investigation, the investigating officer shall complete the appropriate portion of the disciplinary report and forward the report to the facility's inmate discipline coordinator or designee.

5.     Informal resolution of minor infractions: Incidences involving no serious injury, damage to a facility or if a deputy is not involved can be resolved informally.

E.     Disciplinary Hearing, Findings and Action:

1.     An impartial disciplinary committee or hearing review officer, as determined by the division commander, shall conduct a hearing for rule violations.  Any member of the disciplinary committee or any person appointed as a disciplinary committee member shall be disqualified if he/she has any involvement in the case against the inmate or investigated the violation.

2.     The disciplinary committee's or hearing officer's findings shall enumerate the specific facts derived from the disciplinary report, investigation, or the witness statements and what specific evidence was used in the disciplinary team's or hearing officer's conclusion.

3.     The disciplinary committee or hearing review officer may decide to postpone or continue the hearing beyond the established time constraints for a reasonable period and for good cause.  Reasons for granting a postponement or continuance are documented and may include, but are not limited to:

a.     Preparation of a defense within a reasonable time frame agreed upon by the committee

b.     Illness

c.     Unavailability of the inmate

d.     Further investigation of factual matter relevant to the hearing

4.     When holding a disciplinary hearing, the hearing officer, chairperson or a majority of the members shall have the authority:

a.     To require the production of documents and/or call witnesses.

b.     To review the inmate request for assistance, for witnesses requested by the inmate or for any evidence which they wish to call or present provided, however, that witnesses shall not be called or certain information disclosed if doing so would create a risk of reprisal, undermine authority or otherwise present a threat to the security of the institution. No witnesses shall be called if it is clear that such testimony would be irrelevant, immaterial or repetitive. Notifications shall be made in the report with reasons for declining to call requested witnesses or for restricting any information.  The mere facts alone that an inmate witness is housed in another PBSO detention facility is not cause to deny the witness.

c.     To offer a staff member to assist the inmate during the hearing when the inmate is apparently illiterate, has a language barrier or the complexity of the issues makes it unlikely that the inmate would be able to properly represent him or herself. The disciplinary hearing officer or committee, through the chairperson, should require the proper decorum throughout the disciplinary hearing. The hearing officer or disciplinary committee shall ensure the inmate understands the charge(s) and possible action(s) that can result.

5.     The inmate charged with a rule violation shall have the following rights at a disciplinary hearing:

a.     An inmate charged with rule violations shall be present at the hearing unless he/she waives in writing their right to attend the hearing, refuses to attend the hearing, or his/her behavior during the hearing justified removal there from. The absence of an inmate from a hearing and the reason therefore shall be documented.

b.     To have the opportunity to make a statement and present documentary evidence at the hearing.

    c.    To request witnesses on their behalf, which may be limited in number by the disciplinary hearing committee or hearing officer when the evidence to be presented is unduly cumulative information. Justification for denying witnesses will be in writing.

    d.    The inmate shall receive a copy of the written decision.

    e.    The inmate shall have the right to appeal the decision of the hearing officer or committee to the officer-in-charge or designee.

    f.    All steps in the disciplinary process shall be maintained as a written record. However, if the inmate is found not guilty, the disciplinary report shall be so noted and shall be removed from the inmate's file. The inmate disciplinary coordinator will maintain a separate file for such records, which are maintained for at least six months. If found guilty, the disciplinary reports, hearing minutes, and supporting documentation copies are placed in the inmate's classification file to be retained for a period of five (5) years.

6.    The hearing officer or disciplinary hearing committee chair shall be responsible for completing the "hearing" portion of the disciplinary report, including the names of witnesses called and all restrictions recommended against the inmate during the hearing as well as the justification for the restrictions.

7.    The majority of the disciplinary hearing committee or the hearing officer's findings and recommendations shall meet the following guidelines:

    a.    Upon the conclusion of the hearing, the hearing officer or committee members, in closed deliberations, shall determine the validity of the charges and determine what sanctions should be imposed upon the inmate if found guilty. The decision shall be based solely on information obtained during the hearing process, including staff reports, the statements of the inmate charged, and evidence derived from witnesses and documents.

    b.    Recommendations for discipline shall not be arbitrary, nor capricious, nor in the nature of retaliation or revenge. Corporal punishment of any kind is prohibited.

    c.    If disciplinary confinement is recommended and imposed the time spent in disciplinary confinement shall be proportionate to the offense committed but in no event shall be greater than thirty (30) days per violation.

    d.    The hearing officer or chairperson will announce the findings and recommended sanctions to the inmate and record them, along with the reasons for the decision and evidence relied upon, in the "hearing" portion of the disciplinary report.

    e.    If the inmate is found guilty, the hearing officer or chairperson will advise the inmate of their right to appeal. All decisions of guilt shall be based solely on witnesses' evidence and documentation; a statement to this effect will be included on the hearing portion of the disciplinary report.

    f.    Once the hearing officer/disciplinary committee have decided the inmate's punishment, it may not be increased by the facility administrator/staff.

8.    The hearing officer or disciplinary committee shall make one of the following findings:

    a.    Dismiss the charge. If the charge is dismissed, the disciplinary report shall not be posted or placed in the inmate file. The dismissal of a disciplinary report may occur due to procedural errors, technical errors, or duplication of charges. A dismissal is without prejudice and may be rewritten and reprocessed under the same time constraints as new charges.

    b.    Not Guilty. If the inmate is found not guilty, the disciplinary report shall not be posted or placed in the inmate file. The inmate shall be found not guilty when the facts do not support the charge.

    c.    A written statement that shows what evidence the hearing officer/committee relied on for a guilty finding.

9.      Any disciplinary action (except loss of gain time) being imposed with any other disciplinary action should be clearly stated in the disciplinary report as to the concurrent or consecutive requirements.  If the disciplinary team or hearing officer does not specifically state concurrent or consecutive requirements, the disciplinary action shall be considered concurrent.  Loss of gain time shall not be concurrent with any other loss of gain time and shall be cumulative.

10.     If the inmate is found guilty, the disciplinary committee or hearing officer shall impose any one or a combination of the following actions:

a.      Restriction from and/or alternative access to, recreation, visiting, religious services, non-attorney related telephones privileges, and/or law library for a period not to exceed sixty (60) days.  These sanctions may be imposed only when there is substantial reason to do so, or when the violation occurred during that particular activity.

b.      Suspend any other privileges for a period of time not to exceed:
   1)      30 days for a Category I Offense
   2)      20 days for a Category II Offense
   3)      10 days for a Category III Offense
   4)      5 days for a Category IV Offense

c.      Confiscate property (related to the offense).

d.      Determine the disposition of contraband items.
   1)      In addition to disciplinary action, inmates can also be required to pay for damaged, destroyed or misappropriated property or goods. Such cases will be referred to the Violent Crimes Division for criminal prosecution and restitution as appropriate.

e.      Recommend loss of accrued gain time up to the maximum penalty:
   1)      15 days for Category I Offense
   2)      10 days for a Category II Offense
   3)      5 days for a Category III Offense
   4)      1 day for a Category IV Offense
   5)      Generally, "Exceptional Industry Gain Time" will be forfeited unless "Good Conduct Gain Time" is specified.  A specific number of days recommended for forfeiture shall be indicated.  Whenever loss of gain time is recommended, a determination must be made that the inmate has accrued sufficient gain time in order for the forfeiture to be processed.
   6)      For each sustained charge of escape or attempted escape, mutinous conduct, or other category 1 offense, all the commutation which shall have accrued in favor of a county prisoner up to that day shall be forfeited, except that in case of escape if the prisoner voluntarily returns without expense to the state or county then such forfeiture may be set aside if in judgment the prisoner's subsequent conduct entitles him or her thereto.
   7)      All or any part of the gain-time earned by a county prisoner and any extra gain-time allowed him or her, if any, shall be subject to forfeiture for violation of any law of the state or any rule or regulation of the institution.

f.      Removal from or reassignment of work duties (coordinated with Classification).

g.      Housing reassignment (coordinated with Classification).

h.    Remove inmates on supervised community release (House Arrest, Work Release) from the program and assign them to a designated facility (coordinated with Alternative Custody and Classification).

i.    Place the inmate in disciplinary confinement.

    1)    This period of time may not exceed the maximum penalty for the violation as listed below.

        (a)    30 days for a Category I Offense

        (b)    20 days for a Category II Offense

        (c)    10 days for a Category III Offense

    2)    Disciplinary confinement should be utilized only as a last resort. The time spent by an inmate in disciplinary confinement shall be proportionate to the offense committed.

    3)    For the purpose of disciplinary confinement sanctions, a day is a twenty four (24) hour period beginning at the time the inmate is placed in disciplinary confinement.

    4)    The maximum confinement sanction for rule violations is no more than sixty (60) days for all violations arising out of one incident. Continuous disciplinary confinement for more than thirty (30) days requires the review and approval of the division commander or designee.

    5)    Inmates placed into disciplinary confinement have been found guilty of rule violations that directly impact the safety and security of a facility. Sanctions of any disciplinary confinement time include the loss of newspaper, canteen (except for necessary hygiene items) and personal phone calls. Recreation and visitation can be restricted if the inmate poses a substantial threat to staff or committed a violation in relation to recreation or visitation. Telephone privileges consist only of calls related specifically to accessing the judicial process and family emergencies, as determined by the division commander or designee.

11.    The following are prohibited sanctions and may not be imposed as discipline:

a.    Any form of dietary or nutritional restriction, or use of food or meals as punishment.

b.    Any form of corporal or unusual punishment.

c.    Any form of discipline imposed by another inmate.

d.    Deprivation of clothing, bedding, or necessary personal hygiene items.

    1)    This does not apply to those inmates who destroy such items or use them to harm themselves or others. In such cases the division commander or designee will be notified and the decision to deprive the items will be reviewed daily.

e.    The use of restraints as punishment.

f.    Any form of interference with daily functions of living or hygienic needs, such as sleeping or use of toilet facilities.

12.    If an inmate has been placed in administrative confinement pending a disciplinary hearing and the committee subsequently recommends a term of disciplinary confinement, the disciplinary committee shall consider the time served in administrative confinement in determining the total number of days of recommended disciplinary confinement.

F.    Division Commander's Review - The division commander or designee shall review the report of the disciplinary hearing for the purpose of:

1.    Ensuring the hearing officer or disciplinary hearing committee, as well as the hearing itself, conforms to policies and procedures.

2. Agreement or reduction of the disciplinary sanctions, if any. The division commander, or designee, may not increase the sanctions recommended by the committee.

G. Written Notification – The inmate discipline coordinator or designee shall provide the inmate with a completed copy of the disciplinary report.

H. Hearing Record - The disciplinary report, disciplinary hearing and supporting documents are a record of the disciplinary process. A copy of this record shall be kept in the inmate's classification file only if found guilty. This record shall be retained for at least five (5) years.

I. Appeals - All decisions of the hearing officer or disciplinary hearing committee may be appealed by the inmate utilizing the inmate grievance procedure to the major of Security and/or major of Operations or designee. Guidelines for appeals are as follows:

1. Appeals must be made within five (5) days, excluding weekends and holidays, from the date of the division commander's approval or modification of the sanctions. The inmate submitting an inmate grievance form will make the appeal.

2. The major of Security and/or major of Operations or designee shall consider the appeal's merits based on the following criteria:
   a. Was there substantial evidence to support the charge(s)?
   b. Was there compliance with these policies and procedures?
   c. Were the sanctions imposed proportionate to the offense committed?

3. The major of Security and/or major of Operations or designee shall either affirm or reverse the decision and respond to the inmate in writing within five (5) days (excluding weekends and holidays) of the inmate grievance (appeal) being received by the grievance coordinator and recorded. A written record will be kept and maintained on all steps of the appeal.

4. The major of Security and/or major of Operations or designee's decision is final.

# EXHIBIT A-2

|  Palm Beach County Sheriff's Office Corrections Operating Procedures | COP # 920.00 | Page 1 of 5 |
|---|---|---|

| SUBJECT: **Inmate Classification Process** |||
|---|

| INDEX AS: **Classification** |||
|---|

| ISSUED DATE: | SUPERSEDES DATE: | EFFECTIVE DATE: | REFERENCES: |
|---|---|---|---|
| 01/04/77 | 10/13 | 03/30/16 | ACA - 4-ALDF- 2A-30, 2A-31, 2A-32, 2A-34, FCAC - 9.01, 9.02, 9.03, 10.02, 10.03, 10.06, 10.07, 10.08, 16.01, 17.01, 17.03<br>FMJS - 4.06, 4.10, 4.11, 4.12, 4.13, 4.15, 5.02, 5.03<br>28 CFR – Part 115 § 115.41 § 115.42 |

I.     **PURPOSE:**  The purpose of this Corrections Operating Procedure is to establish guidelines for a written classification system in terms of custody level, housing assignment, and program participation.

II.    **SCOPE:**  This Corrections Operating Procedure applies to all Sheriff's Office personnel assigned to the Department of Corrections.

III.   **DISCUSSION:**  Classification is the process that begins during the admission process and continues throughout the inmate's incarceration.  It is used to identify and separate inmates by using current charges, criminal history, institutional history, and behavior patterns into groups to ensure secure jail operations that facilitate staff, and public safety. It also allows inmates to be assigned to programs and services that constructively occupy their time in custody, thereby facilitating the orderly management of the jail. Inmates will not be classified or housed by race, color, creed, or national origin, but will be separated by gender, legal status, or for other management reasons.  This procedure is reviewed annually.

IV.    **PROCEDURES:**  Classification officers shall assign each inmate an appropriate housing unit, custody level, and programs assignment, after admission and on review of their status. The classification process is uniform for all inmates and follows them throughout their incarceration.

A.     The classification process shall begin as soon as practical after admission.

1.     Inmates will normally remain in the orientation housing units for approximately seventy-two (72) hours.

2.     During classification, each inmate receives and signs for a copy of the rules and regulations of the facility. The rules shall incorporate classification criteria as to housing, programs, and privileges.

3.     All questions concerning the established rules, regulations, and legal procedures are resolved during the classification process.

4.     Classification shall gather all information available or obtainable regarding the social and legal history of the inmate.

B.     Each facility may have a designated classification employee. The primary objective of classification is to place inmates in the type of housing that best meet their needs, and to provide reasonable protection for all inmates. Insofar as the facility permits, no inmate shall be subjected to more restrictive conditions of confinement and out-of-cell time than is justified by the inmate's classification. The following conditions shall be taken into consideration during classification:

1.     Inmates shall not be housed in direct supervision units unless approved by classification.

2.     Males and females are kept separated by normal sight and sound and are housed separately.

3.     Classes of detainees (witnesses, civil prisoners).

4.     Community control inmates (work release, weekenders, inmate workers).
5.     Inmates with special problems (substance abuse, mentally disturbed persons, physically handicapped persons, persons with communicable diseases).
6.     Inmates requiring disciplinary detention.
7.     Inmates requiring administrative segregation.
8.     Inmates requiring protective custody.
9.     Juveniles.
    a.     Juveniles/youthful offenders are processed through the "Juvenile Assessment Center" (JAC) and are prohibited from transfer into the Sheriff's Office facilities unless by direct file, waiver, grand jury indictment "or pursuant to 985.201 and 985.557 Florida State Statutes, any juvenile who has been found to have committed a criminal offense as an adult and upon whom the court has imposed adult sanctions shall be treated as an adult upon admission pursuant to any subsequent arrest. The receiving facility shall contact the Court Clerk's Office, State Attorney's Office, or other appropriate agency to verify the offender's status."
    b.     At no time will juveniles/youthful offenders be held in the facility except under court order. If juveniles/youthful offenders must be temporarily detained until a court order is received, they will be held in the booking area, and are at all times within sight and normal sound of corrections officers or employees.
    c.     Juveniles/youthful offenders charged with a traffic offense involving death or injury will not be placed with adults under any circumstances.
    d.     When a juvenile is housed as an adult, the following criteria must be met:
        1)     The courts have certified the juvenile for prosecution as an adult.
        2)     The juvenile has been tried as an adult.
        3)     The juvenile was found guilty as an adult.
        4)     The juvenile was sentenced as an adult.
        5)     All legal documents remain part of the juvenile's file.
    e.     Juveniles who are being housed with adult sanctions are only housed with inmates of the same classification.
    f.     Male and female juveniles are housed separately.

C.     Inmates should be separated in the following manner whenever possible:
1.     Adult female felons.
2.     Adult female misdemeanants.
3.     Adult female non – sentenced.
4.     Adult female sentenced.
5.     Adult male felons.
6.     Adult male misdemeanants.
7.     Adult male non – sentenced.
8.     Adult male sentenced.
9.     Juvenile males.
10.     Juvenile females.
11.     Dangerous felons shall not be housed with misdemeanants. However, non-dangerous felons may be housed with misdemeanants.

D.     Prison Rape Elimination Act (PREA) Classification Process:
1.     All inmates will be assessed during initial screening and upon transfer to another facility, as to their risk for sexual victimization within 72 hours of facility arrival.
2.     The objective screening instrument includes questions as to:
    a.     Mental health
    b.     Physical and developmental disability
    c.     Age
    d.     Physical build
    e.     Previous incarceration

    f.      Criminal history

    g.      Prior conviction of sexual offenses or victimization

    h.      Gay, lesbian, bi-sexual, transgender, intersex or gender non-conforming (GLBTIG)

    i.      Inmate's perception of vulnerability

3.    The inmate's specific gender identity will be indicated on the pre-classification questionnaire.

4.    Based on responses and other initial information to these questions, individualized determinations on appropriate safe housing are made.

