# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### Civil No. 18-cv-80810 – Dimitrouleas/Matthewman

H.C., a minor, by and through his parent and natural guardian, Jenny C.; M.F., a minor, by and through his parent and natural guardian, Asisa Rolle, on behalf of themselves and all others similarly situated,

Plaintiffs,

      v.

RIC BRADSHAW, Palm Beach County Sheriff, in his official capacity; SCHOOL BOARD OF PALM BEACH COUNTY,

Defendants.

## SETTLEMENT AGREEMENT

1.     **THIS SETTLEMENT AGREEMENT** (hereinafter referred to as the "Agreement") as to the class injunctive claims is made and entered into as of the date this Agreement is signed, by and among the Defendants Sheriff Ric Bradshaw ("Sheriff's Office"), in his official capacity, and the School Board of Palm Beach County ("School Board") on behalf of themselves and all their officers, directors, employees, former employees, agents, predecessors, divisions, successors, administrators, and assigns (collectively "Defendants"), and H.C., a minor, by and through his parent and natural guardian, Jenny C., and M.F., a minor, by and through his parent and natural guardian on behalf of a putative class of similarly situated individuals (collectively "Plaintiffs").  Defendants and Plaintiffs are collectively referred to as the "Parties."

1

## A.  Recitals

2.      **WHEREAS**, this Agreement addresses and resolves certain disputes arising from and relating to the lawsuit filed in the U.S. District Court for the Southern District of Florida (Civil Action: 18-cv-80810) ("Action") concerning allegations that: a) the Sheriff's Office policy and practice of holding juveniles in their custody in solitary confinement ("segregated housing") for upwards of 23 hours a day violated the Eighth and Fourteenth Amendments' prohibitions against cruel and unusual punishment and denied these juveniles procedural due process prior to and during the deprivation of their liberty interests; and b) the Sheriff's Office and the School Board in concert denied these juveniles procedural due process by depriving them of their property interest in education, and failed to provide free and appropriate public education and mandated process, as well as equal access to education, programs, services and activities in violation of the Individuals with Disabilities Act ("IDEA"), the Americans with Disabilities Act ("ADA"), and Section 504 of the Rehabilitation Act ("Section 504").

3.      **WHEREAS**, subsequent to Plaintiffs filing of the Class-Action Complaint for Injunctive and Declaratory Relief on June 21, 2018, along with a Motion for Preliminary Injunction, and briefing regarding the same, and filing of the Amended Class-Action Complaint for Injunctive and Declaratory Relief on August 2, 2018, the Parties engaged in expedited discovery into the claims and issues at bar.

4.      **WHEREAS**, by agreement of the Parties, the Court continued the hearing on the merits of Plaintiffs' Motion for Injunctive Relief in order to permit the Parties to engage in settlement negotiations;

5.      **WHEREAS**, the Parties thereafter conducted extensive settlement negotiations to resolve the class injunctive claims in the lawsuit, with the assistance of Plaintiffs' experts in

prison operations as well as juvenile mental health, in order to achieve a comprehensive resolution of all class claims for injunctive relief raised in the Amended Complaint;

6.    **WHEREAS,** the Parties stipulate to certification of a Settlement Class as follows: a) a class of all present and future juveniles (*i.e.* individuals under the age of 18 and charged as adults) who are now or will be incarcerated in segregated housing while in the custody of the Sheriff's Office; b) a subclass of all present and future juveniles (*i.e.* individuals under the age of 18 and charged as adults) with disabilities, as defined by the Individuals with Disabilities Education Act, who are now or will be incarcerated in segregated housing while in the custody of the Sheriff's Office and are in need of special education evaluation, instruction, accommodations, and related services ("IDEA subclass"); and c) all present and future juveniles (*i.e.* individuals under the age of 18 and charged as adults) with disabilities, as defined by the Americans with Disabilities Act and Section 504 of the Rehabilitation Act, who are now or will be incarcerated in segregated housing while in the custody of the Sheriff's Office ("ADA and 504 Subclass"). The Parties will jointly move for preliminary approval of the class-action settlement, conditional certification of the settlement class, and appointment of Plaintiffs' Counsel as class counsel.

7.    **WHEREAS**, the Parties acknowledge that neither this Agreement nor any consideration exchanged hereunder shall be regarded as an admission of any fact, allegation, liability, or responsibility of any kind by either of the Parties for any purpose.  This Agreement shall not be admissible in any proceeding, except as is necessary in a proceeding to enforce the terms of this Agreement or to establish or prove the defenses of payment, release, accord and satisfaction, waiver, or estoppel, or as otherwise required by Court order.  However, in order to avoid the expense, delay, uncertainty, and burden of litigation, the Parties have agreed to a

settlement of the class injunctive terms alleged in the Amended Complaint filed in this action.

This written Agreement memorializes the terms of the settlement reached by the Parties;

8.     **WHEREAS** the Parties represent and agree that this Agreement is fair, reasonable

and adequate to protect the interests of all parties and the class;

9.     **NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED** by

and between the Parties, as follows:

## Definitions

*Cell-side educational services and programming*: The facilitation of educational services and programming to juveniles while they are housed inside a segregated housing cell.

*Co-defendants or keep separates:* Any juvenile in the custody of the Sheriff's Office who has a co-defendant or other juvenile housed within the same facility with whom they cannot have direct contact with because of pending criminal charges or disciplinary separation.

*Educational services and programming:* Implementation of appropriate educational instruction, interventions, accommodations, testing, and evaluations, as well as additional activities to promote learning beyond the traditional academic curriculum, provided to juveniles in the custody of the Sheriff's Office.

*Individual Education Plan (IEP):* A written statement of an educational program of goals, services, instruction, and accommodations, specific to a juvenile's needs, that is developed, reviewed, and revised for a juvenile identified as having a disability under the Individuals with Disabilities Education Act.

*Jail school:*  The educational system administered by the School Board within any of the correctional facilities operated by the Sheriff's Office.

*Juvenile:* Any individual under the age of 18 with pending adult charges and in the custody of the Sheriff's Office.

*Mental health professional*: Qualified mental health professionals who meet the educational and licensure/certification criteria specified by their respective professional disciplines, such as psychiatric nursing, psychiatry, psychology, and social work as defined in Palm Beach County Sheriff's Office Corrections Operating Procedure #914.01 (§IV(G)) ***See* Exhibit 1 - COP #914.01: Basic Medical Programs.**

*Regular school day*: A regular school day shall be 8:00am to 2:45pm Monday through Friday.

*Segregation Review Committee (SRC)*: A group of Sheriff's Office representatives from

classification, security, and a representative from the health care provider as well as a School Board designee that meets weekly to discuss all prisoners who are held in segregated housing while in the custody of the Sheriff's Office.  As part of this Agreement, the parties agree to hold a weekly juvenile SRC meeting in conjunction with the general meeting.

*School Based Team (SBT)*: A problem-solving team comprised of a group of multidisciplinary professionals, who meet regularly to develop action plans for struggling students and work to remove academic, behavioral, and social-emotional barriers to students' learning.

*School Based Team Meeting*: Gatherings of the SBT regarding individual students to use a formal problem-solving process, analyze student referral and baseline data, identify student strengths and areas for improvement, develop intervention plans, including expected outcomes, monitor student progress toward goals, collaborate with community agencies when necessary, and communicate regularly with parents regarding their child's progress.

*Segregated Housing*: Segregated housing shall mean *any* type of confinement of a juvenile in an individual cell separated from the general population for any duration or reason including, but not limited to, those defined within Palm Beach County Sheriff's Office Corrections Operating Procedure #918.00 (§IV(A)).  ***See* Exhibit 2 - COP #918.00: Special Management Units.**

*Substantial breach*: A substantial breach must be either: (i) sufficiently frequent and widespread so as to be pervasive; or (ii) a breach that deviates from a material provision in a way that denies an essential benefit of this Agreement to class members. Minimal or isolated failures, noncompliance with mere technicalities, or temporary failure to comply during a period of otherwise sustained compliance will not constitute a substantial breach of a material term.

### Juvenile Segregated Housing Policies

10.     Segregated housing of juveniles by the Sheriff's Office, *shall be limited in time and use as follows*:

    a.  <u>Monday through Friday</u>: Any juvenile classified into segregated housing for any reason other than protective custody shall be allowed out of their cells throughout the regular school day with other juveniles in general population so long as there are no co-defendants or keep-separates in the same housing pod:

        i.  In the event that there are co-defendants or keep separates in the same housing pod, the Sheriff's Office shall implement a rotating schedule that utilizes alternative accommodations within the correctional facility in order to prevent co-defendants or keep separates from having direct contact with each other.  A copy of a proposed rotation schedule is attached herewith. ***See* Exhibit 3 – Rotation Schedule/Alternative Housing Options**.

1. The Sheriff's Office shall evaluate whether any keep separate designations or other restrictions on direct contact with other juveniles can be modified or eliminated during each weekly juvenile Segregation Review Committee ("SRC") meeting pursuant to ¶ 10(e) herein.