E.    Special housing considerations should be made for inmates who present a threat to the staff, other inmates, or themselves. They should be separated and closely supervised. Special housing considerations may apply to the following:

1.    Inmates at risk for suicide shall not be housed in a "single occupancy cell" unless the inmate is observed by direct visual observation 24 hours each day.

2.    Juveniles, who are subject to trial as adults, shall be housed separated by sight and sound from adult inmates, although they may be in the same facility structure. Staff shall supervise and monitor the juveniles activities at all times.

3.    Male and female inmates shall be housed separately and also separated by sight and normal sound. When both female and male inmates are in the same facility, all available services and programs are comparable. Neither gender is denied the opportunity for participation on the basis of its smaller inmate numbers in the population.

4.    Special housing shall be provided to inmates for medical reasons upon the orders of the facility doctor.

    a.      Medical staff will examine any inmate confined for medical reasons within 48 hours of such confinement.

    b.      The facility medical staff shall determine when an inmate is to be released/removed from the medical isolation.

5.    Persons brought into a facility for detoxification will be kept in an area designated for that use and will be held only as long as necessary to meet the requirements of Florida statutes.

6.    Particular care shall be given to the assignment of those inmates who have a history of, or exhibit aggressive behavior toward other inmates or staff, or who have special classification needs. Every attempt should be made to house these types of inmates separately.

7.    The formal classification system that starts at admission manages and separates inmates based on the facility mission statement classification goals, and inmate custody and programmic needs. This process uses verifiable and documented data about inmates. The classification system is used to separate inmates into groups that reduce the probability of assault and disruptive behavior. Single cell occupancy is available for those identified as having the potential for being a risk, or at risk, in general population. At a minimum, the classification system evaluates the following:

    a.      Mental and emotional stability or those suffering from serious mental illness.

    b.      Escape history.

    c.      History of assaultive behavior.

    d.      Medical status or those with severe medical disabilities.

    e.      Age.

    f.      Need to keep separate.

    g.      Sexual predators/deviates.

    h.      Inmates likely to be victimized or exploited by others.

    i.      Maximum or close custody.

    j.      Inmates with other special needs that may require separate or single cell housing.

F.   Custody levels are designed to act as guidelines for the separation of inmates for appropriate security, housing, and program consideration.

   1.   The following are the basic recommended guidelines in determining appropriate custody levels for inmates:

      a.   Minimum – recommended for individuals who meet one or more of the following factors; for example, charged (including those of any "Holds") with:

         1)   Misdemeanors.
         2)   Traffic offenses.
         3)   Civil offenses
         4)   Non-violent 3rd degree felonies.
         5)   County Sentenced.
         6)   Little or no institutional behavioral problems.

      b.   Medium – recommended for individuals who meet one or more of the following factors; for example, charged (including those of any "Holds") with:

         1)   Non-violent 1st or 2nd degree felonies.
         2)   Violent 3rd degree felonies.
         3)   Non-violent Federal charges (including ICE holds).
         4)   State sentenced-convicted of a non-violent crime.
         5)   Minimal, non-violent institutional behavior.

      c.   Maximum – recommended for individuals who meet one or more  of the following factors; for example, charged (including those of any "Holds") with:

         1)   Violent 1st or 2nd degree felonies.
         2)   Capital or life felonies.
         3)   Violent Federal charges.
         4)   State sentenced – convicted of a violent crime.
         5)   History of behavior problems while incarcerated.
         6)   When there is documented evidence that the inmate poses a serious threat to the safety of staff or other inmates, or the security of the facility.

   2.   The inmate's initial custody level and future adjustments could result in increased custody housing, reduced custody housing, the gain or loss of privileges, involvement in better job assignments, etc. Classification officers shall review the following available information in determining and adjusting an inmate's custody level:

      a.   Personal and social history.
      b.   Criminal history and current charges.
      c.   Medical and mental history, current illness, and physical handicaps.

   3.   Classification officers may deviate from the recommended custody level guidelines when there are existing justifiable circumstances, (such as age, suicide risks, mental illness) or other reasonable factors (such as institutional behavior). The Classification officer shall justify any such deviation in writing and provide other related documentation, when available, which will become part of the inmate's classification file.

G.   Participation in Correctional Programs:

   1.   Generally, inmates are permitted to participate in all facility programs.  Access may be limited on the basis of established program participation criteria necessary to maintain the integrity of the program.  Restrictions or alternative access to programs shall be imposed on an individual basis when justified to ensure the safety of persons and maintain the security and order of the facility.

   2.   Discrimination is prohibited on the basis of disability in the provision of services, programs, and activities administered for program beneficiaries and participants.

| COP # 920.00 | Page 5 of 5 |
|---|---|

Beneficiaries and participants include, but are not limited to: inmates, family members, clergy, attorneys, volunteers, and other authorized visitors.

    3.    Pregnant inmates may be exempt from inappropriate work details as determined by medical personnel.

H.    Changes in Status:

    1.    Classification officers shall make changes in an inmate's housing, custody, or programs status based on updated information, which may include, but is not limited to:

        a.    The addition or satisfaction of current charges.

        b.    An established change in behavior based on submitted Inmate Incident Reports and/or Inmate Disciplinary Reports.

I.    Appeals:

    1.    Inmates may appeal classification officers' decisions regarding their housing assignments, custody levels or program restrictions in accordance with the established inmate grievance procedures.

# EXHIBIT A-3

|  | Palm Beach County Sheriff's Office Corrections Operating Procedures | COP # 923.00 | Page 1 of 4 |
|---|---|---|---|

| SUBJECT: **Juvenile Admission, Classification and Housing** |
|---|

| INDEX AS: **Juvenile Offenders** |
|---|

| ISSUED DATE: | SUPERSEDES DATE: | EFFECTIVE DATE: | REFERENCE:<br>ACA - 4-ALDF –2A-37 through 2A-43<br>FCAC – 17.01, 17.02, 17.03, 18.01, 18.02. 18.03<br>FMJS - Chapters 17 & 18<br>FSS - 985.265, 985.556, 985.557 |
|---|---|---|---|
| 10/03 | 06/11 | 10/10/14 | |

I.   **PURPOSE:**  The purpose of this Corrections Operating Procedure is to establish the guidelines, under which juveniles are admitted, classified, housed, and offered programs.

II.  **SCOPE:**  This Corrections Operating Procedure applies to all Sheriff's Office personnel assigned to or working for the Department of Corrections.

III. **DISCUSSION:** Juveniles under the age of 18 shall not be confined in the facility unless they are subject to trial as adults. They shall be housed separated by sight and sound from adult inmates, although they may be in the same facility structure.  Staff shall supervise and monitor the juveniles' activities at all times.  This procedure includes temporary custody of juveniles.

IV.  **ADMISSION OF JUVENILES:**
A.   Juveniles are processed through the "Juvenile Assessment Center" (JAC) and prohibited from transfer into Sheriff's Office facilities unless by direct file, waiver, grand jury indictment, wanted in another jurisdiction as an adult, or previously been found to have committed a felony or lesser included offense as an adult and have received adult sanctions. This type of juvenile shall be processed as an adult for any subsequent arrest or admission.
B.   At no time will juveniles be held in the facility except under court order. If juveniles must be temporarily detained until a court order is received, they will be held in the booking area within sight and normal sound of corrections officers or employees at all times while awaiting court orders.
C.   Juveniles shall not be admitted into the facility unless all appropriate legal documents are presented.  These documents must remain part of the juvenile's permanent file.
D.   Juveniles can only be held in a facility if there is adequate staff to monitor them at all times.
E.   Juveniles charged with a traffic offense involving death or injury will not be placed with adults under any circumstances.
F.   Juveniles held in the facility, pursuant to court orders, will be supervised and monitored at all times to include physically documented checks by corrections deputies at intervals not to exceed ten (10) minutes.
G.   Juveniles held in temporary custody are held in an area of the facility for fingerprinting/photographing and transportation to an appropriate juvenile facility. The time held will not exceed six (6) hours.
H.   All juveniles brought into the facility for a misdemeanor or traffic warrants are fingerprinted, photographed and given a "Notice to Appear" (NTA) for court and then turned back over to the arresting officer who is responsible for notifying the parents, responsible adult, or guardian of the juvenile.  If a juvenile self-surrenders, a responsible adult must accompany him.  He will then be processed and released to a responsible adult.

| COP # 923.00 | Page 2 of 4 |

## V.    GUIDELINES FOR ADMISSION:

A.    Unless wanted in another jurisdiction as an adult, juveniles are not housed in an adult jail unless.

    1.    The juvenile has been indicted.

    2.    The juvenile has been waived.

    3.    The juvenile was direct filed.

    4.    Adult sanctions were imposed by a court.

B.    When a juvenile is housed as a adult, the following criteria must be met:

    1.    The courts have certified the juvenile for prosecution as an adult.

    2.    The juvenile has been tried as an adult.

    3.    The juvenile has been found guilty as an adult.

    4.    The juvenile was sentenced as an adult.

    5.    All legal documents remain part of the juvenile file.

## VI.    CLASSIFICATION:

A.    Juveniles:

    1.    All inmates 18 years of age or older shall be classified and housed as adults.

    2.    All inmates under the age of 18, that do not meet the criteria of section V (B., 1, 2, 3, 4) shall be classified as juveniles and housed separately from adults, in a direct supervision unit.

    3.    Inmates shall be re-classified and re-housed when they reach their 18th birthday.

    4.    Classification must be notified immediately upon receiving juveniles.

    5.    A person under 18 years of age must be kept in a designated area even though he/she is sentenced as an adult, but may be housed as an adult on any subsequent arrest or admission. The Main Detention Center facility is designed for housing all juveniles, both male and female.

    6.    Juveniles will be confined within sight and normal sound of staff members.  When placed in a cell separated from adults in the Booking or Releasing areas, a 10- minute watch will be maintained.

    7.    The classification plans for juveniles that determine level of risk and program needs are developmentally appropriate for adolescents.  Classification plans shall include consideration of physical, mental, social, and educational maturity of the juveniles.

    8.    Juveniles housed as adults will only be housed with inmates of the same classification.

## VII.    HOUSING:

A.    The housing unit officer shall provide for the direct supervision of juveniles housed in the specialized unit to ensure safety and security; 10-minute checks will be maintained.

B.    Juveniles are housed in a specialized unit for juveniles except when:

    1.    A violent, predatory juvenile poses an undue risk of harm to others, and then he/she will be housed within the specialized unit, but under special management policy and procedure.

    2.    A qualified medical or mental health specialist documents that the juveniles would benefit from placement outside the unit.

    3.    A written report of the specific reasons for housing a juvenile outside the specialized unit and a case-management plan specifying what behaviors need to be    modified and how the juvenile may return to the unit.  The facility commander or his/her designee must approve the statement of reasons and case-management plan.  Cases are reviewed at least quarterly by the case manager, facility commander or his/her designee and the juvenile to determine whether a juvenile should be returned to the specialized unit.

| COP # 923.00 | Page 3 of 4 |

C.   Juveniles in the specialized unit have no more than incidental sight or sound, contact with adult offenders from outside the unit in living, program, dining, or other common areas of the facility.  Any other sight or sound contact is minimized, brief, and in conformance with applicable legal requirements.

D.   Adequate program space will be provided to meet the physical, social, emotional need of juveniles and allows for their personal interactions and group-oriented activities.

## VIII.   INMATE PROGRAMS:

A.   Programs and services shall be available and include, but are not limited to, the following:
1.   Religious activity.
2.   Library services, including law library.
3.   Educational.
4.   Social services.
5.   Psychological counseling.
6.   Leisure time activities, which may include television, movies, cards, checkers, chess, etc. as authorized by the facility commander.
7.   Access to recreation opportunities and equipment, including one hour daily of physical exercise outside the cell and outdoors when weather permits.
8.   The Department of Corrections shall actively seek the assistance of related community agencies and organizations.

B.   Juvenile participation:
1.   Juveniles shall have equal access to various programs.
2.   Juveniles shall complete an inmate request form, for applicable programs.
3.   The completed form shall be forwarded to the facility's supervisor responsible for the program or service requested.

C.   Restriction against participation in a specific program or service shall be:
1.   Determined on an individual basis.
2.   Based on the past histories of disrupting programs and service.
3.   Based on uncontrollable or violent behavior.

D.   Juveniles shall not be restricted from participating in programs based on race, religion, national origin, sex, handicap or political belief.

E.   Juveniles shall have the option to refuse to participate in facility programs, except work assignments and programs required by statute.  Refusals shall be documented in writing and do not prejudice an inmate for future participation.

F.   Equal opportunities shall be provided for males and females to participate in programs and services when they are housed at the same facility.

G.   Juveniles are required to attend educational classes required by the School Board of Palm Beach County.

## IX.   STAFF TRAINING:

A.   Certified staff and program personnel who work with juveniles from the specialized unit will have written job descriptions, and are trained in the developmental, safety and other specific needs of juveniles, prior to assignment in these units. The training includes but is not limited to the following areas:
1.   Adolescent development.
2.   Educational programming.
3.   Cultural awareness.
4.   Crisis prevention and intervention.
5.   Legal issues.
6.   Housing and physical plant.
7.   Policies and procedures.
8.   The management of, and programming for, sex offenders.
9.   Substance-abuse services.

| COP # 923.00 | Page 4 of 4 |

10. Cognitive and behavioral interventions, including anger management, social skills training, problem solving, and resisting peer pressure.
11. Suicide prevention.
12. Nutrition.
13. Mental health issues.
14. Gender specific issues.
15. Case management planning and implementation.

# EXHIBIT A-4

|  Palm Beach County Sheriff's Office<br>Corrections Operating Procedures | COP # 932.00 | Page 1 of 2 |
|---|---|---|

| SUBJECT: **Inmate Services and Programs** |
|---|

| INDEX AS: **Inmate Services and Programs** |
|---|

| **ISSUED DATE:** | **SUPERSEDES DATE:** | **EFFECTIVE DATE:** | **REFERENCE:**<br>ACA - 4 - ALDF - 5A-01, 5A-02, 5C-01, 5C-02 |
|---|---|---|---|
| 01/04/77 | 09/13 | 01/22/15 | FCAC - 12.01, 12.21<br>FMJS - 9.01 (a) |

I.  **PURPOSE:**  The purpose of this Corrections Operating Procedure is to establish guidelines for inmate programs and services.

II.  **SCOPE:**  This Corrections Operating Procedure applies to all Sheriff's Office personnel assigned to the Department of Corrections.

III.  **DISCUSSION:**  Inmate programs and services shall be available and include, but are not limited to, social services, religious services, recreation services, and leisure time activities.  These programs are designed to reduce inmate tension, improve inmate attitudes towards incarceration, provide constructive activity for inmates and support the goal of successful and productive offender re-entry into society.

IV.  **PROCEDURES:**
    A.    Access to Programs - Inmates shall have equal access to the following programs, privileges, exercise, visitation and work release opportunities unless deemed to be a threat to themselves, staff, other inmates or to the security of the facility.
        1.    Religious activity
        2.    Library services, including law library
        3.    Educational (basic remedial reading)
        4.    Social services
        5.    Drug counseling
        6.    Alcohol counseling
        7.    Psychological counseling
        8.    Leisure time activities, available daily, may include television, cards, checkers, chess, etc. as authorized by the division commander.
        9.    Access to recreation opportunities and equipment, including one hour daily of physical exercise outside the cell and outdoors when weather permits
      10.    Vocational training program
      11.    Inmate voting program, if eligible.
    B.    Community Resources - the Department of Corrections shall actively seek the assistance of related community agencies and organizations.  Some of these include, but are not limited to:
        1.    Mental health centers
        2.    Substance abuse programs
        3.    County health departments
        4.    Local hospitals
        5.    County school boards
        6.    County libraries
        7.    County welfare departments
        8.    Local universities
        9.    Community colleges
      10.    Program offices of the Department of Health and Rehabilitative Services

| COP # 932.00 | Page 2 of 2 |
|---|---|

        11.     Legal services

        12.     Ministerial associations

        13.     Vocation rehabilitative services, etc.

C.    Inmate Participation:

        1.     Inmates shall have equal access to various programs.

        2.     Inmates may request to attend the available programs and services:

             a.     The inmate shall complete an inmate request form.

             b.     The completed form shall be forwarded to the facility's supervisors responsible for the program or service requested.

        3.     Restrictions against participation in a specific program or service shall be:

             a.     Determined on an individual basis

             b.     Based on the past histories of disrupting programs and services

             c.     Based on uncontrollable or violent inmates.

        4.     Inmates shall not be restricted from participating in programs based on race, religion, national origin, sex, handicap or political belief.

        5.     Inmates shall have the option to refuse to participate in facility programs, except work assignments and programs required by statute.  Refusals shall be documented in writing and do not prejudice an inmate for future participation.

        6.     Equal opportunities shall be provided for males and females to participate in programs and services when they are housed at the same facility.

        7.     The educational program is consistent with the needs of the inmate population.

D.    Each facility has at least one individual to act as a liaison between the facility and community groups that provide programs and services.

# EXHIBIT A-5

# PALM BEACH COUNTY SHERIFF'S OFFICE
# DEPARTMENT OF CORRECTIONS

# INMATE
# RULES & REGULATIONS



This Rule Booklet has been issued to you. It is your responsibility to maintain this booklet and turn it in upon your release. You will keep this booklet with you should you be transferred to another PBSO detention facility. You will be held accountable for violations of these rules.