2. <u>Weekends & Holidays</u>: The Sheriff's Office shall utilize an expanded rotation schedule for co-defendants and keep separates that allows for greater time in programs, recreation or other facility accommodations in order to minimize the duration of time spent in segregated housing as described in **Exhibit 3 – Rotation Schedule/Alternative Housing Options**.

   a. <u>Disciplinary referrals</u>: For any juvenile in segregated housing on weekends and holidays because of a disciplinary referral, the Sheriff's Office shall minimize the amount of time the juvenile will spend in segregated housing by utilizing an expanded rotation schedule and by implementing an alternative behavior management policy as provided in ¶ 10(i)(ii)(1) herein.

   b. The Parties recognize that all legitimate and reasonable security and safety concerns related to the operation of the jail facilities is of paramount importance.

   ii. In the event that the number of juveniles in the custody of the Sheriff's Office who have co-defendants or keep separates exceeds the number of available accommodations within the correctional facility such that the Sheriff's Office cannot apply the rotation schedule fairly and equally, the Sheriffs' Office shall notify Plaintiffs' Counsel within 3 business days as provided in ¶ 20(c) herein and provide alternative housing options or strategies within 7 business days thereafter.

   1. The Parties shall be governed by the safe harbor provision described in ¶20(i) herein to resolve the issues prior to filing any enforcement action.

b. Within 24 hours (excluding weekends and holidays) of any juvenile being placed in segregated housing for *any* reason:

   i. The Sheriff's Office and the School Board shall confer to determine how best to allow equal access, including any accommodations, to juvenile educational services and programming outside of the segregation cell.

   1. The Sheriff's Office and School Board shall maintain notes and

documentation from these conferences.

    ii. The Sheriff's Office shall refer the juvenile to a mental health professional for evaluation and to determine whether any accommodations are necessary.

c. The Sheriff's Office shall bring all juveniles out of segregated housing during the regular school day in order for the School Board to facilitate educational services and programming:

    i. There shall be no cell-side facilitation of educational services and programming to juveniles in segregated housing.

        1. The Sheriff's Office shall provide room and/or facility accommodations and staffing in order to assist the School Board in facilitating juvenile educational services and programming outside of segregated housing.

    ii. In the event that a juvenile refuses to come out of segregated housing for educational services and programming, the Sheriff's Office shall not place the juvenile on "lockdown" or other form of segregated housing for the remainder of the school day.

        1. The Sheriff's Office and the School Board must re-assess the juvenile's willingness to join the educational services and programming prior to each period.

        2. The Sheriff's Office shall provide access to a School Board guidance counselor or other designee to meet with the juvenile regarding the school refusal.

            a. If the School Board guidance counselor or other designee determines that the juvenile is willing to re-join the period, the Sheriff's Office shall allow the juvenile to do so.

        3. The Sheriff's Office shall within 24 hours refer the juvenile to a mental health professional for evaluation and to determine whether any accommodations are necessary.

d. The Sheriff's Office shall bring *all* juveniles out of their segregated housing cells in order to facilitate juvenile programing to include, but not limited to, those programs listed in Palm Beach County Sheriff's Office Corrections Operating Procedure #923.00(VIII). ***See* Exhibit 4 – COP # 923.00: Juvenile Admission, Classification and Housing**.

    i.  There shall be no cell-side facilitation of programming to juveniles in segregated housing.

    ii.  The Sheriff's Office shall provide room and/or facility accommodations and staffing in order to facilitate juvenile programming.

e.  The Sheriff's Office shall attend the weekly juvenile SRC meeting.

    i.  The weekly juvenile SRC meetings shall be attended by at least one Sheriff's Office staff member from security, classification, programs, medical and mental health

    ii.  At the weekly juvenile SRC meetings, the Sheriff's Office shall:

        1.  Discuss classifications of any juveniles in segregated housing and evaluate alternative housing options to include, but not limited to, elimination or modification of any keep separate designations;

        2.  Discuss any disciplinary referrals or decisions to classify juveniles in segregated housing and whether alternative disciplinary sanctions can be used to include, but not limited to, those addressed in the proposed alternative behavior management policy pursuant to ¶10(i)(ii)(1) herein;

        3.  Discuss any barriers to providing services, accommodations, and evaluations to juveniles, to include the School Board using evidence-based positive behavioral interventions approved by the Sheriff's Office to address any issues concerning disruption safety, security and good order, and possible accommodations;

        4.  Discuss any concerns the School Board has regarding the delivery of educational instruction or programming to juveniles;

        5.  Discuss any juveniles refusing to participate in school;

        6.  Discuss any juveniles exhibiting medical and mental health concerns and evaluate alternatives to segregated housing; and

        7.  Review any grievances regarding conditions of confinement or educational services filed by juveniles.

    iii.  The Sheriff's Office members participating in the weekly juvenile SRC meetings shall maintain notes including copies of any documents

reviewed during these meetings (*i.e.* grievances, disciplinary referrals, etc.).

f.   Sheriff's Office shall allow *all* juveniles, regardless of classification, to have recreation 7 days a week

g.   Sheriff's Office shall allow *all* juveniles, regardless of classification, to have showers 7 days a week

h.   Sheriff's Office shall not unreasonably withhold phone or visitation privileges from any juvenile.

i.   By January 10, 2019, the Sheriff's Office shall draft a new and/or modified handbook and policies specific to juveniles held in its custody to include, but not limited to those listed herein, and within the Palm Beach County Sheriff's Office Corrections Operating Procedure #918.00 (§V), *See* **Exhibit 2 - COP #918.00: Special Management Unit**:

    i.   Intake, Housing, classification, and admission;
    ii.  Discipline;

        1.   By January 10, 2019, the Sheriff's Office shall provide the Parties' Counsel with a proposed alternative behavior management policy regarding disciplinary issues in lieu of, or in the alternative to, 23 hour a day segregated housing, that takes into consideration, among other issues, any medical or mental health concerns of the juvenile.

    iii. Medical and mental health;
    iv.  Educational services and programming;
    v.   Grievance procedure; and
    vi.  Staff Training

## Juvenile Educational Instruction and Programming Policies

11.   The School Board shall provide appropriate educational services and programming to juveniles in the custody of the Sheriff's Office.

a.   The School Board shall provide all educational services and programming to juveniles outside of their cells, except to those juveniles who refuse to attend school, as described in and pursuant to ¶11(c), below.

b.   The School Board shall provide sufficient staff to provide educational services and programming to all juveniles, including those in segregated housing and other locations within the Sheriff's Office facilities.

   c.  The School Board shall include procedures for juveniles who refuse to attend educational services and programming in its training and materials, as follows:

      i.  If a juvenile refuses to attend school, then School Board shall immediately contact a guidance counselor or other School Board designee to visit with the juvenile regarding the refusal to attend educational services and programming.

         1.  Such visits shall be documented to include the reasons given for the refusal and any accommodations discussed or considered.

      ii.  The School Board shall address a juvenile's refusal through School Based Team (SBT)/Individual Education Plan (IEP) meetings to plan appropriate interventions using evidence-based positive behavioral interventions approved by the Sheriff's Office.

      iii.  The School Board shall discuss any refusals of educational services and programming by juveniles at the weekly juvenile SRC meetings.

12.  The School Board shall hold a SBT meeting or IEP meeting for any juvenile entering the custody of the Sheriffs' Office within two weeks of such entry.

   a.  The School Board shall subsequently hold a quarterly SBT or IEP meeting for each juvenile held in custody by the Sheriff's Office.

   b.  The School Board shall maintain written records for each of these meetings.

   c.  The School Board shall submit proposed attendees for IEP meetings, including parent/guardian and School Board employees, to the Sheriff's Office for approval, at least 10 days prior to meeting date.

   d.  The Sheriff's Office shall provide meeting space to accommodate IEP meeting participants.

13.  The School Board shall have an Exceptional Student Education compliance specialist conduct site visits at the Jail school at least once per quarter to audit students' Individual Education Plans.

14.  All School Board staff employed within the existing Jail school operated by the Sheriff's Office shall be required to attend an initial School Board training session regarding the terms of this Agreement, as well as any Sheriff's Office policies and procedures that would affect the facilitation of educational services and programming to juveniles.

   a.  The School Board shall develop written training materials by January 10,

2019.

    i.  The School Board shall include attendance policies in the training and materials, including the requirement that if a juvenile is held in segregated housing during educational services and programming, that juvenile will be marked absent.

    ii.  The School Board shall provide training to existing Jail school staff regarding the Agreement by January 10, 2019.

  b.  The School Board's Jail school administrator shall provide new staff orientations within 7 days of commencing a position within any correctional facility operated by the Sheriff's Office.

15.    The School Board shall provide necessary instructional materials to juveniles in the custody of the Sheriff's Office upon receipt of approval for safety and security.

  a.  Within 30 days of the date of this Agreement, the School Board shall provide a reading specialist to the existing Jail school to assess for required reading interventions for juveniles in the custody of the Sheriff's Office.

    i.  Within 60 days from this site visit by the reading specialist, the School Board will provide a list of any necessary educational materials for reading interventions to the Sheriff's Office for safety and security approval.

  b.  The School Board and Sheriff's Office shall cooperate to enable safe use of computers at the existing Jail school for educational services and programming.

  c.  The School Board shall provide the Sheriff's Office with at least 10 days' notice of any new or supplemental educational materials to be used for educational services and programming for juveniles at the Jail school.

    i.  In the event that any materials are disallowed because of verifiable security risks, the School Board shall locate alternative materials and resubmit the list to the Sheriff's Office for safety and security approval.