PBSO #0307

PALM BEACH COUNTY SHERIFF'S OFFICE
DEPARTMENT OF CORRECTIONS
INMATE RULES AND REGULATIONS

**Table of Contents**

A.      ORGANIZATION ............................................................4
A-1.  MISSION STATEMENT ................................................4
A-2.  DETENTION FACILITIES ............................................4

B.      SANITATION AND HYGIENE ....................................4
B-1.  LIVING QUARTERS ....................................................4
B-2.  PERSONAL HYGIENE ................................................5
B-3.  HAIR CARE SERVICES ..............................................7

C.      INMATE PROPERTY AND MAIL...............................7
C-1.  PERSONAL PROPERTY ..............................................7
C-2.  PERSONAL ITEMS ALLOWED IN YOUR POSSESSION ....................7
C-3.  MONEY ........................................................................8
C-4.  MAIL ..........................................................................10

D.      LEGAL MATTERS AND GRIEVANCES....................11
D-1.  ATTORNEYS AND PUBLIC DEFENDERS ..............11
D-2.  PRIVILEGED MAIL ..................................................12
D-3.  NOTARY SERVICES..................................................12
D-4.  GRIEVANCE PROCEDURES ....................................12
D-5.  RESTORATION OF CIVIL RIGHTS .........................13

E.      SECURITY AND CONTROL ......................................13
E-1.  CLASSIFICATION.....................................................13
E-2.  IDENTIFICATION WRISTBAND..............................14
E-3.  HEADCOUNTS...........................................................14
E-4.  CONTRABAND..........................................................14
E-5.  SEARCHES.................................................................14
E-6.  CANINE UNIT ...........................................................15
E-7.  DIRECT SUPERVISION HOUSING .........................15
E-8.  SPECIAL MANAGEMENT HOUSING ......................16
E-9.  DRESS CODE .............................................................17

F.      EMERGENCY PROCEDURES ...................................18
F-1.  FIRE SAFETY ............................................................18
F-2.  EVACUATION DRILLS .............................................18
F-3.  NO SMOKING POLICY .............................................18

G.      PROGRAMS AND SERVICES...................................18
G-1.  INMATE REQUEST FORMS ....................................18
G-2.  INMATES WITH DISABILITIES...............................18

G-3.   MEDICAL, DENTAL AND MENTAL HEALTH SERVICES .............. 18
G-4.   FOOD SERVICES ..................................................................... 20
G-5.   RELIGIOUS SERVICES AND COUNSELING ........................ 20
G-6.   VISITATION ............................................................................ 20
G-7.   RECREATION .......................................................................... 21
G-8.   TELEPHONES ......................................................................... 21
G-9.   TELEVISIONS ......................................................................... 22
G-10.  CANTEEN ............................................................................... 22
G-11.  READING LIBRARY .............................................................. 23
G-12.  LAW LIBRARY ...................................................................... 23
G-13.  PRE-RELEASE COUNSELING ............................................. 23
G-14.  EDUCATIONAL PROGRAMS ............................................. 23
G-15.  CHILD CARE AND PLANNING (FEMALE INMATES ONLY) .......... 24
G-16.  WORK PROGRAMS ............................................................... 24
G-17.  MARRIAGES .......................................................................... 24
G-18.  DEATH OF A FAMILY MEMBER ....................................... 24
G-19.  NEXT OF KIN NOTIFICATION ........................................... 25
G-20.  INMATE FEES FOR SUBSISTENCE .................................. 25
G-21.  INMATE MOVEMENT ........................................................... 25
G-22.  SELF HELP GROUPS ............................................................. 25
G-23.  VOTERS PROGRAM ............................................................... 26
G-24.  BUS PASS PROGRAM ............................................................ 26
G-25.  ANGER MANAGEMENT ........................................................ 26
G-26.  SOCIAL SECURITY PROGRAM ........................................... 26
G-27.  COMMUNITY RE-ENTRY IDENTIFICATION CARDS ...................... 26
G-28.  CREDIT ON FINES AND COST ............................................. 26


H.     INMATE CONDUCT AND DISCIPLINE ................................ 27
H-1.   CONDUCT ............................................................................... 27
H-2.   RULES ..................................................................................... 27
H-3.   DISCIPLINARY REPORTS, HEARINGS, SANCTIONS AND
       PROCEDURES ......................................................................... 29


I.     SEXUAL ASSAULT AWARENESS ........................................ 38
I-1.   SEXUAL ASSAULT ................................................................ 38
I-2.   SEXUAL ASSAULT AVOIDANCE ........................................ 38
I-3.   WHAT TO DO IF YOU ARE SEXUALLY ASSAULTED .................. 39
I-4.   FACTS FOR THE INMATE THAT SEXUALLY ASSAULTS OTHER
       INMATES ................................................................................. 40
I-5.   IF YOU HAVE TROUBLE CONTROLLING YOUR ACTIONS ........... 40
I-6.   TO REDUCE IMMEDIATE FEELING OR ANGER OR AGGRESSION .... 40
I-7.   DID YOU KNOW ..................................................................... 40


J.     LIMITED ENGLISH PROFICIENCY ...................................... 41
J-1.   LIMITED ENGLISH PROFICIENT (LEP) POLICY ............................. 41

## A.    ORGANIZATION

### A-1.    MISSION STATEMENT

The mission of the Palm Beach County Sheriff's Office Department of Corrections is to provide a safe, secure environment for our staff and inmates by ensuring the maintenance of order within our facilities at all times. The functions of the department directly support our community and the citizens of Palm Beach County through providing safe, effective and efficient correctional services in support of the goal of successful, productive offender reentry into society.

### A-2.    DETENTION FACILITIES

The Palm Beach County Sheriff's Office operates (2) detention facilities within the county; they are:

MAIN DETENTION CENTER
3228 Gun Club Road
West Palm Beach, Florida

WEST DETENTION CENTER
38811 James Wheeler Way
Belle Glade, Florida

**NOTE:  These are actual locations not mailing addresses.**

## B.    SANITATION AND HYGIENE

### B-1.    LIVING QUARTERS

The cell or dormitory area you are assigned to is your living quarters. You will be provided cleaning equipment for the purpose of maintaining your living quarters. Cell and dormitory areas will be inspected on each shift or at least daily by the deputy assigned to that area. Living quarters found to be unsanitary may result in disciplinary action.

- It is your responsibility to keep your assigned bunk made during non-sleeping times.
- Lighting and windows shall remain unobstructed. Placing materials over lights or windows will not be permitted.
- The floors in your housing unit will be kept clean, dry and free of hazardous substances.
- Garbage and trash receptacles shall be emptied and cleaned at least daily.
- No items of any type shall be placed in or between the cell bars.
- Walls will be kept bare. The defacing of walls is prohibited.
- Toilets, urinals, showers and sinks shall be cleaned at least daily.
- Windows, sills and screens will be kept clean and in good repair.
- Food items from your meal trays will not be stored for later consumption. Only items purchased from the canteen will be allowed to be stored in your living quarters.

- Report any maintenance problems, such as inoperable plumbing or lighting fixtures, to the deputy assigned to your unit so repairs can be made.

B-2.   PERSONAL HYGIENE

It is the responsibility of each inmate to maintain his or her personal hygiene. Showers and lavatories are located in your respective housing units for this purpose. Inmates in general population will be given the opportunity to shower daily.

Upon admission to a housing unit from Intake, inmates will be issued a toothbrush, toothpaste, soap and shower slides. You may request an indigent kit from our canteen provider by completing the indigent section of a canteen request form fourteen (14) days after Intake and every week thereafter. Your indigent kit will be delivered on the scheduled canteen day for your unit. This kit contains:

- 1st Week – toothbrush, toothpaste, shampoo, deodorant, pencil
- 2nd Week – toothpaste, pencil
- 3rd Week – toothpaste, deodorant, shampoo, pencil
- 4th Week – toothpaste, pencil

Indigent inmates will be provided writing materials and postage to correspond with their attorneys, the courts and public officials upon request, and to their families and friends once a week.

The four (4) week cycle, as described above, is a continuous rotation.

You may purchase similar items through canteen, if funds are available in your account.

You will be provided with soap in your housing unit or purchase your own from canteen. Writing paper is available from the deputy assigned to your housing unit. If you are indigent for fourteen (14) days from Intake you may request indigent clothing at that time and again every six (6) months thereafter, if you qualify, with a limit of 2 per year with no incarceration limit. These kits consist of:

| Males | Females |
|---|---|
| 2 undershirts | 2 bras |
| 2 briefs | 2 panties |
| 2 pair of socks | 2 pair of socks |
| *1 sweatshirt | *1 sweatshirt |

*Males and females receive 1 sweatshirt every two (2) years, if they qualify, with no incarceration limit.

Dental floss loops will be available upon request to indigent inmates.

At time of intake, if you are without underwear, a pair will be provided to you from the Property section. Once you are placed into a housing unit and remain indigent, the above underwear packet will be furnished upon completion of an Indigent Underwear Request Form.

You will be provided with sheets, pillowcase and towel that will be laundered or exchanged for clean linens at least once per week.

You will be provided a blanket that will be laundered or exchanged for a clean blanket at least once per quarter.

You will be provided with a uniform to be laundered or exchanged for clean clothing at least twice per week.

Personal laundry (i.e.; socks, undergarments, sweatshirts and t-shirts) will be laundered at least once per week. Laundry net bags will be provided by the housing deputy, upon request, to deposit your personal clothing items for cleaning. No loose personal laundry articles will be accepted outside of the laundry net bags. Do not place agency issued towels, sheets and uniforms into the net bags. They will be removed and not returned to you. Do not place soap bars inside the net bags as it can disrupt the wash/rinse cycles and will delay the return of your personal laundry.

You will be held accountable for all linen and uniforms issued to you. Damaged and/or altered linen and/or uniforms will result in disciplinary actions.

Female inmates shall be provided with necessary hygiene items.

You are allowed freedom in personal grooming, except when a valid interest justifies otherwise. Such justifications, as determined by a division commander or designee, may include requirements for safety, security, identification and hygiene.

To reduce your chance of infections:
- Wash your hands thoroughly with soap and water throughout the day, particularly every time you use the toilet and before every meal.
- Never touch another person's wounds, infected skin or dirty bandages.
- Maintain excellent personal hygiene through regular showers and by keeping your living space clean, including the regular laundering of your bed linens.
- Do not share personal hygiene items with others, including toiletries and towels.
- Clean recreational equipment before direct contact with your body or use a clean barrier, such as a towel or shirt between your bare skin and exercise equipment.
- Shower after participating in close contact recreational activities whenever possible.

- Do not get a tattoo while in jail, use injection drugs, or have sexual contact with other inmates.
- Keep any open wounds or sores covered and request medical attention.

B-3.    HAIR CARE SERVICES

Hair and nail clippers will be available from the deputy assigned to your unit. When you have finished with the equipment it must be properly cleaned and returned to the deputy assigned to your unit. All inmates cutting hair will spray the clippers with the disinfectant solution after each use. NO EXCEPTIONS!

## C.    INMATE PROPERTY AND MAIL

C-1.    PERSONAL PROPERTY

When you were booked into the facility, your personal property was listed on a RECEIPT FOR PRISONER'S PERSONAL PROPERTY form. You were given a copy of this – KEEP THIS RECEIPT.

Property taken from you at the time of your arrest may have been placed into evidence. You should have received an evidence receipt from the arresting officer. We cannot obtain this property for you.

Each personal item, including clothing, which is authorized for retention, shall be recorded on the facility property receipt and will be allowed for you to retain.

C-2.    PERSONAL ITEMS ALLOWED IN YOUR POSSESSION

Only the items provided or approved by the jails administration or any item approved or purchased through canteen, up to the amounts listed below, will be allowed in your housing unit unless otherwise specified by a division commander.

(2)    Pairs of issued footwear (clogs and inmate worker boots)
(1)    Pair of personal footwear (purchased through canteen)
(1)    Pair of shower slides
(4)    Pairs of socks
(4)    T-shirts
(4)    Pairs of any type underwear not to include thermal underwear
(1)    Pair of gym shorts
(2)    Wireless bras (females only)
(2)    Sweatshirts
(1)    PBSO issued uniform
(1)    Comb (small/plastic, without a handle)
(1)    Brush (small/plastic, without a handle)
(2)    Each of hygiene articles (one being used and one new): Deodorant, shampoo, toothpaste, toothbrush, etc.
(1)    Pair of glasses/contacts (may have an additional pair of reading glasses available from medical or purchased from canteen only. May have full prescription of contacts, approved by medical only.
(3)    Games (chess, checkers or playing cards)
(4)    Books (including religious books)

(2)        Magazines
(3)        Family photos (no Polaroid photos)
(1)        Address book (no metal binding)
(3)        Pens
(24)      Colored pencils
(1)        Prayer rug or extra towel as approved by the Chaplain
(2)        Packages or containers of each canteen over-the-counter medications

\*\*\*      Medication as approved by medical
\*\*\*      Medical alert badge or bracelet
\*\*\*      Brace, bandage, cane, crutches, etc., as approved by medical

Any items in excess of the permitted amounts or any altered or misused items will be confiscated as contraband and disposed of.

**NOTE: All T-shirts, sweatshirts and gym shorts must be solid white or gray with NO writing pockets, logos, hoods or zippers.**

To identify your property, you should mark your items with your name and pouch number inside the collar or waistband.

**NOTE: All other items will be stored in inmate property storage. You may submit one request for items you want in your housing unit. The Property section will review the request and thoroughly search authorized items. Only one request will be accepted for property from inmate storage.**

C-3.     MONEY

All monies that you bring into the facility or which are sent to you shall be kept in your inmate account.

An account will be generated for you in the Property/Finance Office. All deposits and withdrawals (fees for subsistence, certain medical fees, canteen purchases and transfers to outside parties) are processed in the computer for purpose of permanent record.

Any money taken from you at the time of arrest, that was deemed evidence, will be held by the arresting agency. We cannot obtain this money for you.

The transfer of money and valuables between inmates is prohibited and considered contraband. Contraband items will not be returned to you.

Money will not be accepted for you at any time, unless it arrives through an approved method of processing.

Approved methods include:   Mail services, Cobra Cashier Kiosk and Access Corrections.

MAIL SERVICES:  Money received through mail services must be in the form of a money order or a government issued check. We do not accept personal or business checks. We do not exchange currency, money orders and drafts from foreign countries. All funds of this type will be refused and returned to sender. We cash ONLY U.S. money orders or checks issued by local, state and federal government. Your family and friends should not send cash through the mail. We will not be responsible for the loss of mailed cash.

COBRA CASHIER KIOSK:  Kiosks are located in all the visitation lobbies. The Video Visitation Center is accessible only during visitation (11:00 am through 9:00 pm Thursday through Sunday). The Main Detention Center and West Detention Center are accessible twenty-four hours, seven days a week. The machines will accept cash, credit cards and debit cards. This system deposits money into the inmate's account making the money readily available for commissary purchases.

ACCESS CORRECTIONS:  This service enables someone to send you a money deposit from anywhere in the country to the jail within minutes to use for commissary purchases. This service is available at www.accesscorrections.com or via telephone at 866-394-0490. The service accepts credit cards and debit cards with the MasterCard or Visa logo.
- Family and friends must know the inmate's JACKET NUMBER and FULL BOOKED NAME
- Location (FL – WPB – Palm Beach County Sheriff's Office)
- Deposits may be made twenty-four (24) hours a day, seven (7) days a week

GOVPAYNOW – This service enables someone to pay a REMOTE BOND payment from anywhere in the country.   This service is available at www.GovPayNow.com or via telephone at 877-392-2455.
- Main Detention Center Pay location code 7020
- West Detention Center Pay Location code 7021
- Family and friends must know the inmate's JACKET NUMBER, FULL BOOKED NAME, BOOKING NUMBER, and EXACT AMOUNT OF BOND PAYMENT

To pay onsite bond payments using GovPayNow:
- Main Detention Center Pay location code A001by
- West Detention Center Pay location code A001b2
- Family and friends must know the inmate's jacket number, full booked name, booking number, and exact amount of bond payment

Contraband money will be handled in the same manner as any other contraband found on an inmate. An evidence receipt will be completed and turned over to the jail investigator for possible criminal charges and disposition.

Any monies deposited will be subject to the normal collections for debts owed to the detention facilities by the inmate (INCLUDING BOND MONEY).

C-4.    MAIL

You are permitted to write as many letters as you wish. We encourage you to correspond with friends and family. Writing paper is available from the deputy assigned to your unit. Indigent inmates that barter with their writing materials, envelopes or postage and/or otherwise abuse the privilege of receiving such items at the facility's expense will be subject to disciplinary action. Mail addressed outside of the United States must be forwarded to the inmate mailroom for processing. IF YOUR NAME, CELL NUMBER AND JACKET NUMBER ARE NOT ON THE ENVELOPE, THE LETTER WILL BE BROUGHT TO YOU FOR CORRECTION.

<u>Outgoing mail will be submitted for processing unsealed.</u>

Prior to outgoing mail being delivered to the post office, all letters will be stamped with the following disclaimer:

ATTENTION:    THIS LETTER ORIGINATES FROM A PALM BEACH COUNTY JAIL FACILITY. INMATE MAIL IS UNCENSORED. THE SHERIFF CANNOT ASSUME RESPONSIBILITY FOR ITS CONTENTS.