16.    The School Board's Jail school administrator or designee shall attend the weekly juvenile SRC meetings.

  a.  At the weekly juvenile SRC meetings, the School Board shall:

    i.  Discuss any barriers to providing services, accommodations, interventions, evaluations to juveniles;

    ii.   Discuss any concerns the school district has regarding the delivery of educational services and programming to juveniles;

    iii.   Discuss any juveniles refusing to participate in school; and

    iv.   Review any grievances regarding educational services and programming filed by juveniles.

   b.  The School Board and Sheriff's Office shall maintain notes of juvenile SRC meetings, including documents reviewed.

17.    The School Board shall provide quarterly district oversight to ensure Jail school compliance with English Language Learner (ELL) policies and procedures through site visits, student record reviews, and provision of training.

18.    The School Board shall provide a written communication to parents/legal guardians of juveniles in the custody of the Sheriff's Office regarding availability of access to academic information through the Student Information System (SIS) and methods to communicate with Jail school administrators and teachers.

### Term

19.    No party shall move to terminate the Agreement for a period of five (5) years.

### Monitoring

20.    Except as otherwise provided herein, Plaintiffs' Counsel in cooperation with designated experts shall oversee implementation and compliance with the injunctive terms of this Agreement for a period of two (2) years as follows:

   a.  First Year of Monitoring (January 2019 – December 2019):

      i.  *Designation of Experts*:

          1.  Plaintiff's Counsel, in its discretion, shall utilize the assistance of a Corrections Expert and an Education Expert for purposes of monitoring compliance.

             a.  Said experts shall advise and consult with Plaintiffs' Counsel as to whether the Sheriffs' Office or the School Board are in substantial breach of any material term of this Agreement.

                  i.  In the event that any substantial breach is identified, Plaintiffs' Counsel shall within 24 hours notify Defendants' Counsel of the

substantial breach. The Sheriffs' Office or the School Board shall have 30 days thereafter to provide notice to all parties that it has corrected or will correct any issues concerning the same, including a description of the steps it has or will take to ensure it is no longer in substantial breach (*nothing herein shall prevent the parties from negotiating in good faith a resolution to any claimed substantial breach informally*);

ii. If the Sheriff's Office or the School Board does not correct and/or provide a plan to correct any provisions found to be in substantial breach, then Plaintiffs may file a motion with the Court seeking specific enforcement of the terms of this Agreement, reinstatement of the claims for prospective relief in the lawsuit, or an extension of the duration of this Agreement by up to one additional year, including monitoring activities. It shall be Plaintiffs' burden in making such a motion to demonstrate that Defendants are in substantial breach of a material term of the Agreement.

iii. In the event that any non-substantial breach is identified, Plaintiffs' Counsel shall within 24 hours notify Defendants' Counsel of the non-substantial breach and negotiate in good-faith to resolve the matter to ensure compliance with the Agreement.

2. Plaintiffs' Counsel shall provide notice and contact information of any expert designation at least 60 days prior to any quarterly on-site visit as stated herein;

a. Defendants' shall have 5 days from said notice to object to the expert designation. Any objection must be based upon genuine and verifiable concerns as to the expert's qualifications and/or impartiality.

b. Upon such an objection, the Parties' shall within 5 days thereafter negotiate in good-faith to resolve any disputes as to the expert designation or, if needed, utilize private mediation services.

c. Should the expert designation dispute continue to

remain unresolved, then the objecting party may seek leave from the District Court pursuant to its authority and retention of jurisdiction, for relief.

    d.  If no objection is received, then the designated expert shall be deemed acceptable by the Parties.

ii.  *Quarterly On-Site Visits*:

    1.  The Sheriff's Office shall provide Plaintiffs' experts and/or Plaintiffs' Counsel access to any Sheriff's Office facility housing juveniles on a quarterly basis beginning in January 2019 as follows:

        a.  Plaintiffs' experts and/or Plaintiffs' Counsel shall provide at least 14 days prior notice to Counsel for Sheriff's Office and School Board before conducting any on-site visit;

    2.  Plaintiffs' experts and/or Plaintiffs' Counsel shall have full and complete access to any Sheriff's Office facility that houses juveniles, the medical and mental health units, as well as any room or other accommodation used for educational services and programming, recreation, or the facilitation of any other juvenile programs or services;

    3.  Plaintiffs' experts and/or Plaintiffs' Counsel shall have full and complete access to any Sheriff's Office or School Board staff member who has or has had any interaction with juveniles;

    4.  Plaintiffs' experts and/or Plaintiffs' Counsel shall have full and complete access to any juvenile who, at the time of the monitoring activities, is or has been held in segregated housing.

iii.  *Document Production*

    1.  Sheriff's Office:

        a.  On or before the fifteenth day in January, April, July and October of each year beginning January 2019, and prior to any quarterly on-site visit, the Sheriff's Office shall provide to Plaintiffs' Counsel the following documents, records and other information regarding any juvenile who during the quarterly period was or is being held in segregated housing:

     i.   Medical and mental health screening and evaluation records (any documents produced shall be covered by the HIPAA Protective Order entered in this Action);

    ii.   Bunk rosters and/or daily population sheets;

   iii.   Logs, notes, and documents (*i.e.* grievances, disciplinary reports, confinement orders or notations, etc.) reviewed during weekly juvenile segregation review committee meetings;

   iv.   Training documents for Sheriff's Office employees working with juveniles;

    v.   Handbooks or policies concerning juveniles;

2.  School Board:

   a.  On or before the fifteenth day in January, April, July and October of each year beginning January 2019, and prior to any quarterly on-site visit, the School Board shall provide to Plaintiffs' Counsel the following documents, records and other information regarding any juvenile who during the quarterly period was or is being held in segregated housing:

     i.   Log of dates of school-based team and individual education plan meetings for each student with a unique number, as well as interventions utilized and revised;

    ii.   Logs of weekly juvenile segregation review committee meetings;

   iii.   Dates of site visits from Exceptional Student Education specialist;

   iv.   Any updates to written training material and new employee orientation training logs;

    v.   English Language Learner oversight logs, including dates of records review and site visits;

   vi.   List of any educational materials that were denied by the Sheriff's Office as provided in ¶

15

          15, and any alternative educational materials considered or used;

    vii.   The number of juvenile students referred for initial Exceptional Student Education evaluations and any re-evaluations, and the number of completed evaluations and re-evaluations;

   viii.   Numbers and dates of refusals for educational services and programming; and

    ix.   Information regarding absences due to segregated housing, though the School Board does not make a representation that this information is accurate.

b.   <u>Second Year of Monitoring (January 2020 to December 2020)</u>

    i.   The Sheriff's Office shall allow access to on-site visits to Plaintiffs' Counsel, if necessary, as provided in ¶20(a)(ii) herein on a bi-annual basis.

    ii.   The Sheriff's Office and School Board shall produce documents to Plaintiffs' Counsel as provided in ¶20(a)(iii) herein on a bi-annual basis.

   iii.   Any substantial breach of a material term of the Agreement shall continue to be governed by the safe harbor provision described in ¶20(a)(i) herein prior to enforcement.

c.   <u>Notices</u>.  All documents, information, or notices described herein shall be provided to each of Plaintiffs' Counsel in electronic form via e-mail and/or electronic file at:

**Theodore Jon Leopold, Esq.**
**Diana Leigh Martin, Esq.**
Cohen Milstein Sellers & Toll, PLLC
2925 PGA Boulevard
Suite 200
Palm Beach Gardens, FL 33410
561-515-1400
Fax: 561-515-1401
Email: tleopold@cohenmilstein.com
Email: dmartin@cohenmilstein.com

**Sabarish P Neelakanta, Esq.**

*H.C. at al v. PBSO et al.*, Civil Action No.: 9:18-cv-80810
Settlement Agreement

**Masimba Mutamba, Esq.**
Human Rights Defense Center
P.O. Box 1151
Lake Worth, FL 33460
561-360-2523
Fax: 866-735-7136
Email: sneelakanta@hrdc-law.org
Email: mmutamba@hrdc-law.org

**Melissa Marie Duncan**
Legal Aid Society of Palm Beach County
423 Fern Street
Suite 200
West Palm Beach, FL 33401
561-655-8944
Fax: 655-5269
Email: mduncan@legalaidpbc.org

d.  <u>Monitoring Fees and Costs</u>.  Plaintiffs' Counsel shall invoice the Sheriff's Office and the School Board for monitoring fees and costs separately as follows:

    i.  *First Year of Monitoring (January 2019 – December 2019):*

        1.  Sheriff's Office:

            a.  On a quarterly basis beginning January 2019, Plaintiffs' Counsel shall invoice the Sheriff's Office for monitoring activities to include fees and costs for Plaintiffs' designated expert not to exceed $4,500.00 per quarter.

                i.  The Sheriff's Office and School Board shall pay Plaintiffs' Counsel invoice within 30 days of receipt.

                ii.  Notwithstanding the foregoing, Plaintiffs' Counsel shall at any time during the term of this Agreement have the right to seek, by motion to the District Court, an award of monitoring fees and costs in excess of $4,500.00 per quarter if circumstances, actions or events require Plaintiffs' designated expert and/or Plaintiffs' Counsel to significantly increase monitoring time and efforts due to any failure by the Sheriff's Office to maintain substantial compliance with the Agreement.

17

    iii. Prior to filing any such motion, Plaintiffs' Counsel shall notify counsel for Defendants via email and first-class regular U.S. Mail of their intent to file a motion seeking additional fees. Within ten (10) business days of this notice, the Parties shall meet and confer in good faith to resolve the dispute. The time by which the Parties may meet and confer shall not exceed thirty (30) days of the date of the notice. Plaintiffs are entitled to seek from the District Court reasonable attorneys' fees and costs in connection with such a motion.