To avoid delays in mail delivery, ensure that your correspondents address mail properly to the facility in which you are housed. Addresses listed below:

Main Detention Center
INMATE NAME _____
CELL #_____ JACKET # _____
P.O. Box 24716
West Palm Beach, Florida 33416

West Detention Center
INMATE NAME _____
CELL #_____ JACKET #_____
P.O. Box 1450
Belle Glade, Florida 33430

IF YOUR NAME, CELL NUMBER AND JACKET NUMBER ARE NOT ON THE POSTCARD, IT WILL BE RETURNED TO SENDER. Mail will also be returned if you are released or transferred from the facility. All incoming mail, except legal mail and other specifically approved items, must be in a postcard form. The postcard will be photocopied and the copy will be delivered to you in your housing unit. The original postcard will be placed in your property and will be provided to you upon your release from the facility.

      A.    Acceptable postcard forms:
1. Postcards minimum size requirements are 3.5 inches by 5 inches
2. Postcards maximum allowable size is 4.25 inches by 6 inches

    3. Postcards must be solid color – no photos, art or graphic designs

    4. Must be written or typed in black or blue ink only

**B.**     Unacceptable postcard forms:

    1. Defaced

    2. Plastic or wrappings on postcards

    3. Postcards marked with paint, crayons or markers

    4. Postcards with labels or stickers

    5. Postcards with watermarks or stains

    6. Postcards with any biohazards, including perfumes or lipstick

    7. Postcards depicting nudity, weapons or gang references

    8. Oversized postcards

Monies may be mailed to inmates in an envelope addressed to the facility and must state the inmate's name and jacket number. CASH WILL NOT BE ACCEPTED. Any correspondence included with checks, money orders, or otherwise approved mail, will not be delivered to inmates. Monies must be in one of the following forms:

- Money orders
- Checks from government agencies
- Checks from privately run jails or prisons payable in U.S. funds

VisMail – E-Mail:  You may receive e-mails from registered e-mail addresses. Senders must register through the visitation system at **https://jailvisit.pbso.org**.This is a one-way e-mail service, which only accepts incoming e-mails to be delivered along with the U.S. mail.  Senders must purchase virtual stamps available through the visitation system.  E-Mails are subject to review.

## D.     LEGAL MATTERS AND GRIEVANCES

**D-1.**     ATTORNEYS AND PUBLIC DEFENDERS

If you need to contact the Public Defender's Office, you may write or call them:

East Coast Region:
Public Defender's Office
421 3rd Street
West Palm Beach, Florida 33401
Phone: (561) 355-7500

Belle Glade Region:
Public Defender's Office
2976 State Road #15
Belle Glade, Florida 33430
Phone:  (561) 996-4880

Do not ask a staff member to recommend an attorney for you as we are prohibited from doing this. You may call or write the following agency to assist you in finding a lawyer:

Lawyer Referral Service of the Palm Beaches
County Bar Association
1601 Belvedere Rd.
West Palm Beach, Florida 33406
Phone:  (561) 687-3266

Private consultation rooms are available in this facility where you may discuss your case with your attorney.

## D-2.    PRIVILEGED MAIL

Privileged mail is mail clearly identified as being sent from your attorney, the courts or public officials. Privileged mail will be opened in your presence unless you waive in writing.

Outgoing privileged mail shall not be opened, but may be held for a reasonable period of time, not to exceed seventy-two (72) hours, pending verification that it is properly addressed to a person or agency referred to on the envelope.

## D-3.    NOTARY SERVICES

Notary services are available to you from the sergeant assigned to your area. Requests should be made utilizing the Inmate Request Form.

## D-4.    GRIEVANCE PROCEDURES

If you have a complaint, bring it to the attention of the deputy assigned to your unit. If the deputy cannot resolve the problem, then bring it to the attention of the sergeant or lieutenant on rounds. If these steps have been attempted but cannot resolve the problem, there is a grievance procedure in the facility to address inmate complaints. You may obtain a grievance form from the deputy assigned to your unit.

Upon receipt of the grievance form, complete the narrative with a description of your complaint. Specify the problem, the date of occurrence and staff members involved (if applicable). Also, include any staff members you may have contacted in an effort to resolve the problem. Submit your complaint within seven (7) days from the date of the incident, unless it was not feasible within that time period. You will be provided with a response to your complaint within fifteen (15) days. The response will be based upon the facts, which pertain specifically to the complaint. Inmate grievances will not be processed if they are determined to be: 1) frivolous 2) excessive or repetitive in nature 3) previously answered or 4) improperly completed form.

If you are dissatisfied with the response, you may appeal to a division commander within five (5) days of receiving your response. The division commander will have seven (7) days in which to respond to your appeal. If you are not satisfied with the

commander's decision, you may appeal to the major within five (5) days of receipt of the division commander's response. The major's decision is final. Facility officials may extend the response time for grievances requiring extensive research and documentation.

There is no imposed time limit when you may submit a grievance regarding an allegation of sexual abuse. You may submit a grievance without submitting it to a staff member who is the subject of the complaint and such grievance is not referred to a staff member who is the subject of the complaint.

PBSO shall issue a final decision on the merits of any portion of a grievance alleging sexual abuse within 90 days of the initial filing of the grievance. Computation of the 90 day time period shall not include time consumed by you in preparing any administrative appeal. PBSO may claim an extension of time to respond, up to 70 days.

At any level of the administrative process, including the final level, if you do not receive a response within the time allotted for reply, including any properly noticed extension, you may consider the absence of a response to be a denial at that level.

Third parties, including fellow inmates, staff members, family members, attorneys and outside advocates shall be permitted to assist you in filing requests for administrative remedies relating to allegations of sexual abuse and shall also be permitted to file such requests on your behalf.

A grievance alleging that you are subject to a substantial risk of imminent sexual abuse may be filed at any time of the day or night (24 hours a day - 7 days a week). PBSO shall provide an initial response within 48 hours, and shall issue a final decision within 5 calendar days.

PBSO may discipline you for filing a grievance related to alleged sexual abuse only where the agency demonstrates that you filed the grievance in bad faith.

D-5.    RESTORATION OF CIVIL RIGHTS
If you would like information regarding restoration of civil rights, send a request to the Programs Office.

## E.    SECURITY AND CONTROL

E-1.    CLASSIFICATION
During the admission process, a classification officer interviewed you. This interview enabled our department to determine the best suitable housing and program needs for you at that time. At any time should your perception of vulnerability change for any reason and you no longer feel safe in your present housing location, please notify your dorm officer immediately.

E-2.    IDENTIFICATION WRISTBAND

An inmate identification band was placed on your person when you arrived at the facility. This identification band will have your name, photograph, sex, race and jacket number on it. Any inmate found without a wristband will not be allowed to participate in any programs and is subject to disciplinary or administrative action until their identity can be verified and wristband replaced.

E-3.    HEADCOUNTS

Headcounts will be conducted when deemed necessary by the deputy in charge. All inmates will follow the direction of the deputy. You will present your wristband when ordered to do so.  During headcounts there will be no talking unless spoken to. The lights will be turned on and the television will be turned off. Failure to cooperate will be cause for disciplinary action.

E-4.    CONTRABAND

Contraband is any article not authorized by the facility or which has been altered from its original form. Items found in excess of the approved amount are also considered contraband. Disciplinary action and/or criminal prosecution shall be taken if you violate this provision. All contraband items will be confiscated and properly disposed of. Contraband money will be handled in the same manner as any other contraband found on an inmate. An evidence receipt will be completed and turned over to the jail investigator for proper criminal charges and disposition.

Any cellular telephone or other portable electronic communication devices are considered contraband when possessed within or introduced into any Palm Beach County Sheriff's Office detention facility. Portable electronic communication device means any device carried, worn or stored, which is designed or intended to receive or transmit verbal or written messages, access or store data or connect electronically to the internet or any other electronic device and which allows communications or data storage in any form. Such devices include, but are not limited to:
- Portable two-way pagers
- Hand-held radios
- Cellular telephones
- Smart phone-type devices
- MP3 or music players
- Electronic reading devices
- Personal digital assistants (PDA's)
- Laptop computers
- Any components of these devices, which are intended to be used to assemble such devices.
- The term also includes any new technology that is developed for similar purposes.

E-5.    SEARCHES

The control of weapons and contraband in a facility is an essential measure. Unannounced searches of inmates, their quarters and other areas of the facility are

conducted as often as necessary to ensure the safety and security of the staff, inmates and facility.

Searches shall be conducted in a matter that will avoid unnecessary force, embarrassment or loss of dignity to the inmate.

E-6.    CANINE UNIT

The Palm Beach County Sheriff's Office Department of Corrections operates a canine unit in both correctional facilities.   In accordance with Florida State Statutes, any person who intentionally or knowingly maliciously harasses, teases, interferes with or attempts to interfere with a police dog, while the animal is in the performance of its duties, commits a crime punishable by law.

E-7.    DIRECT SUPERVISION HOUSING

Direct supervision is wherein the deputy's post is maintained within the open population of the housing area. The most important factor in determining which inmate will be housed in these units will be their institutional behavior. Upon being housed in a direct supervision unit, you will be oriented on the rules of direct supervision. If you choose not to abide by these rules, you will be removed from the direct supervision unit and reassigned. Depending on the rule violation, disciplinary action may be taken against you. Remember that you are responsible for your behavior and actions. The unit deputy may institute informal discipline. This informal discipline includes the authority to require you to remain in your individual sleeping area for up to no more than two (2) hours. The informal discipline shall not include restrictions in food, clothing or visiting. Listed below are the Rules and Regulations for cleanliness, sanitation and hygiene within the direct supervision units:

- Your bed must be neatly made up in the military style (sheet and blanket edges tucked under the mattress) whenever you are not using it.
- Showers are limited to a maximum of fifteen (15) minutes. Leave the shower area clean and neat. Showers are normally allowed from 8:00 am to 10:45 pm., except during meals, cleaning times, lock downs and counts. Bathe and clean yourself daily.
- Keep your living area neat and clean at all times.  Inspections may occur at any time.
- Mattresses, blankets, sheets and pillows are not allowed away from your bunk or room. Extra bedding items are not allowed unless authorized.
- Store your clothes under your mattress, pillow, or in your storage container; do not hang them off your bunk or leave them loose on the floor.
- Store your canteen in your storage container.
- Wring out your towel and either hang it from your room's clothing hooks (if applicable), or fold it in half and hang it from the foot of your bunk to dry.

E-8.    SPECIAL MANAGEMENT HOUSING

Special management housing incorporates administrative and disciplinary confinement, protective custody and mental health isolation. While housed in a special management unit, you shall have the opportunity to access the following, unless restricted by the disciplinary process:

- Shower and shave at least three (3) times per week
- Visitation, unless there are substantial reasons for withholding such privileges
- Restraints may be required when deemed necessary
- Write or receive letters on the same basis as inmates in general population
- Legal materials
- Reading materials
- Telephone privileges
- Recreation
- Programs and services

**NOTE:   There may be justifications for restricting or providing alternative access to any of these opportunities.**

RULES FOR DISCIPLINARY CONFINEMENT:

<u>SHOWERS:</u>   Monday, Wednesday and Friday only and limited to fifteen (15) minute duration.

<u>PHONE CALLS:</u>  No personal phone calls. Attorney calls will be allowed Monday – Friday only during regular business hours. The deputy will dial the number and verify the party's identity.

<u>LIGHTS AND WINDOWS:</u>  Shall <u>NOT</u> be covered at any time.

<u>NO WRITING ON DOORS, WINDOWS, FIXTURES, ETC.</u>

<u>LOCKERS:</u>  Are off limits to inmates. Only <u>STAFF</u> will access items.

<u>ITEMS PERMITTED INSIDE CELLS:</u>

| | | |
|---|---|---|
| • | Personal hygiene: | 1 toothbrush |
| | | 1 tube of toothpaste |
| | | 1 roll of toilet paper |
| | | 1 bar of soap |
| | | 1 Denture Adhesive |
| | | 1 Tampax – Regular (Females) |
| • | Clothing | 1 uniform |
| | | 1 pair of underwear |
| | | 1 pair of shower slides |
| • | Linen: | 2 sheets |
| | | 1 pillow case |
| | | 1 blanket |

|   |   |   |
|---|---|---|
| | | 1 towel |
| • | Reading material: | 1 Bible or Koran |
| | | 1 book or magazine |
| | | Legal papers |
| | | Personal postcards (photocopies) after placement in DC |
| • | Canteen: | Stamped envelopes and shower slides only |
| | | **NO FOOD ITEMS ALLOWED** |
| • | Miscellaneous Items: | 1 Styrofoam drinking cup |
| | | 1 pencil |
| | | 1 Flex security pen |
| | | Reading glasses |
| | | Writing paper or pad |

ITEMS ALLOWED IN LOCKERS:  All other hygiene items not listed above (hair grease, deodorant, comb) 1 pair of facility footwear, 1 pair of underwear and 1 pair of socks.

ITEMS NOT ALLOWED IN LOCKERS:
- **NO T-SHIRTS**
- **NO SWEATSHIRTS**
- **NO CANTEEN FOOD ITEMS**

If an inmate is on administrative confinement; all locker items will be in the cell with the inmate. If an inmate goes from administrative confinement to disciplinary confinement, the cell will be cleared of all items except those listed above for inmate possession.

E-9.   DRESS CODE

Your issued uniform must be properly worn at all times. If you have in your possession articles of clothing purchased from the canteen (shorts, sweatshirts, etc.), you may be allowed to wear these items during recreation, sleeping or personal hygiene activities etc.

Inmates must properly wear uniforms or appropriate clothing when not in their beds.

Inmates must be in full uniform during the following:
- Feeding of all inmate meals
- While medications are dispensed
- When legal mail and canteen are being delivered
- During the exchange of laundered items
- Any time they leave their housing unit
- During any dayroom activities
- While meeting with attorneys, counselors, investigators, therapists, doctors, religious service personnel, etc.

**F.      EMERGENCY PROCEDURES**

**F-1.      FIRE SAFETY**
Fire safety is one of our department's greatest concerns. Furnishings that are in your housing unit are made with materials that are fire retardant (mattress/pillow). Smoke detectors, fire alarms, fire extinguishers and fire hoses are located throughout the facility in the event an emergency situation exists. Tampering with a fire safety device could result in criminal prosecution.

**F-2.      EVACUATION DRILLS**
Periodically, fire drills will be conducted in your housing area. These drills are conducted to ensure the safety of you and staff in case of a real emergency. During the times of evacuation, listen to the instructions given to you by the deputy. Be calm and quiet so as to evacuate in a timely and safe manner.

**F-3.      NO SMOKING POLICY**
All department facilities are designated SMOKE FREE in accordance with the Florida Clean Indoor Air Act. If you have any tobacco and/or smoking paraphernalia in your possession, it is considered contraband and disciplinary action will be taken against you.

**G.      PROGRAMS AND SERVICES**

**G-1.      INMATE REQUEST FORMS**
The Inmate Request form provides you with a means of communication with the various sections of the administration. Medical request forms are on 3-ply paper with the colors of white, pink and yellow. Upon completion of a Medical Request Form, you must give your request directly to the health care provider during medical rounds.

**G-2.      INMATES WITH DISABILITIES**
Inmates with disabilities are afforded access or an alternative access, to all programs and services provided to the general inmate population. If you have a disability and find it difficult to have access to any of these programs and services, submit an INMATE REQUEST FORM to the appropriate supervisors and advise them of the access problems you encountered. If the problems you encounter cannot be eliminated, we will find an alternative accommodation to ensure you have access to these programs and services.

**G-3.      MEDICAL, DENTAL AND MENTAL HEALTH SERVICES**
A contracted health care provider provides the Sheriff's Office medical services. Nurses are on duty twenty-four (24) hours a day, seven (7) days a week at each facility.

The nurses make rounds daily to dispense medication. Medication must be taken in the presence of the nurse. When the nurse calls you for medication, you must present yourself properly attired. Disciplinary action will be taken against those inmates who do not wear the proper attire when the nurse is present.

You may request medical and dental attention by submitting a Medical Request Form. Only the medical staff will collect these forms. Do not give them to the deputy. Emergencies should be brought to the attention of the staff member assigned to your unit.

Fees for medical services:  All inmates will be required to pay for certain self-initiated, non-referred (by a medical or mental health profession) and non-emergency care and treatment. The following services will continue to be provided free of charge:

- Intake and intrasystem health screenings
- Medical histories and physicals
- Chronic illness
- Mental health services
- Referred illness and follow-up care
- Medical emergencies (as determined by medical staff)

The fee schedule is:  (See posted charges)

- Nurse clinic
- Medical Clinic
- Dental Clinic
- Prescriptions related to above (with the exception of chronic illness)
- Transportation to your own doctor upon approval
- Reading glasses (also available through commissary)

If you are seen at the nurse's clinic and then referred to the medical or dental clinic, you will be charged as posted. No inmate will be denied medical care because of insufficient funds.

In very rare and unusual circumstances, approval may be granted to visit your own doctor. You must have the money for the transportation fee in your commissary account prior to the appointment. This money is for transportation only and does not include fees for the medical services rendered by your doctor.

You will not be charged for follow-up care related to these visits except for additional transportation and associated medical cost for your own doctor. You will have to sign a payment agreement before the medical service is rendered.

You have the right to refuse medical care and treatment. Such refusal must be made directly to the medical staff. You will be escorted to the facility's medical department where you must refuse to the medical staff. You cannot refuse medical care to a deputy and refusal to go to the medical unit will result in disciplinary action.

Mental health services are available to you. As with medical and dental services, you may request mental health services by submitting a Medical Request Form, speaking with the nurse on rounds, or if the need is urgent, by speaking to the deputy in your unit.