2. School Board:

    a. On a quarterly basis beginning January 2019, Plaintiffs' Counsel shall invoice the School Board for monitoring activities to include fees and costs for Plaintiffs' designated expert not to exceed $3,000.00 per quarter.

        i. The School Board shall pay Plaintiffs' Counsel invoice within 30 days of receipt.

        ii. Notwithstanding the foregoing, Plaintiffs' Counsel shall at any time during the term of this Agreement have the right to seek, by motion to the District Court, an award of monitoring fees and costs in excess of $3,000.00 per quarter if circumstances, actions or events require Plaintiff's designated expert and/or Plaintiffs' counsel to significantly increase monitoring time and efforts due to any failure by the School Board to maintain substantial compliance with the Agreement.

        iii. Prior to filing any such motion, Plaintiffs' counsel shall notify counsel for Defendants via email and first-class regular U.S. Mail of their intent to file a motion seeking additional fees. Within ten (10) business days of this notice, the Parties shall meet and confer in good faith to resolve the dispute. The time by which the Parties may meet and confer shall not exceed thirty (30) days of the date of the notice. Plaintiffs are entitled to seek from the District

Court reasonable attorneys' fees and costs in connection with such a motion.

    ii.  <u>Second Year of Monitoring (January 2020 – December 2020)</u>:

        1.  On a bi-annual basis beginning January 2020, Plaintiffs' Counsel shall invoice the Sheriff's Office and School Board for monitoring activities to include fees and costs for Plaintiffs' Expert as follows:

            a.  Sheriff's Office bi-annual invoice shall not exceed $2,500.00.

            b.  School Board's bi-annual invoice shall not exceed $1,000.00.

        2.  The Sheriff's Office and School Board shall pay Plaintiffs' Counsel invoices within 30 days of receipt.

            a.  Notwithstanding the foregoing, Plaintiffs' Counsel shall at any time during the term of this Agreement have the right to seek, by motion to the District Court, an award of monitoring fees and costs in excess of the bi-annual amounts stated above, if circumstances, actions or events require Plaintiffs' Counsel to significantly increase monitoring time and efforts due to any failure by the Sheriff's Office or the School Board to maintain substantial compliance with the Agreement.

            b.  Prior to filing any such motion, Plaintiffs' Counsel shall notify counsel for Defendants via email and first-class regular U.S. Mail of their intent to file a motion seeking additional fees. Within ten (10) business days of this notice, the Parties shall meet and confer in good faith to resolve the dispute. The time by which the Parties may meet and confer shall not exceed thirty (30) days of the date of the notice. Plaintiffs are entitled to seek from the District Court reasonable attorneys' fees and costs in connection with such a motion.

**Compliance with 18 U.S.C. § 3626(a)(1)**

21.    The parties stipulate, based upon the entire record, that the relief provided in this Agreement is narrowly drawn and extends no further than necessary to correct violations of federal rights, and is the least intrusive means necessary to correct violations of federal rights.

### Retention of Jurisdiction and Consent to Magistrate

22.     The District Court shall retain jurisdiction over the subject matter of this Agreement and the Parties for the purpose of enabling any of the Parties to apply to the Court at any time for such further order, direction, and relief as may be necessary or appropriate for the construction or interpretation of this Agreement or to effectuate or enforce compliance with its terms, including any award of attorneys' fees and costs.  All parties consent to the exercise of such jurisdiction and to submit the Agreement to the District Court for approval and retention of jurisdiction.

23.     The Parties further agree and consent to the U.S. Magistrate Judge for the Southern District of Florida, for purposes of retention of jurisdiction and enforcement of the Agreement as provided herein.

### Dismissal of Action

24.     Upon final approval of the Agreement by the District Court, class certification, and appointment of class counsel, the Parties shall file a Joint Motion for Dismissal and Order of Dismissal.  In filing the Joint Motion and Order of Dismissal, it is the intention of the Parties that the District Court retain jurisdiction over the Agreement pursuant to ¶¶ 22-23 *supra.*

### Attorneys' Fees and Costs

25.     The Parties shall engage in good-faith negotiations over reasonable attorneys' fees and costs for Plaintiffs' counsel and agree to retention of jurisdiction by the District Court regarding the same pursuant to ¶¶ 22-23 *supra*.

### Release

26.     Except as otherwise provided in this Agreement and as separate consideration for the agreements contained herein, Named Plaintiffs, the Plaintiff Class and Sub-Classes hereby absolutely, fully and forever release, relieve, waive, relinquish, and discharge Defendants and their successors, predecessors, related entities, departments, subsidiaries, representatives, assigns, agents, partners, officers, directors, managers, insurers, shareholders, and employees ("Released Parties"), of, and from, any and all known claims for equitable, declaratory relief, or compensatory education, subject to the following limitations: (i) this waiver shall not apply to claims based on acts or omissions arising after the date of execution of this Agreement; (ii) this waiver shall be limited to the allegations made in the Amended Complaint (which do not include claims for monetary damages); this waiver shall not apply to any claim for attorneys' fees and costs associated with this Action, enforcement and/or compliance with the Agreement.

27.  Named Plaintiffs and the Plaintiff Class and Sub-Classes acknowledge their intention that, upon execution by the Parties and approval by the Court, this Agreement, except as expressly provided for herein, shall be effective as a full and final accord and satisfaction and settlement of and as a bar to all of the claims in the Action.

### Stipulation as to Class Certification

28.  The parties agree that this matter is appropriate for certification as a class action pursuant to Fed. R. Civ. P. 23(b)(2).  The class is defined as: a) a class of all present and future juveniles (*i.e.* individuals under the age of 18 and charged as adults) who are now or will be incarcerated in segregated housing while in the custody of the Sheriff's Office; b) a subclass of all present and future juveniles (*i.e.* individuals under the age of 18 and charged as adults) with disabilities, as defined by the Individuals with Disabilities Education Act, who are now or will be incarcerated in segregated housing while in the custody of the Sheriff's Office and are in need of special education evaluation, instruction, accommodations, and related services ("IDEA subclass"); and c) all present and future juveniles (*i.e.* individuals under the age of 18 and charged as adults) with disabilities, as defined by the Americans with Disabilities Act and Section 504 of the Rehabilitation Act, who are now or will be incarcerated in segregated housing while in the custody of the Sheriff's Office ("ADA and 504 Subclass").  The Parties agree that the class is so numerous that joinder of all members is impracticable, there are questions of law and fact common to the class, the claims of the named plaintiffs are typical of the claims of the class, and the plaintiffs and their counsel will fairly and adequately protect the interests of the class. The Parties agree that the segregated housing policies that are the subject of this action apply generally to the class, making relief appropriate for the class as a whole. Defendants agree that they shall not move to decertify the class for the duration of this Agreement and shall not unreasonably oppose the designation by Plaintiffs of new class representatives if necessary.

### Class Action Fairness Act ("CAFA")

29.  Within 10 days of the date that this Agreement is filed in the District Court for Preliminary Approval, the Sheriff's Office and the School Board will provide the Notice of this Settlement Agreement as required by the CAFA (28 U.S.C. § 1715(b)) to the U.S. Attorney General, the Florida Attorney General's Office, and/or any other necessary parties.

### Fairness Hearing

30.  The Parties shall jointly request that the District Court schedule and conduct a Fairness Hearing to address the fairness of this Agreement settling Plaintiffs' claims against Defendants and to decide whether there shall be Final Approval of the settlement embodied in this Agreement. At the Fairness Hearing, the Parties shall jointly move for and recommend certification of the Class and Final Approval of

this Agreement. The Fairness Hearing shall take place on a date in accordance with 28 U.S.C. § 1715.

## Miscellaneous Provisions

31. <u>Construction of Agreement and Counsel</u>. Should any of the provisions or terms of this Agreement require judicial interpretation, it is agreed that the court interpreting or construing this Agreement shall not apply a presumption that such provision(s) or term(s) shall be more strictly construed against one party by reason of the rule of construction that a document is to be construed more strictly against the party who prepared it, it being agreed that all Parties and their respective counsel have participated in the preparation and review of this Agreement. Further, the Parties specifically acknowledge and agree that each has retained separate, independent counsel to represent them.

32. <u>Binding Effect</u>.  This Agreement is binding upon Plaintiffs, the Class and Subclasses, the Defendants named in this lawsuit in their official capacities, and on Defendants' successors in office, employees and agents for the duration of the term of this Agreement.

33. <u>Authority</u>. By signing this Agreement, the Parties represent and warrant that each person signing this Agreement on behalf of them has the authority to execute this Agreement and to bind Defendants, the Sheriff's Office and School Board, and Plaintiffs respectively.

34. <u>Exhibits</u>.  The terms of all Exhibits attached hereto are fully incorporated into this Agreement and are an integral part thereof. The terms of this Agreement, where applicable, are fully incorporated into all Exhibits and are, where applicable, an integral part thereof. To the extent that there are any conflicts or inconsistencies between the terms of this Agreement and any of the Exhibits, the terms of this Agreement shall control.

35. <u>Completeness of Document</u>.  This Agreement contains the entire understanding between the parties with respect to the matters set forth herein, and there are no representations, warranties, agreements, arrangements, or undertakings, oral or written, between or among the parties hereto relating to the subject matter of the Agreement which are not fully expressed herein.