<u>Suicide Prevention Warning Signs:</u>

Sometimes there are warning signs. Unfortunately, <u>sometimes</u> there are no obvious signs displayed by a person with the intent of killing him or herself. However, we still need to be aware of the possibility. Here are a few warning signs to be aware of:

- Sudden changes in mood or behavior
- Tearfulness, feelings of hopelessness or helplessness
- The giving away of possessions to others
- Statements of wanting to die; or that "life is not worth living."
- A history of suicide attempts
- The loss of a close friend or family member through suicide
- Tremendous feelings of shame or guilt
- Losing interest in activities or things that one normally enjoys
- Pre-occupied with thoughts about one's own death
- Speaks unrealistically about getting out of jail soon

<u>Keeping Watch:</u>

Everyone should be on the look-out for their fellow inmate or detainee at all times. Please note that the <u>holidays</u> can be a trigger for suicidal thoughts in some persons. **If you feel that someone is suicidal, immediately report this observation to the nearest deputy or medical/mental health staff member.**

<u>Suicidal Thoughts:</u>

If "YOU" are having suicidal thoughts, please remember:

- Ask for help. Counseling is available, as well as other medical interventions. TALK TO THE UNIT DEPUTY, MEDICAL OR MENTAL HEALTH PROVIDER.

G-4.    FOOD SERVICES

Meals will be served three times a day between the hours of:

- Breakfast:  5:00 am to 7:00 am (Note:  Work release will be served beginning at 4:00 am)
- Lunch:  10:30 am to 12:30 pm
- Dinner:  4:30 pm to 6:30 pm

G-5.    RELIGIOUS SERVICES AND COUNSELING

Religious services and counseling are available to you. In the event of a death in your family, religious counseling will be available to you on a one-on-one basis, if you request this service. Submit your Inmate Request Form to the chaplain's office for all religious needs.

G-6.    VISITATION

Inmates will be limited to receiving visits from those individuals whose names have been submitted and approved on an Authorized Visitation List. These lists are limited to seven (7) visitors maximum, including children under the age of 18. Following first appearance or upon assignment to a permanent housing unit,

inmates in the Palm Beach County Sheriff's Office corrections facilities may complete and submit names for their approved visitor list. Only one (1) list may be submitted within a sixty (60) day period. Approved visitation lists may only be revised once in a sixty (60) day period. The following visitor information is required on the form.

- Full name
- Complete date of birth – month, day and year
- Visitor ID number

All visitors are required to register either online at www.jailvisit.pbso.org or on a kiosk at the Central Video Visitation Center or the West Visitation Center. Once registration is complete, each visitor will be issued a visitor ID number. Your visitor must provide you with this number, and you will include this number on the Authorized Visitation Form. Incomplete forms will be returned to you.

You will not be permitted to take anything from your housing unit to visitation. Visitors will control their children or the visit will be terminated.

If a visitor does not show up for three (3) scheduled visits in a thirty (30) day period of time, they will be restricted from visiting for two weeks.

You and your visitors must follow the instructions of PBSO staff or the visit will be terminated. Any violation of the rules will result in the termination of your visit and may result in your visitor being permanently barred from visiting you.

G-7.    RECREATION
Recreation will be available daily (weather permitting). See your floor deputy for scheduled times.

You will immediately return to your housing unit when instructed to do so by a deputy or other PBSO employee. Any violation of the rules and regulations of the facility or behavior which disrupts the duties of staff assigned to recreation or other staff members will result in your recreation period being terminated and disciplinary actions taken.

During recreation you must not attempt to contact or communicate with persons outside of your assigned recreation area through shouting, hand signals and/or obscene gestures. This will be cause for termination of the recreation period and possible disciplinary action against you. Inclement weather may restrict whether or not outside recreation will be offered at the scheduled time.

G-8.    TELEPHONES
Telephones are provided in your housing unit for your use. Telephone enrollment is required to make phone calls. You will be issued a pin # which should be kept secured. DO NOT GIVE OTHER INMATES YOUR PIN #. You may transfer funds from your commissary account to your phone account. Direct calls may be made using the available funds in your phone account. The phones may be used for collect calls and the recipient of the call will be billed for each fifteen (15) minute

call. Calls to cell phones are not guaranteed. PBSO and/or its contracted provider will not be responsible for dropped calls. Follow the directions when dialing to ensure your call is completed. Applicable phone fees will be charged for each phone call. TDD (Telecommunication Device for the Deaf) phones are available at each of the detention facilities for use by any inmate with a hearing impairment. Any abuse of phone privileges will cause the phones to be removed and/or charges filed against you. Facility commanders will be responsible for setting the times that telephones will be available for inmate use. The time schedule should include the opportunity for both day and evening use.

**For the purpose of preserving security and orderly management of the facilities, and to protect the public, inmate telephone calls are subject to monitoring and recording.**

G-9.   TELEVISIONS
The television set located in each dayroom is placed there for your education and entertainment and is a privilege. There will be no tampering with the television or the cable. Any indication of tampering shall cause the removal of the television from the housing unit and possible disciplinary charges placed against you. The deputy assigned to your area will operate remote-control television sets. A majority vote by the inmates shall determine which channel will be viewed. The volume level will be maintained at a normal level, so as not to interfere with other inmates or the operation of the facility.

During the taking of headcounts, the TV will be turned off to allow the deputy the opportunity to obtain an accurate count. Any inmates not cooperating during the taking of headcount will lose their television privileges and will be subject to a disciplinary hearing.

Television Restrictions:  Televisions will be shut off between the hours of 11:00 pm and 6:00 am seven (7) days a week.

G-10.   CANTEEN
Canteen items may be purchased on the day scheduled for your housing unit. If your total order is more than your account balance, the excess items will not be processed for delivery. Your order is limited to ninety dollars ($90.00) of canteen items and ninety dollars ($90.00) of clothing items (excluding phone money transfers). Only one canteen order will be processed per week.

When the canteen representative delivers your order they will verify your identification and obtain your signature prior to handing you the sealed bag. You must verify your order in the presence of the canteen representative. Any complaints for incomplete orders will not be considered after you have walked away from the canteen representative. The back order of any substitutions will be returned to you by the end of the week.

**Every inmate must create and enroll a personal 10-digit security code using the Phone-It-In commissary service.  Commissary orders will not be processed until a successful enrollment process is complete.**

**If you are unable to enroll your personal 10-digit security code, you must immediately notify the housing unit deputy to coordinate your re-enrollment process.**

G-11.   READING LIBRARY
A mobile book cart is available for leisure reading material. The schedule is posted in your housing unit.

G-12.   LAW LIBRARY
PBSO Department of Corrections no longer has a physical access law library. However, you are able to research case law using the electronic law library. Inmates remain in their cells and request legal information by use of a legal request form. Submit the completed legal request form with the legal information that you want retrieved to the law library. A civilian Palm Beach County Sheriff's Office law library staff person will process the information and forward it back to you.

Each inmate shall be provided reasonable and meaningful access to legal material. All law library requests are for his/her use only. Law books are also located in all housing units/control rooms. Any inmate found using the law library to obtain legal material for anyone other than himself/herself will be disciplined in accordance with inmate conduct and discipline rules.

G-13.   PRE-RELEASE COUNSELING
All inmates, through the PBSO Re-Entry Program, shall be able to participate in release preparation counseling. This program provides information on community agencies, which may provide guidance and assistance after release. You will be asked at the time of your release if you are interested in any of the information available or you may submit an INMATE REQUEST FORM to the programs section. This information may include, but is not limited to community agencies, which provide for:  1) employment 2) shelter 3) mental health 4) drug and alcohol abuse counseling and 5) transportation.

G-14.   EDUCATIONAL PROGRAMS
Adult Basic Education (ABE) classes are offered. Basic reading, writing and math skills will be taught. These preparatory classes will provide the basic knowledge for inmates to take the GED test. Upon your passing the GED test, diplomas are issued. Inmates interested in participating should submit their request to the programs section. Secondary education classes are offered and are mandatory for juvenile inmates up to seventeen (17) years old. These classes are a continuation of regular school. Inmates receive high school credit for attendance. All participants in these programs will abide by the instructions of the teacher.

Exceptional Services Program (ESP) is an academic program offered by the Palm Beach County School District. Eligible individuals are those who have not

graduated from high school and persons with disabilities under the age of 22 who have not graduated with a standard diploma or its equivalent and are detained in a county detention center. If you are eligible; a staff member from the Palm Beach County School District will contact you. If you are interested and you have not been contacted, submit a request to Inmate Programs for further information.

G-15.    CHILD CARE AND PLANNING (FEMALE INMATES ONLY)
When the medical department verifies that you are pregnant, you will be scheduled for pre-natal care.

It is the policy of the Sheriff's Office that use of restraints on pregnant inmates will be in accordance with FSS 944.241.

Healthy Beginning/Healthy Babies/Healthy Mothers
The Healthy Beginning program provides pre and post natal education and awareness to female inmates who are pregnant. Nurses from the program will routinely visit inmates who are pregnant to provide pre and post natal services.

The Healthy Babies/Healthy Mothers program works with the Healthy Beginning nurses. This program identifies and addresses the social service needs of inmates who are pregnant (pre and post release) through case management. Social Workers from the agency provide intensive services for the pregnant inmates. Services are extended to the pregnant inmates and their families if they have children under the age of three (3). Inmates will not need to send a request to be a part of this program. The medical department will notify the facilitators of this program and they will contact the pregnant inmate.

G-16.    WORK PROGRAMS
All able-bodied county sentenced inmates are required to work and may be assigned to the work program. Job assignment is based upon medical and security clearance, as well as job availability. The Sheriff's Office offers alternative custody programs, such as house arrest and work release. Placement into these programs is at the discretion of the Sheriff's Office and the presiding judge. While work release is limited to sentenced inmates, the "in-house arrest" program is available to both sentenced and pre-trial detainees. Send your Inmate Request to the Alternative Custody Unit to determine your eligibility.

G-17.    MARRIAGES
Request for marriage must be submitted to the Corrections Chaplain. The marriage of an inmate, while incarcerated, may be permitted provided there is no cost to the Palm Beach County Sheriff's Office and there is no violation of security and/or safety of staff or inmates.

G-18.    DEATH OF A FAMILY MEMBER
In the event of a death of a verifiable immediate family member (spouse, child, mother, father, sister, brother), and you are granted permission by the Classification division commander to attend the funeral service, certain requirements must be met. You must be escorted by two (2) deputies to and from

the service at a rate of pay determined by the Sheriff's Permit Office (you are responsible for this payment). All funds must be on deposit with the Sheriff's Office twenty four (24) hours prior to leaving for the service.

G-19.    NEXT OF KIN NOTIFICATION
Serious injury or illness can happen to anyone at any time. During the booking process you were asked to identify a family member, friend or other person you want us to notify in the event of a serious injury, illness or death. If you want to change the person you want notified or if you did not list someone at the time of booking, send an INMATE REQUEST FORM to the Classification Section.

G-20.    INMATE FEES FOR SUBSISTENCE
Inmates will be charged fees in accordance with FSS 951 and mandates from the Board of County Commissioners.

In addition, all inmates will be required to pay certain medical fees, associated with their incarceration (FSS 951.032).

Upon release, all of your personal property and money will be returned to you, minus any fees as stipulated. It is your responsibility, as well as staff, to ensure that all property and money has been returned to you. If you owe debt, the debt will remain on your account for a period of three (3) years (FSS 951.032). Every inmate who owes debt to the facility at the time of release will receive a statement of the amount owed for fees and services while incarcerated in a Palm Beach County Detention facility. Debts will be turned over to a billing and fee recovery service system for collection.

If you are rebooked into a Palm Beach County Detention facility within three (3) years and the debt has not been paid, any monies you have at the time of booking will be applied to the outstanding debt.

G-21.    INMATE MOVEMENT
Inmates must be in a single file line when escorted throughout the facility; for example, court, recreation, church services, visitation, medical, etc. You may be required to be in restraints during such movement.

G-22.    SELF HELP GROUPS
A variety of programs to assist with personal growth are available to inmates such as Alcoholics Anonymous (AA) and Narcotics Anonymous (NA). Check the inmate programs schedule for your facility and if interested, submit an Inmate Request form to programs. If you need any assistance with the form, ask the deputy assigned to your housing unit/floor.

Substance Abuse Education – Another Way Program:
THE ANOTHER WAY program provides substance abuse education and awareness services to individuals who specifically request and commit to be a part of the program. This intervention program strives to educate, motivate, and refer inmates to a road of recovery from substance abuse addition. These voluntary

services are provided for pretrial and county sentenced inmates who are located in the general jail populations and are available to both male and female inmates.

G-23.   VOTERS PROGRAM

Assistance will be given to any eligible inmate wishing to vote through absentee ballot or wishing to register to vote. You are eligible to vote or register to vote if you are: a Florida resident, not adjudicated, mentally incapacitated with respect to voting, not claiming the right to vote in another county or state or a convicted felon without rights restored. You may register to vote at any time. You will need to submit an Inmate Request to the Inmate Programs Office requesting to register to vote. Voting services for inmates will only occur during major elections. You will be notified as to when and how to submit your request to vote.

G-24.   BUS PASS PROGRAM

At the time of release, a one day pass is available to you. This bus pass can be used to travel within Palm Beach County using the Palm Tran Transit System. In order to receive your bus pass, you must request it at the time of your release and complete the necessary form.

G-25.   ANGER MANAGEMENT

This is a program where inmates learn how to effectively deal with negative emotions. It teaches how to re-channel thinking for positive results. This program will be accessible to county sentenced inmates through the Re-Entry program and inmates housed in general population who participate in the Life Skills Program.

G-26.   SOCIAL SECURITY PROGRAM

You may receive the following assistance:
- Obtain your Social Security Card
- Get your benefits reinstated
- Help understanding your benefits
- Make changes to your benefits
- Get help with any questions you may have regarding Social Security

This agency participates in the Social Security pre-release programs which will assist you in determining if you are eligible for Social Security benefits and/or assisting you with obtaining benefits. To get help with your Social Security needs, send an Inmate Request to the Programs Office.

G-27.   COMMUNITY RE-ENTRY IDENTIFICATION CARDS

To provide inmates who are released from the Palm Beach County's Sheriff's Office Detention Facilities with a form of identification, which **might** be used in instances where identification is required. Send an Inmate Request Form to the Programs Office if you are interested in receiving an identification card.

G-28.   CREDIT ON FINES AND COST

Every county sentenced working prisoner shall be entitled to receive, together with subsistence, a credit at the rate of 30 cents per diem, on account of fines and costs adjudged against him or her. Upon release, if requested, each entitled inmate shall

be provided with a letter that will serve as notice to the number of days for which the inmate is to receive the per diem credit. It will be the inmate's responsibility to deliver the notice to the clerk of courts to have the credit applied.

## H.    INMATE CONDUCT AND DISCIPLINE

H-1.    CONDUCT

You are required to obey all rules and regulations of our detention facilities. If you are found guilty of violating the rules and regulations under the Florida Model Jail Standards, you can be subject to disciplinary confinement, loss of gain time and/or loss of privileges. Criminal acts within our detention facilities will not be tolerated and will be prosecuted to the fullest extent of the law.