36. <u>Modification of Agreement</u>. Any modification of or addition to this Agreement must be in writing, signed by Defendants and Plaintiffs' Class Counsel.

37. <u>Counterparts</u>. This Agreement may be executed in separate counterparts, which, taken together, shall comprise one agreement.

38. <u>Facsimile/Electronic Signatures</u>. A facsimile or electronic representation of a signature shall be deemed as effective as an original signature.

*H.C. at al v. PBSO et al.*, Civil Action No.: 9:18-cv-80810
Settlement Agreement

**EXECUTED AS OF THE DATE INDICATED BELOW:**

Date: October 22, 2018

_____
Plaintiff H.C. and Proposed Class Representative

*Reviewed and approved by:*

Date: October 22, 2018

_____
Jenny C., Parent and Legal Guardian

Date: October 23, 2018

_____
Plaintiff M.F. and Proposed Class Representative

Date: October 23, 2018

_____
Diana L. Martin, Esq., Class Counsel
**Cohen Milstein Sellers & Toll, PLLC**
2925 PGA Boulevard, Ste. 200
Palm Beach Gardens, FL 33410

Date: October 23, 2018

_____
Sabarish P. Neelakanta, Esq., Class Counsel
**Human Rights Defense Center**
P.O. Box 1151
Lake Worth, FL 33460

Date: October 23, 2018

_____
Melissa M. Duncan, Esq., Class Counsel
**Legal Aid Society of Palm Beach County, Education Advocacy Project**
423 Fern St., Ste. 200
West Palm Beach, FL 33401

*H.C. at al v. PBSO et al.*, Civil Action No.: 9:18-cv-80810
Settlement Agreement

**EXECUTED AS OF THE DATE INDICATED BELOW:**

Date: October 22nd, 2018

_____

Ric Bradshaw,
On behalf of the Palm Beach County Sheriffs' Office in his official capacity as Sheriff of Palm
Beach County, Florida

Date: October 23rd, 2018

_____

Richard A. Giuffreda, Esq., Counsel for Defendant Sheriff's Office
**Purdy Jolly Giuffreda Barranco & Jisa, PA**
2455 E Sunrise Boulevard
Suite 1216
Fort Lauderdale, FL 33304
954-462-3200
Fax: 462-3861
Email: richard@purdylaw.com

Date: October 23rd, 2018

_____

Adriana Jisa, Esq., Counsel for Defendant Sheriff's Office
**Purdy Jolly Giuffreda Barranco & Jisa, PA**
2455 E Sunrise Boulevard
Suite 1216
Fort Lauderdale, FL 33304
954-462-3200
Fax: 462-3861
Email: adriana@purdylaw.com

24

*H.C. at al v. PBSO et al.*, Civil Action No.: 9:18-cv-80810
Settlement Agreement

**EXECUTED AS OF THE DATE INDICATED BELOW:**

Date: November 15, 2018

_____
Chuck Shaw, Chairman,
On behalf of the School Board of Palm Beach County, Florida

Date: November 15, 2018

_____
Jon Erik Bell, Esq., Counsel for the Defendant, School Board of Palm Beach County
**School District of Palm Beach County**
3300 Forest Hill Blvd Rm C-323
West Palm Beach, FL 33406
(561) 434-8500
Fax: (561) 434-8105
Email: jon.bell@palmbeachschools.org

Date: November 15, 2018

_____
Laura Esterman Pincus, Counsel for the Defendant, School Board of Palm Beach County
**School District of Palm Beach County**
3318 Forest Hill Blvd., Suite C-331
West Palm Beach, FL 33406
561-434-8748
Fax: 434-8105
Email: laura.pincus@palmbeachschools.org

Date: November 15, 2018

_____
Lisa Carmona, Esq., Counsel for the Defendant, School Board of Palm Beach County
**School District of Palm Beach County**
3318 Forest Hill Blvd., Suite C-331
West Palm Beach, FL 33406
561-434-8748
Fax: 434-8105
Email: lisa.carmona@palmbeachschools.org

# EXHIBIT 1

|  Palm Beach County Sheriff's Office Corrections Operating Procedures | COP # 914.01 | Page 1 of 3 |
|---|---|---|

| SUBJECT: **Basic Medical Programs** |
|---|

| INDEX AS: **Medical and Health Care Services** |
|---|

| ISSUED DATE: | SUPERSEDES DATE: | EFFECTIVE DATE: | REFERENCES: |
|---|---|---|---|
| 01/04/77 | 06/22/15 | 12/06/16 | ACA - 4-ALDF-, 4C-01, 4C-03, 4C-04, 4C-05, 4C-08, 4C-20, 4C-21, 4D-11<br>FCAC - 24.11, 24.12<br>FMJS - 7.09, 7.18<br>NCCHC - JA-01, JD-01, JD-04, JE-01, JE-02, JE-04, JE-09, JE-12, JF-1, JF-2, JG-1 through JG-03, JG-05 through JG-10, JI-1, JI-4, JI-6 |

I. **PURPOSE:** The purpose of this Corrections Operating Procedure is to establish guidelines concerning the basic health care available to inmates.

II. **SCOPE:** This Corrections Operating Procedure applies to all Sheriff's Office personnel assigned to the Department of Corrections and the contracted health care provider.

III. **DISCUSSION:** The health care program available to all inmates shall provide the same standard of care as is available to the general population of the community.

IV. **PROCEDURE:** The basic health care program for the Sheriff's Office will provide for, at minimum, the following:

   A.   The continuity of care of inmates from admission to transfer or discharge from the detention centers, including referral to community care when indicated.

   B.   Information about the availability of health care services that is communicated orally and in writing to inmates, in a form and language they understand, at the intake process. When a literacy or language problem prevents an inmate from understanding written information, a staff member or translator assists the inmate.

   C.   Unimpeded access to care by ensuring inmate's written health complaints are solicited daily, triaged by health professionals, and followed up, with appropriate treatment by qualified health personnel. Clinical services are available five (5) times a week and are performed by a physician or other qualified health care professional. Request slips are readily available to all inmates.

   D.   Twenty four (24) hour emergency health care, including medical, mental health and dental are available to those who need them. Emergency provider contact information is available at both facilities.

   E.   Treatment by health care personnel performed pursuant to written protocols, treatment plans or direct orders from a physician, dentist, psychiatrist, or outside specialist with the medical director's approval. Nurse practitioners and physician's assistants may practice within the limits of applicable laws and regulations.

   F.   Inmates receive treatment and diagnostic tests ordered by clinicians.

   G.   Mental health services are provided by qualified mental health professionals who meet the educational and licensure/certification criteria specified by their respective professional disciplines, such as psychiatric nursing, psychiatry, psychology, and social work.

   H.   Any student, intern, or resident delivering health care in the facility, as part of a formal training program work under staff supervision, equivalent to their level of training. There is a written agreement between the facility and training or educational facility that covers the

| COP # 914.01 | Page 2 of 3 |

scope of work, length of agreement, and any legal/ liability issues. Students/interns/residents agree in writing to abide by all facility policies, including those related to security and confidentiality of information.

I. Inmates are prohibited from being used as health care workers and are not used for the following duties:
1. Performing the direct patient care services.
2. Scheduling health care appointments
3. Determining access of other inmates to health care services.
4. Handling or having access to surgical instruments, syringes, needles, medications, or health records.
5. Operating diagnostic or therapeutic equipment.

J. The pharmacy and pharmaceuticals are controlled and managed under the authority of the contract health services within the provisions of applicable laws and regulations. Pharmaceutical operations are sufficient to meet facility needs. The contract health care provider shall arrange for the services of a consultant pharmacist to monitor the pharmacy operations and the administration of medicines to ensure compliance with applicable laws and regulations.

K. Health care (including medical, mental health, dental) screening is performed by health care personnel on all inmates.

L. Health appraisals, including the physical examination, are completed within ten (10) days of admission.

M. Routine and emergency dental care is provided to each inmate under the direction and supervision of a licensed dentist. There is a defined scope of available dental services, including emergent or urgent dental care when in a dentist's judgment; an inmate's health would be adversely affected without treatment, which includes the following:
1. A dental screening is conducted within ten (10) days of admission, unless completed within the last six (6) months, with instructions on dental hygiene.
2. A dental examination by a dentist within twelve (12) months of admission, supported by diagnostic x-ray, if necessary.
3. Treatment of dental pain, sedative fillings, extraction of non-restorable teeth, gross debridement of symptomatic areas and repairs of partials and dentures for those inmates with less than twelve (12) months detention. Extractions are performed in a manner consistent with the American Dental Association's clinical guidelines.
4. A treatment plan with x-rays for those inmates who request care with more than twelve (12) months detention.
5. A defined charting system that identifies the oral health condition and specifies the priorities for treatment by category.
6. Development of an individualized treatment plan for each inmate receiving dental care.
7. Consultation and referral to dental specialists, including oral surgery, when necessary.
8. Each inmate has access to the preventative benefits of fluorides in a form determined by the dentist.
9. All dental care provided will follow contemporary infection control practices.

N. There is a list of types of diagnostic services used by health care personnel and where the services are available (e.g., onsite or at a referral site). A procedure manual is available which includes each onsite diagnostic service. The calibration of testing devices to assure accuracy is kept current per manufacturer's recommendations.

O. Arrangements for special health care programs, including infirmary care, chronic care, convalescent care, prenatal care, postnatal care, continued contraception and preventive health care maintenance for the inmates. Special needs patients receive appropriate close medical supervision or multidisciplinary care.