H-2.    RULES

A.    CATEGORY 1 OFFENSES:

1-1    Battery of any staff member
1-2    Sexual battery
1-3    Making threats of sexual assault/battery to another
1-4    Setting a fire or tampering with an electrical outlet, fixture or fire detection/suppression device
1-5    Rioting or encouraging others to riot
1-6    Escape, attempting or planning escape
1-7    Possession, attempted possession or introduction of any explosive, ammunition or other weapon
1-8    Throwing, tossing or expelling bodily, hazardous or chemical fluids or material

B.    CATERGORY II OFFENSES:

2-1    Battery of any person (other than a staff member)
2-2    Engaging in sexual acts with others
2-3    Fighting
2-4    Extortion, blackmail, protection, demanding or receiving money or anything of value in return for protection against others to avoid bodily harm or under the threat of informing
2-5    Being in an unauthorized area
2-6    Interfering with the taking of count
2-7    Tampering with or blocking any locking device
2-8    Possession or attempted possession of contraband (Any item possessed by an inmate or found within the facility that is illegal by law or not authorized for retention or receipt by the inmate and not issued through regular facility channels)
2-9    Conduct which disrupts or interferes with the security or orderly running of the institution
2-10   Giving or offering any official or staff member a bribe or anything of value
2-11   Refusing to obey an order of any staff member

|       |                                                                                                                                                                                                            |
| ----- | ---------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------- |
| 2-12  | Indecent exposure, lewd exhibitionism or obscene conduct                                                                                                                                                    |
| 2-13  | Destroying, altering, damaging or defacing government property or the property of another person                                                                                                            |
| 2-14  | Making or consuming intoxicants or being intoxicated                                                                                                                                                        |
| 2-15  | Making sexual proposals                                                                                                                                                                                     |
| 2-16  | Wearing a disguise or mask                                                                                                                                                                                  |

C.    CATERGORY III OFFENSES:

|       |                                                                                                                                                                                                            |
| ----- | ---------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------- |
| 3-1   | Threatening another with bodily harm or any offense against his/her person or his/her property                                                                                                              |
| 3-2   | Refusing to work, encouraging others to refuse to work or participating in work stoppage                                                                                                                    |
| 3-3   | Engaging in or encouraging a group demonstration                                                                                                                                                            |
| 3-4   | Failing to stand count                                                                                                                                                                                      |
| 3-5   | Stealing (Theft)                                                                                                                                                                                            |
| 3-6   | Insolence toward a staff member                                                                                                                                                                             |
| 3-7   | Lying or providing a false statement to a staff member                                                                                                                                                      |
| 3-8   | Mutilating, altering, or misuse of issued clothing, bedding, linen or mattress                                                                                                                              |
| 3-9   | Misuse of authorized medication                                                                                                                                                                             |
| 3-10  | Failure to identify oneself to any staff member when requested to do so                                                                                                                                     |
| 3-11  | Conduct that is disruptive or interferes with a regularly authorized program, service or activity to include, but not limited to: recreation, visitation, canteen, religious programs, library, law library, substance abuse awareness programs or clinic |
| 3-12  | Violation of Alternative Custody program rules and regulations to include, but not limited to: tampering or destroying electronic monitoring equipment, failure to return to a facility or residence or use of intoxicants |
| 3-13  | Counterfeiting, forging or unauthorized reproduction of any document, article of identification, money, security or official paper                                                                          |
| 3-14  | Loaning of property or anything of value for profit or increased return                                                                                                                                     |
| 3-15  | Unexcused absence from work or any assignment                                                                                                                                                               |
| 3-16  | Failing to perform work as instructed by a staff member                                                                                                                                                     |
| 3-17  | Tattooing or self-mutilation                                                                                                                                                                                |
| 3-18  | Unauthorized use of mail or telephone                                                                                                                                                                       |
| 3-19  | Giving money or anything of value to, accepting money or anything of value from, another inmate, a member of his/her family or friends                                                                      |
| 3-20  | Smoking where prohibited or possession of smoking paraphernalia                                                                                                                                             |
| 3-21  | Failure to wear wristband (identification band)                                                                                                                                                             |

3-22    Altering, damaging or tampering with wristband (identification band)

D.    CATEGORY IV OFFENSES:

4-1    Using abusive or obscene language

4-2    Adulteration of any food or drink

4-3    Gambling, preparing or conducting a gambling pool, possession of gambling paraphernalia, trading, bartering or gambling for food trays

4-4    Malingering or feigning an illness

4-5    Participating in an unauthorized meeting or gathering

4-6    Failure to follow safety or sanitation regulations

4-7    Using any equipment or machinery contrary to instructions or posted safety standards

4-8    Being unsanitary or untidy, failing to keep one's person and one's quarters clean

4-9    Unauthorized contact with the public

4-10    Correspondence or contact with a visitor in violation of posted regulations

4-11    Use of another inmate's identification or information for any reason is prohibited

## H-3. DISCIPLINARY REPORTS, HEARINGS, SANCTIONS AND PROCEDURES

Staff member's witnessing or having reasonable belief that an inmate has committed a violation of the rules and regulations shall prepare an Inmate Disciplinary Report and Incident Report. A separate disciplinary report and supporting documentation will be provided for each rule infraction.

A.    Criminal Prosecution: Where an inmate allegedly commits an act covered by criminal law, the supervisor will forward a copy of all related reports to the Corrections Criminal Investigator. The Corrections Criminal Investigator shall determine whether or not the information will be filed with the State Attorney's office for prosecution.

B.    Investigations:

1.    When an alleged rule violation is reported, the shift supervisor will cause an appropriate investigation to determine if the circumstances support the charges. The investigation shall begin within twenty four (24) hours from when the violation is reported and will be completed without unreasonable delay, unless there are exceptional circumstances for delaying the investigation.

2.    An inmate charged with a rule violation shall receive a written statement of the charges (a copy of the Disciplinary Report), including a description of the incident and specific rule violated by the investigating officer. The inmate is given the statement at the same

time that the disciplinary report is filed with the disciplinary committee but no less than twenty four (24) hours prior to the disciplinary hearing. The hearing may be held within twenty four (24) hours with the inmate's written approval. The investigator will record in the appropriate box of the Disciplinary Report the time, date and his/her signature of the delivery of charges.

3. At the time the charges are delivered to the inmate, the investigator will inform the inmate that a hearing will be held no later than five (5) days (excluding weekends and holidays) after the incident. The inmate will have no less than twenty four (24) hours prior to the hearing to prepare his/her defense, unless the inmate has elected to waive the twenty four (24) hour requirement. If the inmate chooses to waive this requirement, the waiver must be in writing and signed by the inmate. The officer shall also have the inmate note in the appropriate box of the Disciplinary Report the time and date of the signing of the waiver.

4. Upon completion of the investigation, the investigating officer shall complete the appropriate portion of the Disciplinary Report and forward the report to the facility's Inmate Discipline Coordinator or designee.

C. Disciplinary Hearing, Findings and Action:

1. An impartial disciplinary committee or hearing review officer, as determined by the division commander, shall conduct a hearing for rule violations. Any member of the disciplinary committee or any person appointed as a disciplinary committee member shall be disqualified if he/she has any involvement in the case against the inmate or investigated the violation.

2. The disciplinary committee's or hearing officer's findings shall enumerate the specific facts derived from the disciplinary report, investigation or the witness statements and what specific evidence was used in the disciplinary team's or hearing officer's conclusion.

3. The disciplinary committee or hearing review officer may decide to postpone or continue the hearing beyond the established time constraints for a reasonable period and for good cause. Reasons for granting a postponement or continuance may include, but are not limited to:

   a. Preparation of a defense within a reasonable time frame agreed upon by the committee
   b. Illness
   c. Unavailability of the inmate

    d.      Further investigation of factual matter relevant to the hearing

4.    When holding a disciplinary hearing, the hearing officer, chairperson or a majority of the members shall have the authority:

    a.      To require the production of documents or call witnesses.

    b.      To review the inmate request for assistance, for witnesses requested by the inmate or for any evidence which they wish to call or present. The request for witnesses will be denied if doing so would create a risk of reprisal, undermine authority or otherwise present a threat to the security of the institution. No witnesses shall be called if it is clear that such testimony would be irrelevant, immaterial or repetitive. Notifications shall be made in the report with reasons for declining to call requested witnesses or for restricting any information.

    c.      To offer a staff member to assist the inmate during the hearing when the inmate is apparently illiterate, has a language barrier or the complexity of the issues makes it unlikely that the inmate would be able to properly represent him or herself. The disciplinary hearing officer or committee will require the proper decorum throughout the disciplinary hearing.

5.    The inmate charged with a rule violation shall have the following rights at a disciplinary hearing:

    a.      An inmate charged with rule violations shall be present at the hearing unless he/she waives in writing their right to attend the hearing, refuses to attend the hearing, or his/her behavior during the hearing justified removal there from: the absence of an inmate from a hearing and the reason therefore shall be documented.

    b.      To have the opportunity to make a statement and present documentary evidence at the hearing.

    c.      To request witnesses on their behalf, which may be limited in number by the disciplinary hearing committee or hearing officer when the evidence to be presented is unduly cumulative information.   Justification for denying witnesses will be in writing.

    d.      The inmate shall receive a copy of the written decision.

    e.      The time spent in disciplinary confinement shall be proportionate to the offense committed but in no event shall be greater than 30 days per violation.

    f.      The inmate shall have the right to appeal the decision of the hearing officer or committee to the major.  The decision of the major is final.

    g.      All steps in the disciplinary process shall be maintained as a written record. However, if the inmate is found not guilty, the disciplinary report shall be so noted and shall be removed from the inmate's file.

    h.      The decision shall be based solely upon the evidence presented at the hearing and shall contain a statement of the reasons for the decision and the evidence relied upon.

6.      The hearing officer or disciplinary hearing committee chair shall be responsible for completing the "Hearing" portion of the Disciplinary Report, including the names of witnesses called and all restrictions recommended against the inmate during the hearing as well as the justification for the restrictions.

7.      The majority of the disciplinary hearing committee or the hearing officer's findings and recommendations shall meet the following guidelines:

    a.      Upon the conclusion of the hearing, the hearing officer or committee members, in closed deliberations, shall determine the validity of the charges and determine what sanctions should be imposed upon the inmate if found guilty.  The decision shall be based solely on information obtained during the hearing process, including staff reports, the statements of the inmate charged and evidence derived from witnesses and documents.

    b.      Recommendations for discipline shall not be arbitrary nor capricious nor in the nature of retaliation or revenge. Corporal punishment of any kind is prohibited.

    c.      The hearing officer or chairperson will announce the findings and recommended sanctions to the inmate and record them, along with the reasons for the decision and evidence relied upon, in the "hearing" portion of the Disciplinary Report.

      d.     If the inmate is found guilty, the hearing officer or chairperson will advise the inmate of their right to appeal.

8.     The hearing officer or disciplinary committee shall make one of the following findings:

      a.     Dismiss the charge.  If the charge is dismissed, the disciplinary report shall not be posted or placed in the inmate file.  The dismissal of a disciplinary report may occur due to procedural errors, technical errors or duplication of charges. A dismissal is without prejudice and may be rewritten and reprocessed under the same time constraints as new charges.

      b.     Not guilty.  If the inmate is found not guilty, the disciplinary report shall not be posted or placed in the inmate file.  The inmate shall be found not guilty when the facts do not support the charge.

      c.     A written statement that shows what evidence the hearing officer/committee relied on for a guilty finding.

9.     Any disciplinary action (except loss of gain time) being imposed with any other disciplinary action should be clearly stated in the disciplinary report as to the concurrent or consecutive requirements.  If the disciplinary team or hearing officer does not specifically state concurrent or consecutive requirements, the disciplinary action shall be considered consecutive. Loss of gain time shall not be concurrent with any other loss of gain time and shall be cumulative.

10.     If the inmate is found guilty, the disciplinary committee or hearing officer shall impose any one or a combination of the following actions:

      a.     Restriction from and/or alternative access to, recreation, visiting, religious services, non-attorney related telephones privileges and/or law library for a period not to exceed sixty (60) days.  These sanctions may be imposed only when there is substantial reason to do so or when the violation occurred during that particular activity.

      b.     Suspend any other privileges for a period of time not to exceed:

          1)     30 days for a Category I Offense
          2)     20 days for a Category II Offense
          3)     10 days for a Category III Offense
          4)     5 days for a Category IV Offense

c.      Confiscate property (related to the offense)

d.      Determine the disposition of contraband items.

e.      Require inmates to pay for damaged, destroyed or misappropriated property or goods, whether PBSO or personal.

    1)    If two or more inmates are each found to be responsible for the loss or destruction of an item, they each shall be liable for the full amount. However, the total amount collected shall not exceed the amount of the loss.

    2)    Payment for damaged, destroyed or misappropriated property shall be at the replacement value and inmate or staff labor costs shall not be included. However, outside labor costs may be charged when the damage is the result of a deliberate destructive act. In such cases, documentation shall be placed in the inmate's file detailing the cost involved. The total invoice cost shall be provided to the inmate and copies attached to the disciplinary report.

    3)    If an inmate does not have sufficient funds to cover the repair or replacement costs, a notation shall be made on the inmate's bank account for possible future payment. Should the inmate ever receive money during the current commitment or during service of continuing consecutive commitments, the Sheriff's Office will be paid prior to issuing funds to the inmate.

    4)    Costs for medical services resulting from injury may not be imposed.

f.      Recommend loss of accrued gain time up to the maximum penalty:

    1)    15 days for Category I Offense

    2)    10 days for a Category II Offense

    3)    5 days for a Category III Offense

    4)    1 day for a Category IV Offense

    5)    Generally, "exceptional industry gain time" will be forfeited unless "good conduct gain time" is specified. A specific number of days

recommended for forfeiture shall be indicated.  Whenever loss of gain time is recommended, a determination must be made that the inmate has accrued sufficient gain time in order for the forfeiture to be processed.

6)     For each sustained charge of escape or attempted escape, mutinous conduct or other category #1 offense, all the commutation which shall have accrued in favor of a county prisoner up to that day shall be forfeited, except that in case of escape if the prisoner voluntarily returns without expense to the state or county then such forfeiture may be set aside, if in judgment the prisoner's subsequent conduct entitles him or her thereto.

7)     All or any part of the gain time earned by a county prisoner and any extra gain time allowed him or her, if any, shall be subject to forfeiture for violation of any law of the state or any rule or regulation of the institution.

g.     Removal from or reassignment of work duties (coordinated with Classification.)

h.     Housing reassignment (coordinated with Classification)

i.     Remove inmates on supervised community release (House Arrest, Work Release) from the program and assign them to a designated facility (coordinated with Alternative Custody and Classification.)

j.     Place the inmate in disciplinary confinement.

1)     This period of time may not exceed the maximum penalty for the violation as listed below.

a)     30 days for a Category I Offense

b)     20 days for a Category II Offense

c)     10 days for a Category III Offense

2)     Disciplinary confinement should be utilized only as a last resort.  The time spent by an inmate in disciplinary

confinement shall be proportionate to the offense committed.

3) For the purpose of disciplinary confinement sanctions, a day is a twenty four (24) hour period beginning at the time the inmate is placed in disciplinary confinement.

4) The maximum confinement sanction for rule violations is no more than thirty (30) days for all violations arising out of one incident. Continuous disciplinary confinement for more than thirty (30) days requires the review and approval of the division commander or designee.

5) Inmates placed into disciplinary confinement have been found guilty of rule violations that directly impact the safety and security of a facility. Sanctions of any Disciplinary Confinement time include the loss of newspaper, canteen (except for necessary hygiene items), library services (reading books are provided in the segregation unit) and personal phone calls. Recreation and visitation can be restricted if the inmate poses a substantial threat to staff or committed a violation in relation to recreation or visitation. Telephone privileges consist only of calls related specifically to accessing the judicial process and family emergencies, as determined by the division commander or Chaplain.

11. The following are prohibited sanctions and may not be imposed as discipline:

a. Any form of dietary or nutritional restriction or use of food or meals as punishment.

b. Any form of corporal or unusual punishment.

c. Any form of discipline imposed by another inmate.

d. Deprivation of clothing, bedding or necessary personal hygiene items. (This does not apply to those inmates who destroy such items or use them to harm themselves or others. In such cases the division commander or designee will

be notified and the decision to deprive the items will be reviewed at intervals not to exceed 24 hours).

e.     The use of restraints as punishment.

f.     Any form of interference with daily functions of living or hygienic needs, such as sleeping or use of toilet facilities.

12.     If an inmate has been placed in administrative confinement pending a disciplinary hearing and the committee subsequently recommends a term of disciplinary confinement, the disciplinary committee shall consider the time served in administrative confinement in determining the total number of days of recommended disciplinary confinement.

13.     Inmates held in disciplinary confinement for more than 60 days are allowed access to, but not limited to: Educational services, Commissary services, Library services, Social services, Counseling services, Religious services, Telephone privileges and Recreational programs.

D.     Division Commander's Review: The division commander or designee shall review the report of the disciplinary hearing for the purpose of:

1.     Ensuring the hearing officer or disciplinary hearing committee, as well as the hearing itself, conforms to policies and procedures.

2.     Agreement or reduction of the disciplinary sanctions, if any. The division Commander or designee may not increase the sanctions recommended by the committee.

E.     Written Notification: The Inmate Discipline Coordinator or designee shall provide the inmate with a completed copy of the Disciplinary Report.

F.     Hearing Record: The Disciplinary Report, Disciplinary Hearing and supporting documents are a record of the disciplinary process. A copy of this record shall be kept in the inmate's classification file only if found guilty. This record shall be retained for at least five (5) years.

G.     Appeals: All decisions of the hearing officer or disciplinary hearing committee may be appealed by the inmate to the major or designee. Guidelines for appeals are as follows:

1.     Appeals must be made within five (5) days, excluding weekends and holidays, from the date of the division commander's approval or modification of the sanctions. The inmate submitting an Inmate Grievance form will make the appeal.

2.     The major or designee shall consider the appeal's merits based on the following criteria:

a.      Was there substantial evidence to support the charge(s)?

b.      Was there compliance with these policies and procedures?

c.      Were the sanctions imposed proportionate to the offense committed?

3.      The major or designee shall either affirm or reverse the decision and respond to the inmate in writing within five (5) days (excluding weekends and holidays) of the Inmate Grievance (appeal) being received by the Grievance Coordinator and recorded.

4.      The major or designee's decision is final.

## I.      SEXUAL ASSAULT AWARENESS

### I-1.      SEXUAL ASSAULT

Under the 2003 Prison Rape Elimination Act (PREA), the Palm Beach County Sheriff's Office Department of Corrections is committed to emphasizing a zero tolerance of the sexual abuse/harassment of inmates, either by staff or other prisoners. All reports of sexual abuse/harassment are investigated promptly and offenders will be prosecuted. The commander of Standards and Staff Development is designated as the PREA Coordinator.

Sexual abuse is a nonconsensual coerced act implied by threat or violence. It is contact between the mouth and the penis, vulva or anus; penetration of the anal or genital opening of another person, however slight, by a hand, finger or object or other instrument. It is also intentional touching, either directly or through clothing, of the genitals, anus, groin, inner thigh or buttocks of another person, excluding incidental to a physical altercation. This does not include a bona fide act for medical purposes.

Sexual assault/harassment affects everyone, either directly or through the experiences of those we care about. It is not only a women's issue, as it can affect persons of any gender, age, race ethnic group, socioeconomic status, sexual orientation or disability.

PBSO will use information you gave at the time of your booking to assist us in assigning safe housing. Our goal is to keep separate those inmates at risk of being sexually victimized from those who are high risk for being sexually abusive. Placement and programming assignments for each gay, lesbian, bi-sexual, transgender, intersex or gender non-conforming (GLBTIG) inmate will be considered on a case by case basis. All GLBTIG inmates' own views with respect to his or her own safety shall be given serious consideration.