P. Medical and dental prosthetics and orthodontics, as determined by the responsible physician or dentist, when the health of the inmate would otherwise be adversely affected.

| COP # 914.01 | Page 3 of 3 |

Q.  Health care personnel are prohibited from participating in the collection of forensic information except in cases of sexual assault victims with their consent or if ordered by the court.

R.  The transfer of patients, who need health care beyond the resources available as determined by the responsible physician and under appropriate security provisions.

S.  Guidelines for the use of restraints for medical and psychiatric purposes.

T.  The management of serious, communicable and infectious diseases.

U.  Post-admission screening and referral for the care of mentally ill or developmentally disabled inmates whose adaptation to the correctional environment is significantly impaired.

V.  That detoxification at the facility is done under medical supervision.

W.  The clinical management of chemically dependent inmates.

X.  All examination, treatment, and procedures affected by informed consent standards in the community are likewise observed for inmate care. In the case of minors, the informed consent of parent, guardian, or legal custodian applies when required by law. Health care is rendered against an inmate's will only in accordance with the law.

Y.  The use of inmates for medical, pharmaceutical, or cosmetic experiments is prohibited. This does not preclude individual treatment of an inmate based on his or her need for a specific health care procedure that is not generally available.

Z.  An inmate can refuse, in writing; health treatment and care (refer to COP 914.14).

AA. Notification of designated individuals in case of serious injury, illness, or death of an inmate.

BB. The management of health care records, including issues of confidentiality and transfer of records.

CC. A suicide assessment and intervention program that is reviewed and approved by a qualified medical or mental health care professional.

DD. A program of health education, health promotion, and wellness, and training in self-care to inmates of the facility.

EE. An ongoing, documented training program established or approved by the responsible health authority in cooperation with the chief deputy or designee, to guide the health-related training of all correctional officers who work with inmates.

FF. Inmates under special management (e.g., segregation, disciplinary confinement, administrative confinement, or protective custody) will receive documented visits by qualified health care personnel a minimum of three (3) times per week at intervals not exceeding seventy two (72) hours to determine the inmate's health status.

GG. Therapeutic diets are prescribed by appropriate clinicians. A therapeutic diet manual is available in the Health Service Unit and the food service area for reference and information.

# EXHIBIT 2



| Palm Beach County Sheriff's Office Corrections Operating Procedures | COP # 918.00 | Page 1 of 6 |
|---|---|---|

| SUBJECT: **Special Management Units** | | |
|---|---|---|
| INDEX AS: **Special Management of Inmates** | | |

| ISSUED DATE: | EFFECTIVE DATE: | REVISION DATE: | REFERENCES: |
|---|---|---|---|
| 01/04/77 | 10/10/14 | 03/30/16 | ACA - ALDF- 2A-44 through 2A-49 and 2A-52 through 2A-66<br>FCAC - 7.17, 7.18, 10.04<br>FMJS - 13.13, 13.14<br>NCCHC - J-E-09 |

I.   **PURPOSE:** The purpose of this Corrections Operating Procedure is to establish guidelines for the operation of segregation housing units.

II.  **SCOPE:** This Corrections Operating Procedure applies to all Palm Beach County Sheriff's Office personnel assigned to the Department of Corrections.

III. **DISCUSSION:** At times it is necessary to segregate those inmates whose continued presence in general population would pose a serious threat to themselves or others, property, or to the security or orderly running of the facility. The segregation units are administered according to a review system by which each inmate is evaluated uniformly and objectively. Total isolation, as punishment for a rule violation is not an acceptable practice. There is no discrimination regarding administrative decisions or program access based on an inmate's race, religion, national origin, gender, sexual orientation, or disability.

IV.  **DEFINITIONS:**
   A. Segregation - The confinement of an inmate to an individual cell that is separated from the general population. There are three forms of segregation:
      1. Administrative Segregation - A unit housing inmates whose continued presence in the general population poses a serious threat to life, property, self, staff, or other inmates. Administrative segregation also includes all inmates on a court ordered or administrative telephone restriction.
      2. Disciplinary Detention - A unit housing inmates found guilty of serious or repeated rule violations.
      3. Protective Custody - A status that describes inmates requesting or requiring protection from others.
   B. Special Management Inmate - An individual who presents a serious threat to the safety and security of the facility, staff, general inmate population, or himself/herself.
   C. Segregation Review Committee - Established by the Inmate Management division commander and should be comprised of representatives from classification, shift operations, inmate discipline coordinator and health care provider; and performs several different functions weekly, as follows:
      1. Reviews the justification for all inmates currently housed in administrative, disciplinary confinement, or protective custody.
      2. Reviews and determines what, if any, restrictions should be placed upon inmates on an individual basis.
      3. Attempts to determine the time at which one may be released from segregation unit into general population.

    D.    **Serious Threat -** A situation in which an injury, serious enough to warrant medical attention may occur involving an inmate, employee, or visitor to the facility. The term also applies to situations containing an imminent threat to the security of the facility and/or the safety of inmates, employees, or visitors.

V.    **PROCEDURES:** The following principles apply to the operation of all segregation units. Division commanders have the authority to designate appropriate personnel to ensure the fulfillment of these requirements.

    A.    Placement:

        1.    Reasons for segregating an inmate may include, but are not limited to:

            a.    Reasonable belief with written documentation, that protective custody is warranted and no other reasonable alternative is available.

            b.    Pending a disciplinary investigation or hearing for a serious violation of inmate rules. This placement can also be deemed to be a threat to the safety of staff, other inmates, or to the security of the facility. Privileges and/or visitation/recreation can be withheld pending the hearing.

            c.    A finding of guilt for a rule violation by the disciplinary hearing committee and subsequent sanctions recommended by the disciplinary hearing committee and subsequently approved by the division commander or designee.

            d.    Determination that the record of past incarceration shows that the inmate poses a serious threat (i.e. assault and/or battery against staff or other inmates, etc.). The inmate has a documented pattern of violent behavior or conduct that disrupts the orderly running of a facility.

            e.    Providing immediate control in the event of a disturbance.

            f.    Ensuring the security of the facility, and the safety of staff and other inmates.

            g.    Preventing the loss or destruction of personal or facility property.

            h.    Inmates on a court ordered, or administrative telephone restriction.

    B.    Authority to confine:

        1.    Justification for the placement of an inmate into a segregation unit shall be supported by an order of confinement. The authority to place an inmate into a segregation unit is limited to a sergeant level or above. All supporting paperwork is to be submitted to the watch commander by the end of the shift. When an inmate is to be transferred to segregation, a health care professional is informed immediately and provides an assessment and reviews the inmate health record to determine whether existing medical, dental, or mental health needs contraindicate the placement or require accommodation. The review date and information is noted in the inmate's permanent health record. Unless medical attention is needed more frequently, each inmate in segregation receives a daily visit from a health care provider, which is announced and documented. The health authority determines the frequency of physician visits to segregation units.

    C.    Review Process:

        1.    The justification for each inmate placed into segregation will be reviewed within seventy two (72) hours. Review of the status of each inmate remaining in segregation shall take place every seven (7) days for the first two (2) months and at least every thirty (30) days thereafter. It is the responsibility of the Inmate Management division commander to designate a person or committee to undertake this review which should include an evaluation of the inmate utilizing information from the following sources:

            a.    Medical/psychological profile or pertinent /contributing health information.

            b.    Attitude toward staff and others.

            c.    Ability to function in general population.

        d.      Habitual conduct or language, which may instigate stressful or perhaps violent situations.

2. Such reviews shall be utilized by the segregation review committee for the purpose of determining justification for the following action:
   a. Continued segregation housing.
   b. Transfer to a more/less restrictive segregation unit.
   c. Program and/or security considerations.
   d. Re-integration into general population.

3. The review process includes the following principles:
   a. The inmate does not have the right to be present.
   b. The inmate may present written documentation on his/her behalf.
   c. Upon written request, the inmate may receive written notification of justification supporting continued segregation and/or any program or privilege restrictions.

D. Living Conditions:

1. Segregation units shall provide living conditions that approximate those of the general inmate population. All exceptions are clearly documented.

2. Segregation cells that permit inmates to converse with, and be observed by staff members.

3. Bunks will be above floor level and the inmate will have access to a toilet and wash basin.

4. Meals shall be the same as those served in general population. Food may not be withheld, nor the standard menu varied, as a disciplinary sanction or as a reward for good behavior for an individual inmate.

5. If an inmate uses food or food service equipment in a manner that is hazardous to self, other inmates, or staff, alternative meal service may be provided. Alternative meal service is on an individual basis, is based on health or safety considerations only, meets basic nutrition requirements, and occurs only with the written approval of the facility administrator or designee, and the responsible health authority. The substitution does not exceed seven (7) days.

6. All inmates in special management are provided prescribed medication, clothing that is not degrading and access to basic personal items for use in their cells unless there is an eminent danger that an inmate or any other inmate(s) will destroy an item to induce self- injury.

7. Inmates in special management units have the opportunity to shave and shower at least three times a week. These units receive laundry, barbering/hair care services, and are issued and exchanged clothing, bedding, and linen on the same basis as inmates in general population. Exceptions are permitted only when determined to be necessary. Any exception is recorded in the unit log and justified in writing.

8. Inmates in administrative confinement and protective custody receive privileges comparable to those in general population.

9. Inmates in segregation shall have the opportunity to write and receive mail on the same basis as the general population.