### I-2.      SEXUAL ASSAULT AVOIDANCE

The only way a sexual assault can be prevented is when a potential rapist chooses NOT to rape. However, you may avoid an attack by keeping the following guidelines in mind:

- Be aware of situations that make you feel uncomfortable. Trust your instincts. If it feels wrong, **LEAVE.**
- Don't let your manners get in the way of keeping yourself safe. Don't be afraid to say **"NO"** or **"STOP IT NOW".**
- Walk and stand with confidence. Many aggressors choose victims who look like they won't fight back or are emotionally weak.
- Avoid talking about sex and casual nudity. These things may be considered a come-on or make another inmate believe that you have an interest in a sexual relationship.
- Do not accept commissary items or other gifts from other inmates. Placing yourself in debt to another inmate can lead to the expectation of repaying the debt with sexual favors.
- Avoid secluded areas. Position yourself in plain view of staff members. If you are being pressured for sex, report it to any staff member immediately.

I-3.    WHAT TO DO IF YOU ARE SEXUALLY ASSAULTED
- Get to a safe place. IMMEDIATELY REPORT THE ATTACK TO ANY STAFF MEMBER.
- The agency prohibits disciplinary action for a report of sexual abuse made in good faith based upon a reasonable belief that the alleged conduct occurred, even if an investigation does not establish evidence sufficient to substantiate the allegation.
- The longer you wait to report the attack the more difficult it is to obtain the evidence necessary for a criminal and/or administrative investigation.
- You may have serious injuries that you are not aware of and any sexual contact can expose you to sexually transmitted diseases. You will receive prompt medical attention.
- Do not eat, drink, change clothes, wash, bathe, shower, rinse your mouth, brush your teeth, urinate or defecate until examined by a forensic specialist.  Any of these may destroy important evidence.
- If you are a victim or witnessed an attack, but you yourself are unwilling to report it to a staff member you may give the information to:
  1. A Clergyman
  2. Your attorney or public defender
  3. Any medical or mental health staff
  Or you may submit:
  1. An inmate request slip or written correspondence
  2. A grievance
  You may also call the 24 hour Rape Crisis Hotline at no charge on the inmate phone system by first selecting the correct language, then pressing the 'collect' prompt and last by dialing 7777, which will directly connect to them.
- You will receive a forensic exam and be assigned a victim rights counselor.

- You will receive follow-up medical and mental health care while in custody. You may also request to see a mental health provider at any time you feel necessary.
- There is no fee associated with care provided for this alleged assault.

I-4.    FACTS FOR THE INMATE THAT SEXUALLY ASSAULTS OTHER INMATES
- You will be criminally charged under Florida Law. You will be issued a disciplinary report. If found guilty, sanctions will be harsh.
- Your supervision level will be reviewed and likely increased, which could mean a transfer to a higher security level or unit with significantly less freedom of movement and limited privileges.
- Your facility history and housing adjustments will remain on record and will influence any future housing assignments at a PBSO facility.
- If you have family, how will this affect them and/or how will it affect their ability to visit you?

I-5.    IF YOU HAVE TROUBLE CONTROLLING YOUR ACTIONS
- Seek help from mental health staff.
- Consider participating in programs designed to control anger or reduce stress.

I-6.    TO REDUCE IMMEDIATE FEELING OR ANGER OR AGGRESSION
- Seek help from the Mental Health or Religious Staff.
- Try talking to or writing a friend.
- Meditate or do breathing exercises to relax.
- Work on a hobby or engage in some type of exercise.

I-7.    DID YOU KNOW
- Rape and sexual assault happens to females and males of all ages, from infancy to the senior years.
- 98% of males who have raped boys reported they are heterosexual. Most males who assault men or women are married or report having girlfriends.
- Sexual assault has nothing to do with the victim's present or future sexual orientation. Victims may be either heterosexual or homosexual.
- A survivor is not at fault for the rape, even if she/he was in a secluded area or had previous consensual sex with the attacker.
- The fact a male victim of sexual assault ejaculated or became sexually aroused does not mean they were not raped or that they gave consent. These are normal, involuntary physiological reactions.
- It is common for survivors of sexual assault to have feelings of embarrassment, anger, guilt, panic, depression and fear even several months or years after the attack. Other common reactions include loss of appetite, nausea or stomachaches, headaches, loss of memory and/or trouble concentrating and changes in sleep patterns.

## J.        LIMITED ENGLISH PROFICIENCY

J-1.        LIMITED ENGLISH PROFICIENT (LEP) POLICY

The Palm Beach County Sheriff's Office Department of Corrections (PBSO DOC) provides limited English proficient (LEP) inmates (including detainees) and members of the public (including LEP parents of minors being held by the DOC) with meaningful access to important information, rights and services. LEP persons are individuals who do not speak English as their primary language and have a limited ability to read, write, speak or understand English. LEP inmates will be able to both participate effectively and also receive effective communication in their language in important services, programs and proceedings; notices of rights and responsibilities; disciplinary actions and proceedings; medical and mental health requests and services; religious, disability and other accommodations and the inmate request system. The DOC does not retaliate against any inmate or member of the public for requesting language assistance and encourages and trains staff to ensure that they are communicating effectively with LEP persons.



# EXHIBIT A-6

**Cooperative Agreement**

**between**

**The School Board of Palm Beach County, Florida**

**and**

**The Palm Beach County Sheriff's Office (Jail)**

This Cooperative Agreement ("Agreement"), dated July 1, 2016, is by and between The School Board of Palm Beach County, Florida, hereinafter referred to as the "School District" and The Palm Beach County Sheriff's Office, hereinafter referred to as "PBSO".  The School District and PBSO shall be collectively known hereafter as the "Parties."

**WHEREAS,** the School District and PBSO are mutually committed to cooperate in the development of a program designed to offer high quality educational services to minors, who have not graduated from high school and persons with disabilities under the age of 22 who have not graduated with a standard diploma or its equivalent, that are detained in a county detention facility, as defined in section 951.23, Florida Statutes, as a result of being charged with or convicted of either a felony or misdemeanor.  Specifically, this Cooperative Agreement outlines the educational program (the "Program") that will be offered to eligible students awaiting trial in delinquency matters and eligible students that have been sentenced to serve 364 days or less in a county detention center; and

**WHEREAS,** the School District and PBSO hereby pledge to develop and support joint initiatives that will facilitate the effective and efficient delivery of services for youth served in the educational Program, and

**WHEREAS,** the School District exercises general authority over all public education programs within the county and PBSO exercises sole authority over the operation of the county detention facilities, for which the School District assumes no liability by its execution of this Agreement; and

**WHEREAS,** the Parties enter into this Agreement in order to assure compliance with applicable Florida statutes and State Board of Education rules, including but not limited to, the following:

A.  Section 951.176, Florida Statutes, (Provision of education programs for youth)

B  Section 1001.42(4) (n), Florida Statutes, (Powers and Duties of District School Board)

C. Section 1003.21, Florida Statutes, (School Attendance)

D. Section 1003.53, Florida Statutes, (Dropout Prevention and Academic Intervention)

E. Section 1006.07(5), Florida Statutes, (Educational Services in Detention Facilities

F.  Chapter 6A-4, Florida Administrative Code (Certification)

1

NOW THEREFORE, in consideration of the mutual presentations, terms, and covenants hereinafter set forth, the Parties hereby agree as follows:

1.    **RECITALS**

The recitals set forth above constitute an integral part of this Agreement and are

incorporated herein by this reference with the same force and effect as if set forth

herein as Agreement of the Parties.

2.    **TERM**

The term of this Agreement shall be from July 1, 2016 and shall expire on June 30, 2018, unless otherwise terminated in accordance with Section 13.

3.    **Parties' Responsibilities**

**A.    PBSO Shall:**

i.    Provide the School District Staff with access to adequate space and a safe environment for the provision of the educational Program to students housed in county detention facilities. PBSO is solely responsible for utilities and maintenance of its facilities, including the space made available to the School District for the provision of the services set forth herein;

ii.    Use reasonable means to protect and safeguard all non-consumable instructional materials and computers supplied by the School District and housed at PBSO's facilities. PBSO will replace or reimburse the School District for the actual cost of any materials and equipment lost or damaged as a result of any act or omission of PBSO or any of its employees or agents;

iii.    Provide open and frequent communication and planning through regularly scheduled meeting with School District staff regarding student behavior, unusual events, or obstacle incurred in meeting the mutually predetermined goals.

iv.    Collaborate with School District staff to develop and implement a School Improvement Plan as required by the School District and Florida Statutes.

v.    The PBSO Program Section Manager shall attend or send a designee to the monthly School Advisory Meetings.

2

vi.   Submit reports in a timely manner as required by the School District and /or the Florida Department of Education.

vii.   Collaborate with School District staff to install instructional software on School District computers provided by the School District.

viii.   Permit access for School District staff to School District computers for instruction and the repair of non-functioning hardware and software owned by the School District in a timely manner. Except as stated within Section 7 of policy 3.29, District technology resources, including, but not limited to the use of computers, networks, copiers, biometric record readers, and communication devices such as cellular and office phones, personal digital assistants (PDAs) and facsimile machines, shall not be used for a private business or for the benefit of "for profit", or "not for profit" organizations unless the use of the technology will benefit the District or, as to "not for profit" organizations, if the organization benefits the children, schools or community and is not for religious or political purposes.

ix.   Provide written or verbal verification in a timely manner to the Department of Educational Alternatives of any student who is withdrawn from the Program or who is no longer eligible for services under this Agreement for any reason.

x.   Comply with the State of Florida immunization requirements as described in School District Policies.  Compliance with the current schedule of immunizations is required to be admitted to school or to attend classes.  A thirty-day waiver is provided for those students who are remanded by the courts to a program in Palm Beach County but whose records must be requested from another County in the State of Florida.

xi.   Receive technical assistance from the School District when developing and implementing any PBSO Rules, Policies, and Procedures pertaining to the provision of educational services for youth/students in the jail consistent with state and federal laws, rules and regulations.

xii.   Provide at least one deputy sheriff at all times who will be on duty for security within the housing unit and approximate area where the educational program is being provided and where School District staff is present.

xiii.   Provide a safe environment for planning periods and school related meetings.

xiv.   Represent and warrant that it does and shall comply with all state, federal and local laws, including the Civil Rights Act of 1964, IDEA, Title IX of the Education Amendment of 1974, and Section 504 of the Rehabilitation Act of 1973 and will at all times comply with local or State standards for health and safety of students.

xv.   Plan activities that do not conflict with the School District's provision of a minimum of 300 minutes of daily instruction.  The term of the educational program will be comprised of 250 days of instruction distributed over 12 months.  The School District may decrease the minimum days of instruction by up to ten (10) days for Teacher planning.

xvi.   Execute the Addendum Concerning Student Information, which is attached hereto and incorporated herein by this reference as Exhibit A. PBSO shall be designated as an "other school official" who partners with the School Board to provide certain institutional services or functions for which the School Board would otherwise use its own employees; is under the direct control of the School Board with respect to the use and maintenance of education records; and will use the personally identifiable information only for purposes for which the disclosure was made and will not disclose to any other party without prior consent of the parent or student (who has attained the age of 18). Such institutional services or functions shall include providing adequate facilities and a safe learning environment during the School Board's provision of educational services and assigning students to the Program based upon the estimated length of time the student will be in the county detention facility, the student's current level of functioning, and the student's eligibility for ESE services. PBSO agrees to limit the access to student records to personnel who have legitimate educational interest in the information contained in the records and acknowledges its obligation to perform this Agreement in a manner that maintains compliance with the requirements of state and federal law, including, but not limited to School Board policy 5.50; section 1002.22, Florida Statutes; and the Family Educational Rights and Privacy Act (FERPA), 20 U.S.C.§ 1232g, and 34 CFR § 99.

xvii.   Notify the Department of Educational Alternatives of the assignment of a student under the age of 21 to the county detention facility.

### B.    School District Shall:

i.   Provide an appropriate public education for students consistent with all state and federal rules, regulations, and laws that will include academic, English Language Learner support, special education services and career awareness.

ii.   Purchase and maintain sufficient materials, equipment, and supplies appropriate to the students' educational program.

iii.   Provide instructional personnel based on average daily attendance rates.

iv.   Provide when necessary, resource personnel (including Exceptional Student Education and English Language Learner) to ensure programmatic integrity as well as compliance.

v.   Coordinate planning for and provide instructional materials, instructional computer software, supplemental materials, textbooks and print and non-print materials.

vi.   Provide an educational program from July 1, 2016, through June 30, 2018, with minimal disruptions and enroll students for a minimum of 300 minutes each school day. Service will be provided in accordance with the School District-approved annual calendar.

### C.  Collaboration of the Parties

Work collaboratively with the School District to ensure that the educational Program serving   children and youth in a county detention center involved with the juvenile justice system meet the eleven (11) requirements of section 1425 of the No Child Left Behind Act of 2001, PL 107-110:

(a) work collaboratively, to ensure that SBPBC and PBSO facilities serve children and youth awaiting trial in delinquency matters, (b) youth charged as adults who are awaiting trial, and (c) youth that have been sentenced to 365 days or less with the opportunity to obtain a high quality education.

1)  Where feasible, the Parties will ensure that educational programs in the correctional facility are coordinated with the student's home school, particularly with respect to a student with an individualized education program under part B of the Individuals with Disabilities Education Act.

2)  If the child or youth is identified as in need of special education services while in the correctional facility, the Parties will notify the local school of the child or youth of such need.

3)  Where feasible, the Parties will provide transition assistance to help the child or youth stay in school, including coordination of services for the family, counseling, assistance in accessing drug and alcohol abuse prevention programs, tutoring, and family counseling.

4)  The Parties will provide support programs that encourage children and youth who have dropped out of school to re-enter school once their term at the correctional facility has been completed, or provide such children and youth with the skills necessary to gain employment or seek a secondary school diploma or its recognized equivalent.

5)  The Parties will work to ensure that the correctional facility is staffed with teachers and other qualified staff who are trained to work with children and youth with disabilities taking into consideration the unique needs of such children and youth.

6)  The Parties will ensure that educational programs in the correctional facility are related to assisting students to meet high academic achievement standards.

7)  To the extent possible, the Parties will use technology to assist in coordinating educational programs between the correctional facility and the community school.

8) Where feasible, the Parties will involve parents in efforts to improve the educational achievement of their children and prevent the further involvement of such children in delinquent activities.

9) The Parties will coordinate funds received under this subpart with other local, State, and Federal funds available to provide services to participating children and youth, such as funds made available under title I of Public Law 105-220, and vocational technical education funds.

10) The Parties will coordinate programs operated under this subpart with activities funded under the Juvenile Justice and Delinquency Prevention Act of 1974 and other comparable programs, if applicable.

11) If appropriate, the Parties will work with local business to develop training, curriculum based youth entrepreneurship education, and mentoring programs for children and youth.

## 4. AMENDMENTS

This Agreement may be amended by the written request of either party. Any proposed amendments or modifications shall be submitted by either party at least thirty (30) day prior to formal discussion or negotiation on the issue. Any amendments must be agreed to in writing by the authorized representative of each party.

## 5. CONFIDENTIALITY

Each party will protect the rights of students with respect to records created, maintained, and used by public institutions. It is the intent of this Agreement to ensure that parents and students have the right to access, to challenge, and to privacy with respect to records and reports. All applicable state and federal laws and regulations for these rights will be strictly adhered to.

## 6. NON-DISCRIMINATION

The Parties shall not discriminate against any employee or participant in this program because of race, age, religion, color, gender, national origin, gender identity, gender expression, marital status, disability or sexual orientation.

## 7. INDEMNIFICATION & INSURANCE

### A.    Indemnification:

The Parties recognize their liability for certain tortious acts of their agents, officers, and employees to the extent and limit in section 768.28, Florida Statutes, the State of Florida's partial waiver of sovereign immunity. Provided, however, this provision shall not be construed as a waiver of any right of defense that the School District and or PBSO may possess and reserves all such rights as against any and all claims that may be brought under this Agreement.

To the extent permitted by law, PBSO agrees to indemnify and hold harmless School District for and against all claims, suits, judgments, or damages, including court costs and attorneys' fees, which may result or which School District might suffer, arising out of the negligent or wrongful acts or omissions of PBSO, its officers, agents and employees, while in the performance of this Agreement.

To the extent permitted by law, School District agrees to indemnify and hold harmless PBSO for and against all claims, suits, judgments, or damages, including court costs and attorney fees, which may result or which PBSO might suffer, arising out of the negligent or wrongful acts or omissions of School District, its officers, agents and employees, while in the performance of this Agreement. School District is a self-insured entity pursuant to Chapter 768, Florida Statutes, and will maintain sufficient liability self-insurance funds as required by law throughout the term of this Agreement.

### B.    INSURANCE

Both Parties are self-insured entities pursuant to Chapter 768, Florida Statutes, and will maintain sufficient liability self-insurance funds as required by law throughout the term of this Agreement.

## 8. ASSESSMENT AND EVALUATION

The Parties shall initiate an assessment process which is coordinated and avoids duplication of services and ensures that eligible youth are evaluated for the purposes of implementing the most appropriate educational, residential, and/or treatment program available. Student academic performance will be evaluated quarterly by the School District.

The School District shall complete a student registration form for each student enrolled in the program. This form, reflecting PBSO's consent to enrollment must be signed and dated prior to program enrollment each time a student enters an Alternative Education Program.

7

## 9. CURRICULUM AND INSTRUCTION

The Parties shall work cooperatively to ensure:

Implementation of Individual Educational Plans for any student identified as an ESE and Student Performance Plans for all non-ESE students.