10. Inmates in segregation shall have the opportunity for visitation, unless there are substantial reasons for withholding such privileges. Physical restraints may be required when deemed necessary. All denials for visitation are documented.

11. Inmates in segregation shall have access or alternative access to legal materials.

12. Inmates in segregation shall have access to reading materials.

13. Inmates in segregation shall be allowed telephone privileges on the following basis:
    a. Inmates in administrative confinement and protective custody shall have access to daily telephone privileges.

    b.    Inmates in disciplinary confinement will be allowed telephone privileges that consist only of calls related specifically to accessing the judicial process and family emergencies, as determined by the division commander or designee.

    c.    Inmates on a court ordered telephone restriction will be permitted access to the telephone for calls only as directed by the judge. The authorized list of telephone numbers will be maintained by Classification.  The authorized telephone calls will be dialed by the unit deputy to ensure compliance with the court order and the inmate will not have access to the telephone keypad, except as needed to key in the inmate's pin number.

14.    Inmates in segregation shall have access to a minimum of one (1) hour of exercise outside of their cell, five (5) days per week, unless security and safety considerations (such as a consistent display of inappropriate behavior, which is violent or destructive in nature) indicate otherwise.

15.    Inmates in administrative confinement and protective custody shall have access to religious programs or alternative access such as visits by the chaplain.  Inmates in disciplinary confinement may receive one-on-one guidance through the chaplaincy staff.

16.    Inmates in segregation shall have access to social and counseling services.

17.    Inmates in segregation shall have access to canteen services on the following basis:

    a.    Inmates in administrative confinement and protective custody shall have access to usual services.

    b.    Inmates in disciplinary confinement shall be afforded access to commissary services limited to the following purchases: (1) Personal hygiene and health care items, (2) Postage and writing materials.

E.    Inmates Deprived of Items or Activities:

1.    Whenever an inmate is deprived of any usually authorized item or activity, a report of the action will be made and forwarded to the division commander or designee. Exceptions to these items and activities are permitted only when found necessary by the supervisor on duty, and any exception shall be recorded in the unit logbook or chronological. A copy of the report will be retained in the inmate's classification file. A copy of the report will also be retained in the unit as long as the restriction applies.

F.    Unit Staff:

1.    Staff assigned to work directly with inmates in special management are selected based on criteria that includes:

    a.    Completion of probationary period.

    b.    Experience.

    c.    Suitability for this population.

2.    Staff is closely supervised and their performance is evaluated at least annually. There are provisions for rotation to other duties.

G.    Inmate Observations By Staff:

1.    When relieving a segregation unit officer, the relieving officer shall join the out going officer to make joint physical observation checks of each inmate housed in the unit.

2.    A thorough search of the cell shall be conducted when inmates are engaged in out of cell activities such as recreation visitation, shower, etc.

3.     A deputy sheriff shall personally observe all inmates at least every fifteen (15) minutes on an irregular schedule, which shall be supported by documentation with notation at increments not to exceed fifteen (15) minutes. Inmates who are violent or mentally disoriented or who demonstrate unusual or bizarre behavior receive more frequent observation. Suicidal inmates are under continuous observation until seen by a mental health professional. Subsequent supervision routines are in accordance with that ordered by the mental health professional. Juveniles regardless of housing will be personally observed every ten (10) minutes with documented increments not to exceed ten (10) minutes. These observations will be recorded on the Physical Observation Form by the deputy having made the observations.

4.     Key staff shall visit inmates in segregation. At a minimum, these visits shall include:

    a.     At least one visit per shift by the watch commander and at least two visits per shift by the shift sergeant. The inmate's general condition and attitude shall be determined, noted, and made part of the inmate's file.

    b.     A qualified health care professional visits each inmate for the purpose of determining the inmate's physical and mental well-being. Such visits will be made at a minimum of three (3) times per week, at intervals not exceeding seventy two (72) hours, unless medical attention is needed more frequently. Documentation of segregation rounds are made on individual medical logs and include the date and time of the encounter, and the signature of the health professional making rounds. Any significant health findings are documented. These medical logs become part of the inmate's permanent health record when completed.

    c.     Health staff promptly informs security of inmates that are physically or psychologically deteriorating in segregation or who are exhibiting other signs or symptoms of failing health.

    d.     Health staff will also inform security of the latest scientific information concerning any health effects of segregation.

H.     Unit Logs:

1.     Staff operating segregation units maintain a permanent log that contains at a minimum, the following for all inmates admitted:

    a.     Name of staff member assigned to the unit.

    b.     Date and time an inmate was admitted into the unit.

    c.     Inmate name, jacket number/DOB, housing location.

    d.     Reason for confinement within the unit/ type of infraction.

    e.     Physical observation by staff members.

    f.     Official visitors to the unit.

    g.     Unusual incidents.

    h.     Reasons why an inmate is deprived of any usually authorized item or activity.

    i.     Date and time an inmate was removed from the unit.

    j.     Special medical or psychiatric problems or needs.

I.     Release From Segregation:

1.     An inmate's release from a segregation unit shall be based upon specified criteria, which includes one or more of the following justifications:

    a.     The condition requiring segregation no longer exists.

    b.     New information or evidence indicates the inmate is no longer a threat to himself, others or the security of the facility.

    c.     The investigator of a disciplinary report determines that there is insufficient cause for the charges to be heard by the disciplinary hearing committee.

    d.     The inmate has either completed his disciplinary confinement sanctions or the division commander, or designee, has authorized his early release from disciplinary confinement.

| COP # 918.00 | Page 6 of 6 |

e.    The inmate health care provider considerations necessitate the inmate's release.

f.    Placement into a less restrictive unit is deemed to be a proper alternative.

J.    Releasing Authority:

1.    The authority to release an inmate from the segregation unit is limited to the following persons:

    a.    The division commander or designee.

    b.    The segregation review committee.

    c.    The inmate discipline coordinator.

    d.    Health care provider, as necessary to ensure the physical and/or mental health of the inmate.

    e.    Classification supervisor or designee.

# EXHIBIT 3

## Out time for S12A / S12D (Juveniles)

| Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|---|---|---|---|---|---|---|
| Dayroom<br>0700 – 1100<br>1200 – 1600<br>1700 – 2100 | Dayroom<br>0700 – 1100<br>1200 – 1600<br>1700 – 2100 | Dayroom<br>0700 – 1100<br>1200 – 1600<br>1700 – 2100 | Dayroom<br>0700 – 1100<br>1200 – 1600<br>1700 – 2100 | Dayroom<br>0700 – 1100<br>1200 – 1600<br>1700 – 2100 | Dayroom<br>0700 – 1100<br>1200 – 1600<br>1700 – 2100 | Dayroom<br>0700 – 1100<br>1200 – 1600<br>1700 – 2100 |
| Classroom<br>0700 – 1100<br>1200 – 1600<br>1700 – 2100 | Classroom<br>1430 – 1830<br>1830 – 2230 | Classroom<br>1430 – 1830<br>1830 – 2230 | Classroom<br>1430 – 1830<br>1830 – 2230 | Classroom<br>1430 – 1830<br>1830 – 2230 | Classroom<br>1430 – 1830<br>1830 – 2230 | Classroom<br>0700 – 1100<br>1200 – 1600<br>1700 – 2100 |
| GED (A)**<br>0700 – 1100<br>1200 – 1600<br>1700 – 2100 | GED (A)**<br>0700 – 1100<br>1200 – 1600<br>1700 – 2100 | GED (A)**<br>0700 – 1100<br>1200 – 1600<br>1700 – 2100 | GED (A)**<br>1030 – 1230 (2 Hrs.)<br>1500 – 1900 (4 Hrs.)<br>1900 – 2100 (2 Hrs.) | GED (A)**<br>1030 – 1230 (2 Hrs.)<br>1500 – 1900 (4 Hrs.)<br>1900 – 2100 (2 Hrs.) | GED (A)**<br>1030 – 1230 (2 Hrs.)<br>1500 – 1900 (4 Hrs.)<br>1900 – 2100 (2 Hrs.) | GED (A)**<br>0700 – 1100<br>1200 – 1600<br>1700 – 2100 |
| GED (D)**<br>0700 – 1100<br>1200 – 1600<br>1700 – 2100 | GED (D)**<br>0700 – 1100<br>1200 – 1600<br>1700 – 2100 | GED (D)**<br>0700 – 1100<br>1200 – 1600<br>1700 – 2100 | GED (D)**<br>0700 – 1100<br>1200 – 1600<br>1700 – 2100 | GED (D)**<br>0700 – 1100<br>1200 – 1600<br>1700 – 2100 | GED (D)**<br>0700 – 1100<br>1200 – 1600<br>1700 – 2100 | GED (D)**<br>0700 – 1100<br>1200 – 1600<br>1700 – 2100 |
| Rec ( 1 hour)<br>0700 – 0800<br>0800 – 0900<br>1000 – 1100<br>1200 – 1300<br>1300 – 1400<br>1430 – 1830 (Gen.)*<br>1900 – 2000<br>2000 – 2100 | Rec ( 1 hour)<br>0700 – 0800<br>0800 – 0900<br>1000 – 1100<br>1200 – 1300<br>1300 – 1400<br>1430 – 1830 (Gen.)*<br>1900 – 2000<br>2000 – 2100 | Rec ( 1 hour)<br>0700 – 0800<br>0800 – 0900<br>1000 – 1100<br>1200 – 1300<br>1300 – 1400<br>1430 – 1830 (Gen.)*<br>1900 – 2000<br>2000 – 2100 | Rec ( 1 hour)<br>0700 – 0800<br>0800 – 0900<br>1000 – 1100<br>1200 – 1300<br>1300 – 1400<br>1430 – 1830 (Gen.)*<br>1900 – 2000<br>2000 – 2100 | Rec ( 1 hour)<br>0700 – 0800<br>0800 – 0900<br>1000 – 1100<br>1200 – 1300<br>1300 – 1400<br>1430 – 1830 (Gen.)*<br>1900 – 2000<br>2000 – 2100 | Rec ( 1 hour)<br>0700 – 0800<br>0800 – 0900<br>1000 – 1100<br>1200 – 1300<br>1300 – 1400<br>1430 – 1830 (Gen.)*<br>1900 – 2000<br>2000 – 2100 | Rec ( 1 hour)<br>0700 – 0800<br>0800 – 0900<br>1000 – 1100<br>1200 – 1300<br>1300 – 1400<br>1430 – 1830 (Gen.)*<br>1900 – 2000<br>2000 – 2100 |

This schedule is for possible rotation dependent upon the number of affected individuals.