**The School District shall:**

A.  Provide teaching/learning materials and supplies which are necessary to provide appropriate instruction in courses required by the School District;

B.  Conduct an instructional program in accordance with School District policies and rules, which includes, but is not limited to scheduling and staffing patterns.

C.  School District shall furnish an appropriate education program for eligible regular and special needs students to include English Language Learners (ELL) students; and

D.  School District shall adhere to the guidelines and criteria in the School District Pupil Progression Plan and follow the State of Florida's curriculum frameworks, performance standards and graduation requirements, as well as applicable Federal and Florida State Laws and the Florida State Board of Education Rules.

## 10. ATTENDANCE

**School District shall:**

Provide accurate attendance records that are sufficient for fiscal and FTE audits and follow School District policies and procedures for truancy and attendance. School District instructional staff shall take attendance on a daily basis. Attendance records shall be maintained in a manner prescribed by the School District.

## 11. CERTIFICATION, LICENSURE AND STAFF DEVELOPMENT

A.  All professionals serving students under this Agreement must be appropriately certified by State of Florida law and/or meet applicable local licensure requirements.

B.  The School District shall provide teachers who have met certification requirements as set forth in Chapter 6A-4 of the Florida State Board of Education rules.

8

C.    The School District shall assign teachers to class in accordance with the Florida Course Code Directory and the District's School District-approved dropout prevention program plan;

D.    The School District recognizes the sensitive nature of correctional services and that security provisions are the responsibility of the PBSO and the School District will cooperate in this endeavor.

E.    A Security Clearance Request form must be fully completed submitted and approved by the Security Clearance Management Corrections Administration for all employees of School District providing services at any PBSO jail facilities and all such employees that will receive a PBSO badge must undergo Live Scan fingerprinting.

F.    The Sheriff's Office reserves the right to conduct its own investigation to the extent allowed by law, of any employee of the School District and to request any additional investigative background information including, but not limited to employment records of any personnel assigned to perform the services.

G.    All new employees of School District will receive an orientation training class by PBSO before delivering services with this program.

H.    The Sheriff's Office retains an absolute right to revoke, without notice, the privilege or authorization of any person to enter or remain on the premises of any of its Detention Facilities.

I.    The School District shall notify the PBSO upon termination or transfer of any employee. The notification may be verbal but must be followed by timely written notification.  The School District must also collect the Sheriff's Office's identification card from the employee and forward it to PBSO.

J.    The School District shall notify the PBSO of any corrective action, discipline matter, or situation involving its employees or agents that may adversely affect the safety or security of the Sheriff's Office the School District shall also immediately inform the Command of the affected Sheriff's Office's Facility of any and all imminent threats affecting safety or security.

K.    The School District shall take all measures necessary to ensure its employees, its agents or any form of sub-contractor comply with this Agreement, the Security rules and regulations of the PBSO and all Federal State and local laws, rules and regulations.

L.    While providing services to the PBSO, employees of the School District shall not:

i.    Use or be under the influence of controlled substances, unless prescribed by a physician.

ii.    Use or be under the influence of illegal substances or alcohol, or

iii.    Use or be under the influence of prescribed medications, if the effects of the medication may cause the employee to endanger his or her own life, endanger the lives of others,

9

place the employee or others at risk of bodily harm, or interfere with the security of the facility.

M.   Except as required by law or by a court of competent jurisdiction no information or data gained from the implementation of this Agreement with PBSO shall, without its permission, be disclosed or released by the School District, its employees, its agents or any form of sub-contractor to the public or to any person organization that would not have such information in the ordinary course of business.

## 12. TRANSITION

PBSO and the School District mutually agree to coordinate the preparation and planning for student transition from the jail to the student's home school or other approved public educational facility.  Prior to a student reaches 18 years of age, they will receive a transition meeting to discuss education options available for them.

## 13. TERMINATION

This Agreement may be terminated without cause by either party upon thirty (30) days' notice in writing.

## 14. GOVERNING LAW

This Agreement shall be governed by the laws of the State of Florida, and if any dispute arises hereunder, then venue shall lie in Palm Beach County, Florida

## 15. PUBLIC RECORDS

**PBSO shall:**

a. Keep and maintain public records that ordinarily and necessarily would be required by the School Board of Palm Beach County in order to perform the service to the Board under this agreement.
b. Upon request from the Board's custodian of public records, provide the Board with a copy of the requested records or allow the records to be inspected or copied within a reasonable time at a cost that does not exceed the cost provided in Chapter 119, Florida Statutes or as otherwise provided by law.
c. Ensure that public records that are exempt or confidential and exempt from public records disclosure requirements are not disclosed except as authorized by law for the duration of the Agreement term and following completion of the Agreement if the Agency does not transfer the records to the Board.
d. Upon completion of the Agreement, transfer, at no cost, to the Board all public records in possession of the Agency or keep and maintain public records required by the Board to perform the service. If the Agency transfers all public records to the Board upon completion of the Agreement, the Agency shall destroy any duplicate public records that are exempt or

10

confidential and exempt from public records disclosure requirements. If the Agency keeps and maintains public records upon completion of the Agreement, the Agency shall meet all applicable requirements for retaining public records. All records stored electronically must be provided to the Board, upon request from the Board's custodian of public records, in a format that is compatible with the information technology systems of the Board.

Failure of Agency to abide by the terms of this provision shall be deemed a material breach of this Agreement. This provision shall survive any termination or expiration of this Agreement. In the event of a dispute regarding the enforcement of this provision where the Agency has unlawfully refused to comply with the public records request within a reasonable time, the School Board shall be entitled to recover its reasonable costs of enforcement, including reasonable attorney's fees from the Agency as authorized by 119.0701, Fla. Stat.

**IF THE AGENCY HAS QUESTIONS REGARDING THE APPLICATION OF CHAPTER 119, FLORIDA STATUTES, TO THE AGENCY'S DUTY TO PROVIDE PUBLIC RECORDS RELATING TO THIS AGREEMENT, HE OR SHE MUST CONTACT THE PUBLIC RECORDS MANAGEMENT COORDINATOR FOR THE SCHOOL DISTRICT OF PALM BEACH COUNTY AT 561-629-8585,PUBLICRECORDS@PALMBEACHSCHOOLS.ORG, OR 3300 FOREST HILL BLVD., SUITE C-110, WEST PALM BEACH, FL, 33406.**

Each party shall be responsible for compliance with any public documents request served upon it pursuant to section 119.07, Florida Statutes, and any resultant award of attorney's fees for non-compliance with that law. The School Board reserves the right to terminate the Contract for cause if the PBSO fails to comply with public records requests in violation of this provision.

16. **SEVERABILITY**

The invalidity of unenforceability of any provision or clause hereof shall in no way effect The validity or enforceability of any other clause or provision hereof.

17. **WAIVER AND DELAY**

No waiver or delay of any provision of this Agreement at any time will be deemed a waiver of any other provision of this Agreement at such time or will be deemed a waiver of such provision at any other time.

18. **ASSIGNMENT; BINDING AGREEMENT**

Neither Party shall assign this Agreement or any interest herein without the prior written consent of the other Party. If such assignment is to another governmental entity, then

such consent shall not be unreasonable withheld or delayed.  This Agreement shall be binding upon and inure to the benefit of the Parties hereto and their respective successors and permitted assigns.

## 20.  ENTIRE AGREEMENT

This Agreement constitutes all agreements, conditions and understandings between the Parties concerning the subject matter herein.  All representations, either oral or written, shall be deemed to be merged into this Agreement.  Except as herein otherwise provided, no subsequent alteration, waiver, change or addition to this Agreement shall be binding upon the Parties unless reduced to writing and signed by them.

## 21.  DEFAULT

The parties agree that, in the event that either Party is in default of its obligations under this Agreement the non-defaulting Party shall provide the defaulting Party notice of the default and thirty (30) days to cure such default.  In the event that the defaulting Party has not cured the default within thirty (30) days, the Non-Defaulting Party shall be entitled to seek any remedy available to it at law or equity, including, but not limited to, the right to immediately terminate this Agreement.

## 22.  CAPTIONS

The captions and section designations set forth herein are for convenience only and shall have no substantive meaning.

## 23.  INCORPORATION BY REFERENCE

Exhibits attached hereto and referenced herein shall be deemed to be incorporated into this Agreement by reference.

## 24.  CONSTRUCTION

Neither Party shall be considered the author of this Agreement since the parties have participated in drafting and redrafting of this document to arrive at a final Agreement.  Thus, the terms of this Agreement shall not be strictly construed against one party as opposed to the other party based upon who drafted it.  It is the intent of the parties that the provisions of this Agreement be broadly interpreted to provide the maximum protection permitted by law, to the Parties from and against all claims, actions, liabilities, losses (including economic losses), and costs arising out of any actual or alleged bodily injury, sickness, disease or death, or injury to or destruction of tangible property including the loss of use resulting there from.

## 25.  SURVIVAL

All covenants, agreements, representations and warranties made herein, or otherwise made in writing by any party pursuant hereto, shall survive the execution and delivery of this Agreement and the consummation of the contemplated herein.

**26. JURY TRIAL WAIVER**

PBSO and THE SCHOOL DISTRICT hereby voluntarily waive any right which either or both of them have or may have to receive a trial by jury with respect to any controversies or disputes which may arise out of this Agreement or which may in any, directly or indirectly, be connected with the obstacle course.

**27. DISPUTE RESOLUTION**

In the event an issue arises which cannot be resolved between the parties, the dispute shall be referred to the School District's Assistant Superintendent of Student Services, Equity, and Access and PBSO's Major of Corrections or their respective designees, who shall all make a good faith effort to resolve the dispute.

**28. FORCE MAJEURE**

No party shall be obligated to perform any duty, requirement or obligation under this Agreement if such performance is prevented by fire, hurricane, earthquake, explosion, wars, sabotage, accident, flood, acts of God, strikes, or other labor disputes, riot or civil commotions, or by reason of any other matter or condition beyond the control of any party, and which cannot be overcome by reasonable diligence and without unusual expense ("Force Majeure"). In no event shall a lack of funds on the part of any party be deemed Force Majeure.

**29. FUNDING OUT/APPROPRIATION OF FUNDS**

The performance by the parties of their obligations under this Agreement shall be subject to and contingent upon the availability of funds appropriated by their respective governing bodies. Any party shall give notice to the other party of the non-availability of such funds when such party has knowledge.

**30. INSPECTOR GENERAL**

PBSO agrees and understands that the School District's Office of Inspector General ("School District's Inspector General") shall have access to all papers, books, records, documents, information, processes (including meetings), data and emails, with regard to this Agreement, to the extent such information is a public record and is not subject to an exemption ("Agreement Document"). PBSO's employees, vendors, officers and agents shall furnish the School Board's Inspector General with requested information and Agreement Documents within their custody for the purposes of conducting an investigation or audit, as well as provide reasonable assistance to the School District's Inspector General in locating assets and obtaining records and Agreement Documents as needed for investigation or audit relating to this Agreement, to the extent such information and Agreement Documents are a public record and is not subject to an exemption.

**31. BINDING AUTHORITY**

Each person signing this Agreement on behalf of either party individually warrants that he or she has full legal power to execute this Agreement on behalf of the party for whom he or she is signing, and to bind and obligate such party with respect to all provisions

13

contained in this Agreement.  This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors.

## 32.  NO AGENCY RELATIONSHIP

Neither party is an agent or servant of the other.  No person employed by either party to this Agreement, shall in connection with the performance of this Agreement or any services or functions contemplated hereunder, at any time, be considered the employee of the other party, nor shall an employee claim any right in or entitlement to any pension, worker's compensation benefit, unemployment compensation, civil service, or other employee rights or privileges granted by operation of law or otherwise, except through and against the party by whom they are employed.

## 33.  NO THIRD PARTY BENEFICIARIES

The parties expressly acknowledge that it is not their intent to create or confer any rights or obligations in or upon any third person or entity under this Agreement.  None of the parties intend to directly or substantially benefit a third party by this Agreement.  The parties agree that there are no third party beneficiaries to this Agreement and that no third party shall be entitled to assert a claim against any of the parties based upon this Agreement.  Nothing herein shall be construed as consent by an agency or political subdivision of the State of Florida to be sued by third parties in any matter arising out of any contract.


**IN WITNESS WHEREOF,** the Parties hereto have hereunto set their hands and

Seals the day and year first hereinabove set forth,


**The Palm Beach County Sheriff's Office**

Ric L. Bradshaw, Sheriff


Date: 9/27/16


**The School Board of Palm Beach County**

Chuck Shaw, Chairperson


Date: 10/26/16


Robert M. Avossa, Ed.D.

Superintendent


14

Reviewed and Approved
as to Legal Sufficiency

9/22/16



THE SCHOOL DISRICT OF PALM BEACH COUNTY
## Contract/Agreement Addendum
## Concerning Student Information

ADDENDUM, Concerning Student Information, to the Contract/Agreement ("the Contract") dated, __July 1, 2016__
between the school *(named below)* or The School Board of Palm Beach County, Florida *(named below)* and Vendor/Partner *(named below)*.

School or School Board   __School Board of Palm Beach County__

Vendor or Partner   __The Palm Beach County Sheriff's Office (Jail)__

Pursuant to School Board Policy 5.50, receipt of which is acknowledged by the Vendor's/Partner's signature below, the School Board of Palm Beach County, Florida (the "School Board") hereby designates [vendor/partner] ("the Receiving Party") as an "other school official" for the purpose of receiving limited personally identifiable information from education records of students under the Family Education Rights and Privacy Act (20 U.S.C. s. 1232g) and 34 C.F.R. s. 99.31(a)(1)(i)(B), and sections 1002.22 and 1002.221, Florida Statutes, because the School Board recognizes the Receiving Party has a legitimate educational interest in receiving this information in order to fulfill the Receiving Party's responsibilities for the school or School Board under the Contract. (All other terms of the Contract remain the same.)

As a condition precedent to receiving personally identifiable information from education records of students, the Receiving Party warrants and agrees that the Receiving Party:

1. will limit the use of, or access to, personally identifiable information from education records of students to the limited scope of information actually needed to complete the Receiving Party's duties and/or services under the Contract. The School Board has determined that the Receiving Party has a legitimate educational interest in receiving only the following fields of student data, for example: name, grade-level, school attending, etc. (indicate fields of data requesting below); and

   Student Names, Grade Level, Exceptional Student Education, English Language Learner, Report Cards, Progress Reports

2. will limit the access to personally identifiable information from education records of students to its employees and/or agents who actually have a legitimate educational interest in the information (i.e., they legitimately need to access the information in order to fulfill the Receiving Party's responsibilities under the Contract); and

3. shall avoid, and shall instruct applicable employees/agents to avoid, accessing personally identifiable information from education records of students, except for the legitimate purposes recognized under this Addendum, and shall require that all employees/agents accessing the data must be trained in, and sign an acknowledgement regarding, the confidentiality requirements; and

4. is under the direct control of the School Board with respect to the use and maintenance of education records; and

5. is subject to the requirements of 34 C.F.R. s. 99.33(a) governing the use and redisclosure of personally identifiable information from an education record of a student, meaning the Receiving Party may disclose personally identifiable information from an education record only on the condition that the party to whom the information is disclosed will not disclose the information to any other party without the prior consent of the parent or eligible student as those terms are defined in 34 C.F.R. s. 99.3, and the officers, employees, and agents of a party that receives information from the Receiving Party may use the information, subject to the limitations described in paragraph 2 above, but only for the purposes for which the disclosure was made; and

6. shall not use any of the personally identifiable information from education records of students that is received pursuant to this Addendum in violation of any applicable federal or state law, rule, regulation, or School Board policy; and

7. will store and process personally identifiable information from education records of students in accordance with industry best practices. This includes appropriate administrative, physical, and technical safeguards to secure personally identifiable information from unauthorized access, disclosure, and use. Receiving Party will conduct periodic risk assessments and remediate any identified security vulnerabilities in a timely manner. Receiving Party will also have a written incident response plan, to include prompt notification of the School Board in the event of a security or privacy incident, as well as best practices for responding to a breach of personally identifiable information. Receiving Party agrees to share its incident response plan with the School Board upon request; and

8. will dispose of all information disclosed to it by the school or the School Board (and any copies thereof), after the purpose for which the information is disclosed has been served, or five years after the receipt of the information (whichever is sooner), by shredding paper documents finely enough to prevent possible recovery of information, and by totally erasing and over-writing (or physically destroying) any electronic media such as computer files, tapes, or diskettes, unless the information in the possession of the Receiving Party constitutes a "record copy" required to be retained by the School District's Records Retention Schedule (available online at the District's Records Management website, http://www.palmbeachschools.org/records/), in which case the Receiving Party will return the information to the School Board rather than disposing of it.

The parties acknowledge that the terms contained in this Addendum supersede any inconsistent terms in the Contract.
IN WITNESS WHEREOF, the parties hereto have executed this Addendum:

| Legal Name of the Receiving Party *(Vendor/Partner)* | The School |
|---|---|
| The Palm Beach County Sherri's Office | School Board of Palm Beach County |
| Vendor or Partner | For the School Board of Palm Beach County, Florida |
| Signature of person having authority to enter legally binding agreements on behalf of Receiving Party.   Date  9/27/16 | Signature of person having authority to enter legally binding agreements on behalf of the School or The School Board of Palm Beach County, Florida.   Date |

PBSD 2220 (Rev. 11/17/2015)   ORIGINAL - attach to contract

Exhibit #   A