2018 Calendar Template © calendarlabs.com

# EXHIBIT 4



| | Palm Beach County Sheriff's Office Corrections Operating Procedures | COP # 923.00 | Page 1 of 4 |
|---|---|---|---|

**SUBJECT: Juvenile Admission, Classification and Housing**

**INDEX AS: Juvenile Offenders**

| ISSUED DATE: | SUPERSEDES DATE: | EFFECTIVE DATE: | REFERENCE: ACA - 4-ALDF –2A-37 through 2A-43, 5C-01 FCAC – 23.01 through 23.06 FMJS – 9.06 (a), Chapters 18 & 19 FSS - 985.265, 985.556, 985.557 |
|---|---|---|---|
| 10/03 | 10/10/14 | 04/13/18 | |

I.  **PURPOSE:**  The purpose of this Corrections Operating Procedure is to establish the guidelines, under which juveniles are admitted, classified, housed, and offered programs.

II.  **SCOPE:**  This Corrections Operating Procedure applies to all Sheriff's Office personnel assigned to or working for the Department of Corrections.

III.  **DISCUSSION:** Juveniles shall not be confined in the facility unless they are subject to trial as adults. They shall be housed separated by sight and sound from adult inmates, although they may be in the same facility structure.  Staff shall supervise and monitor the juveniles' activities at all times.  This procedure includes temporary custody of juveniles.

IV.  **ADMISSION OF JUVENILES:**
    A.    Juveniles are processed through the "Juvenile Assessment Center" (JAC) and prohibited from transfer into Sheriff's Office facilities unless by direct file, waiver, grand jury indictment, wanted in another jurisdiction as an adult, or previously been found to have committed a felony or lesser included offense as an adult and have received adult sanctions. This type of juvenile shall be processed as an adult for any subsequent arrest or admission.
    B.    At no time will juveniles be held in the facility except under court order. If juveniles must be temporarily detained until a court order is received, they will be held in the booking area within sight and normal sound of corrections officers or employees at all times while awaiting court orders.
    C.    Juveniles shall not be admitted into the facility unless all appropriate legal documents are presented. These documents must remain part of the juvenile's permanent file.
    D.    Juveniles can only be held in a facility if there is adequate staff to monitor them at all times.
    E.    Juveniles charged with a traffic offense involving death or injury will not be placed with adults under any circumstances.
    F.    Juveniles held in the facility, pursuant to court orders, will be supervised and monitored at all times to include physically documented checks by corrections deputies at intervals not to exceed ten (10) minutes.
    G.    Juveniles held in temporary custody are held in an area of the facility for fingerprinting/photographing and transportation to an appropriate juvenile facility. The time held will not exceed six (6) hours.
    H.    All juveniles brought into the facility for a misdemeanor or traffic warrants are fingerprinted, photographed and given a "Notice to Appear" (NTA) for court and then turned back over to the arresting officer who is responsible for notifying the parents, responsible adult, or guardian of the juvenile.  If a juvenile self-surrenders, a responsible adult must accompany him.  He will then be processed and released to a responsible adult.

| COP # 923.00 | Page 2 of 4 |
| --- | --- |

**V.    GUIDELINES FOR ADMISSION:**

A.    Unless wanted in another jurisdiction as an adult, juveniles are not housed in an adult jail unless.

    1.    The juvenile has been indicted.

    2.    The juvenile has been waived.

    3.    The juvenile was direct filed.

    4.    Adult sanctions were imposed by a court.

B.    When a juvenile is housed as a adult, the following criteria must be met:

    1.    The courts have certified the juvenile for prosecution as an adult.

    2.    The juvenile has been tried as an adult.

    3.    The juvenile has been found guilty as an adult.

    4.    The juvenile was sentenced as an adult.

    5.    All legal documents remain part of the juvenile file.

**VI.    CLASSIFICATION:**

A.    Juveniles:

    1.    All inmates 18 years of age or older shall be classified and housed as adults.

    2.    All inmates under the age of 18, that do not meet the criteria of section V (B., 1, 2, 3, 4) shall be classified as juveniles and housed separately from adults, in a direct supervision unit.

    3.    Inmates shall be re-classified and re-housed when they reach their 18th birthday.

    4.    Classification must be notified immediately upon receiving juveniles.

    5.    A person under 18 years of age must be kept in a designated area even though he/she is sentenced as an adult, but may be housed as an adult on any subsequent arrest or admission. The Main Detention Center facility is designed for housing all juveniles, both male and female.

    6.    Juveniles will be confined within sight and normal sound of staff members.  When placed in a cell separated from adults in the Booking or Releasing areas, a 10- minute watch will be maintained.

    7.    The classification plans for juveniles that determine level of risk and program needs are developmentally appropriate for adolescents.  Classification plans shall include consideration of physical, mental, social, and educational maturity of the juveniles.

    8.    Juveniles housed as adults will only be housed with inmates of the same classification.

**VII.    HOUSING:**

A.    The housing unit officer shall provide for the direct supervision of juveniles housed in the specialized unit to ensure safety and security; 10-minute checks will be maintained.

B.    Juveniles are housed in a specialized unit for juveniles except when:

    1.    A violent, predatory juvenile poses an undue risk of harm to others, and then he/she will be housed within the specialized unit, but under special management policy and procedure.

    2.    A qualified medical or mental health specialist documents that the juveniles would benefit from placement outside the unit.

    3.    A written report of the specific reasons for housing a juvenile outside the specialized unit and a case-management plan specifying what behaviors need to be   modified and how the juvenile may return to the unit.  The facility commander or his/her designee must approve the statement of reasons and case-management plan.  Cases are reviewed at least quarterly by the case manager, facility commander or his/her designee and the juvenile to determine whether a juvenile should be returned to the specialized unit.

    C.    Juveniles in the specialized unit have no more than incidental sight or sound, contact with adult offenders from outside the unit in living, program, dining, or other common areas of the facility. Any other sight or sound contact is minimized, brief, and in conformance with applicable legal requirements.

    D.    Adequate program space will be provided to meet the physical, social, emotional need of juveniles and allows for their personal interactions and group-oriented activities.

## VIII. INMATE PROGRAMS:

A. Programs and services shall be available and include, but are not limited to, the following:
1. Religious activity.
2. Library services, including law library.
3. Educational.
4. Social services.
5. Psychological counseling.
6. Leisure time activities, which may include television, movies, cards, checkers, chess, etc. as authorized by the facility commander.
7. Access to recreation opportunities and equipment, including one hour daily physical exercise outside the cell and outdoors in a recreation area, when weather permits.
8. The Department of Corrections shall actively seek the assistance of related community agencies and organizations.

B. Juvenile participation:
1. Juveniles shall have equal access to various programs.
2. Juveniles shall complete an inmate request form, for applicable programs.
3. The completed form shall be forwarded to the facility's supervisor responsible for the program or service requested.

C. Restriction against participation in a specific program or service shall be:
1. Determined on an individual basis.
2. Based on the past histories of disrupting programs and service.
3. Based on uncontrollable or violent behavior.

D. Juveniles shall not be restricted from participating in programs based on race, religion, national origin, sex, handicap or political belief.

E. Juveniles shall have the option to refuse to participate in facility programs, except work assignments and programs required by statute. Refusals shall be documented in writing and do not prejudice an inmate for future participation.

F. Equal opportunities shall be provided for males and females to participate in programs and services when they are housed at the same facility.

G. Juveniles are required to attend educational classes required by the School Board of Palm Beach County.

## IX. STAFF TRAINING:

A. Certified staff and program personnel who work with juveniles from the specialized unit will have written job descriptions, and are trained in the developmental, safety and other specific needs of juveniles, prior to assignment in these units. The training includes but is not limited to the following areas:
1. Adolescent development.
2. Educational programming.
3. Cultural awareness.
4. Crisis prevention and intervention.
5. Legal issues.
6. Housing and physical plant.
7. Policies and procedures.
8. The management of, and programming for, sex offenders.
9. Substance-abuse services.

| COP # 923.00 | Page 4 of 4 |

10.     Cognitive and behavioral interventions, including anger management, social skills training, problem solving, and resisting peer pressure.
11.     Suicide prevention.
12.     Nutrition.
13.     Mental health issues.
14.     Gender specific issues.
15.     Case management planning and implementation.