UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**Civil No. 18-cv-80810 –Matthewman**

H.C., a minor, by and through his parent and natural
guardian, Jenny C., et al., on behalf of themselves and
all others similarly situated,

Plaintiffs,

　　　　　v.

RIC BRADSHAW, Palm Beach County Sheriff, in his
official capacity; and SCHOOL BOARD
OF PALM BEACH COUNTY,

Defendants.

_____/

**JOINT MOTION AND MEMORANDUM FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT, APPOINTMENT OF CLASS COUNSEL AND
CERTIFICATION OF CLASS**

### I.　　Introduction

The parties jointly seek final approval of the class-action settlement agreement ("Settlement Agreement"), appointment of class counsel and certification of the class and subclasses in the above-captioned case.  On November 16, 2018, the Court granted the parties' Joint Motion to Conditionally Certify Class, Preliminarily Approve Settlement, Appoint Class Counsel, and Set Fairness Hearing ("Joint Preliminary Approval Motion).  A Fairness Hearing was accordingly set for March 5, 2019.

The Settlement Agreement is fair, reasonable and adequate because (1) the negotiation was fair; (2) continued litigation is likely to be complex, extended and expensive; (3) the parties were able to fairly assess the relative strengths of their arguments; and (4) settlement avoids the risks of

litigation. The only factor not addressed in the Joint Preliminary Approval Motion was whether any objections or comments were received by the parties.  The parties hereby submit that pursuant to notices sent as required by the Class Action Fairness Act ("CAFA"), 28 U.S.C. §1715(d), no objection or comments were received by any party, or have been filed with the Court.

## II.     Factual Background

On June 21, 2018, Plaintiffs filed this action challenging the policies and practices of the Palm Beach County Sheriff's Office in placing juveniles charged as adults in solitary confinement in the Palm Beach County Jail ("Jail"), and the policies and practices of the Sheriff's Office and Palm Beach County School Board regarding the provision of educational services to the children held in solitary confinement, including those with mental health and/or intellectual disabilities. (Dkt. No. 1). At the same time, Plaintiffs filed a motion for preliminary injunction to enjoin "Defendants from holding children at the Jail in solitary confinement and from routinely denying these incarcerated children educational services, including services needed to address their disabilities." (Dkt. No. 6). Plaintiffs also filed a motion for class certification (Dkt. No. 7), which the Court denied without prejudice as premature. (Dkt. No. 11).  Defendants deny the Plaintiffs' allegation.

Plaintiffs' motion for preliminary injunction was set for hearing October 3 through October 5, 2018, (Dkt. No. 31), and the parties engaged in expedited discovery and filed their witness and exhibit lists in preparation for the hearing. (Dkt. No. 59-67). Magistrate Judge Matthewman held a status conference on September 27, 2018, (Dkt. No. 69), at which time the parties advised that they believed they would be able to resolve the issues raised in Plaintiffs' motion for preliminary injunction and the entire case without Court intervention. (Dkt. No. 70). The Court continued the

evidentiary hearing to November 5, 2018 to allow the parties to conduct a settlement conference on October 3. (Dkt. No. 70).

The parties met on October 3 and, after engaging in extensive negotiations, reached an interim settlement agreement to resolve this action, which they have now finalized through subsequent negotiations.  Dkt. No. 78-1.  This Settlement Agreement resolves Plaintiffs' motion for preliminary injunction (Dkt. No. 6) as well as Plaintiffs' amended class-action complaint. (Dkt. No. 38).

### III.   Material Terms of the Settlement Agreement

#### A.  Class Definition

As noted in the Settlement Agreement, the proposed settlement class includes "all present and future juveniles (*i.e.* individuals under the age of 18 and charged as adults) who are now or will be incarcerated in segregated housing while in the custody of the Sheriff's Office" (Dkt. No. 78-1 at ¶ 6a; ¶ 28). Additionally, there are 2 proposed settlement subclasses:

a)  all present and future juveniles (*i.e.* individuals under the age of 18 and charged as adults) with disabilities, as defined by the Individuals with Disabilities Education Act, who are now or will be incarcerated in segregated housing while in the custody of the Sheriff's Office and are in need of special education evaluation, instruction, accommodations, and related services ("IDEA subclass"); and

b)  all present and future juveniles (*i.e.* individuals under the age of 18 and charged as adults) with disabilities, as defined by the Americans with Disabilities Act and Section 504 of the Rehabilitation Act, who are now or will be incarcerated in segregated housing while in the custody of the Sheriff's Office ("ADA and 504 Subclass").

(*Id.* at ¶¶ 6b-c; ¶ 28).

#### B.  Benefits to the Class

Under the Settlement Agreement, the Sheriff's Office shall allow all juveniles, regardless of classification, to have recreation and showers 7 days a week, and no phone or visitation privileges will be unreasonably withheld. (*Id.* at ¶¶ 10f-h.). And, any juvenile classified into

segregated housing for any reason, other than protective custody, shall be allowed out of their cells throughout the regular school day with other juveniles in general population so long as there are no co-defendants or keep-separates in the same housing pod. (*Id.* at ¶ 10a.). In the event that there are co-defendants or keep separates in the same housing pod, the Sheriff's Office shall implement a rotating schedule that utilizes alternative accommodations within the correctional facility in order to prevent co-defendants or keep separates from having direct contact with each other. (*Id.* at ¶ 10a.i.). Any time the number of juveniles in the custody of the Sheriff's Office who have co-defendants or keep separates exceeds the number of available accommodations within the correctional facility such that the Sheriff's Office cannot apply the rotation schedule fairly and equally, the Sheriffs' Office shall within 3 business days notify Plaintiffs' Counsel and provide alternative housing options or strategies. (*Id.* at ¶ 10a.ii.). On weekends and holidays the Sheriff's Office shall utilize an expanded rotation schedule for co-defendants and keep separates that allows for greater time in programs, recreation or other facility accommodations in order to minimize the duration of time spent in segregated housing. (*Id.* at ¶ 10a.i.2.). For any juvenile in segregated housing on weekends and holidays because of a disciplinary referral, the Sheriff's Office shall minimize the amount of time the juvenile will spend in segregated housing by utilizing an expanded rotation schedule and by implementing an alternative behavior management policy. (*Id.* at ¶¶ 10a.i.2.a-b.). During weekly juvenile Segregation Review Committee meetings, the Sheriff's Office shall evaluate whether any keep separate designations can be modified or eliminated. (*Id.* at ¶¶ 10.e.).

Within 24 hours (excluding weekends and holidays) of any juvenile being placed in segregated housing for any reason, the Sheriff's Office and the School Board shall confer to determine how best to allow equal access, including any accommodations, to juvenile

educational services and programming outside of the segregation cell. (*Id.* at ¶ 10.b.i.). The Sheriff's Office and School Board shall maintain notes and documentation of these conferences. (*Id.* at ¶ 10.b.i.1.). Also within 24 hours, the Sheriff's Office shall refer the juvenile to a mental health professional for an evaluation and to determine a need for any accommodations. (*Id.* at ¶ 10.b.ii.).

The Sheriff's Office shall bring all juveniles out of segregated housing during the regular school day in order for the School Board to facilitate educational services and programming. (*Id.* at ¶ 10.c.). There shall be no cell-side facilitation of educational services and programming to juveniles in segregated housing, and any juvenile who refuses to come out of segregated housing for educational instruction shall not be placed on "lockdown" or any other form of segregated housing for the remainder of the school day. (*Id.* at ¶¶ 10.c.i.-ii.). Instead, the juvenile who refused educational services and programming shall be given another opportunity to participate prior to each period, shall meet with a guidance counselor or designee regarding the refusal, and shall be referred to a mental health professional for screening and evaluation within 24 hours. (*Id.* at ¶¶ 10.c.ii.1.-3.).

For any juvenile entering the custody of the Sheriff's Office, the School Board shall hold a School Based Team (SBT) meeting or Individual Education Plan (IEP) meeting within two weeks of such entry. (*Id.* at ¶ 12.). Thereafter, the School Board shall hold a quarterly SBT or IEP meeting for each juvenile held in custody by the Sheriff's Office. (*Id.* at ¶ 12.a.).

Plaintiffs' counsel in cooperation with designated experts in corrections and education shall oversee and monitor implementation and compliance with the injunctive terms of this Agreement for a period of two years (*Id.* at ¶ 20.a.). The Sheriff's Office shall provide the designated experts access to its correctional facilities on a quarterly basis beginning in January

2019 as follows: 1) Plaintiffs' designated experts shall provide at least 60 days' notice prior to conducting any quarterly on-site visit; 2) Plaintiffs' designated experts shall have full and complete access to any part of the correctional facility that houses juveniles, the medical and mental health units, as well as any room or other accommodation used for educational instruction, programming, recreation, or the facilitation of any other juvenile services; 3) Plaintiffs' designated experts shall have full and complete access to any Sheriff's Office or School Board staff member who has or has had any interaction with juveniles; and 4) Plaintiffs' designated experts shall have full and complete access to any juvenile who, at the time of his monitoring activities, is or has been held in segregated housing. (*Id.* at ¶¶ 20.a-d.).

### C.  Notice

Because this proposed Class Settlement would be certified under Rule 23(b)(2) (and not Rule 23(b)(3)), the Settlement Class Members cannot "opt out" of the Settlement, nor are the parties required to provide notice to Settlement Class Members. *See WalMart Stores, Inc. v. Dukes*, 564 U.S. 338, 362 (2011) ("The Rule provides no opportunity for (b)(1) or (b)(2) class members to opt out, and does not even oblige the District Court to afford them notice of the action.); *see also W. Morgan-E. Lawrence Water & Sewer Auth. v. 3M Co.*, 737 Fed. Appx. 457, 467–68 (11th Cir. 2018) ("claims seeking declaratory or injunctive relief equally applicable to the entire class may be resolved through mandatory class litigation under Rule 23(b)(2); individualized claims for relief . . . should be resolved under Rule 23(b)(3), which provides absent class members notice and an opportunity to opt out.") (footnotes omitted; citing *Dukes*).  CAFA notices to the U.S. Attorney General and the Florida Attorney General's Office were made by Defendant, the School Board of Palm Beach County, on November 16, 2018, and Defendant, the Palm Beach County Sheriff's Office, on November 20, 2018.  (Dkt. Nos. 80-82).  Moreover, the required 90 day waiting period

subsequent to the CAFA notices expired on or about February 17, 2019, and no objections or comments to the Settlement Agreement have been received by any party, or otherwise filed with the Court.

## ARGUMENT

### I. The Court Should Certify the Class, Appoint Class Counsel and Grant Final Approval of the Class-Action Settlement

#### A. Class Action Certification

"A class may be certified 'solely for purposes of settlement where a settlement is reached before a litigated determination of the class certification issue.'" *Lipuma v. American Express Co.*, 406 F. Supp. 2d 1298, 1314 (S.D. Fla. 2005) (quoting *Woodward v. NOR–AMChem. Co.*, 1996 WL 1063670 *14 (S. D. Ala. 1996)); *see also Borcea v. Carnival Corp.*, 238 F.R.D. 664, 671 (S. D. Fla. 2006). Whether a class is certified for settlement or for trial, the Court must find that the prerequisites for class certification under Rule 23(a) and (b) of the Federal Rules of Civil Procedure are met. *Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997). "Doubts regarding the propriety of class certification should be resolved in favor of certification." *Singer v. AT&T Corp.*, 185 F.R.D. 681, 685 (S.D. Fla. 1998).

#### 1. Rule 23(a) is Met

Rule 23(a) sets forth four prerequisites to maintaining a class action: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). The putative settlement class meets each of these requirements.

i. The Class is Sufficiently Numerous that Joinder is Impracticable

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Here, the Settlement Agreement provides prospective and permanent injunctive relief to the class of "all present and future juveniles (*i.e.* individuals under the age of 18 and charged as adults) who are now or will be incarcerated in segregated housing while in the custody of the Sheriff's Office," (Dkt. No. 78-1 at ¶¶ 6.a; ¶ 28), as well as the IDEA and ADA prospective injunctive subclasses. (Dkt. No. 78-1 at ¶¶ 6.b-c; ¶ 28). Because all members of the class are not identifiable, it would be impracticable to join them into a single action. *See Braggs v. Dunn*, 317 F.R.D. 634, 653 (M.D. Ala. 2016) (collecting cases for the proposition that an injunctive relief class, which includes unknown individuals or unknown future members, satisfies the numerosity requirement). Accordingly, the numerosity requirement is satisfied.

> ii.  There are Questions of Law and Fact Common to the Proposed Class

To satisfy the commonality requirement of Rule 23(a)(2), there must be at least one question of law or fact common to the class. Fed. R. Civ. P. 23(a)(2); *Fabricant v. Sears Roebuck & Co.*, 202 F.R.D. 310, 313 (S.D. Fla. 2001). The Eleventh Circuit has noted that this requirement is a "low hurdle." *Williams v. Mohawk Indus.*, 568 F.3d 1350, 1356 (11th Cir. 2009). It is met when a plaintiff alleges the defendant engaged in a course of conduct that affects all class members. *Prado-Steiman v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000); *In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 685-86 (S.D. Fla. 2004). Even "'a single question of law or fact common to the members of the class will satisfy the commonality requirement.'" *Wal-Mart Stores v. Dukes*, 131 S. Ct. 2541, 2556 (2011) (quoting Nagareda, The Preexistence Principle and the Structure of the Class Action, 103 COLUM. L.REV. 149, 176, n. 110 (2003)).

The commonality requirement is easily satisfied here. Just some of the common issues are:

1. whether Defendants' policies and practices of placing children in isolation violate the Eighth Amendment;

2. whether Defendants' policies and practices of placing children in isolation violate the Fourteenth Amendment; and

3. whether Defendants have unlawfully denied educational services in violation of the class members' Fourteenth Amendment rights.

### iii. The Class Representatives' Claims are Typical of the Claims of the Class

Claims are typical when they all arise from the same event, pattern, or practice, and are based upon the same legal theory. *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984). Class members' claims need not be identical; instead there need only exist a sufficient nexus between the legal claims of the named class representatives and class members. *Muzucco v. Re$ubmit*, LLC, 297 F.R.D. 504, 516 (S.D. Fla. 2013). The focus of the typicality inquiry is whether the class representative's interest is aligned enough with the proposed class members to stand in their shoes for purposes of the litigation and bind them in a judgment on the merits. *See General Tel. Co. v. Falcon*, 457 U.S. 147, 156 (1982) (citation omitted); *Kornberg* at 1337; *Vega v. T-Mobile USA*, 564 F.3d 1256, 1275 (11th Cir. 2009). "A class representative must possess the same interest and suffer the same injury as the class members in order to be typical under Rule 23(a)(3)." *Busby v. JRHBW Realty*, 513 F.3d 1314, 1322 (11th Cir. 2008). Like commonality, the "test for typicality . . . is not demanding." *In re Disposable Contact Lens Antitrust Litig.*, 170 F.R.D. 524, 532 (M.D. Fla. 1996).

Here, Plaintiffs' claims are typical of the claims of putative class members who are being or will be held in solitary confinement in violation of their constitutional rights.  By proving their case, Plaintiffs will establish the elements necessary to prove the case of each putative class and

subclass member. This is sufficient to satisfy the requirement of typicality. *See Brooks v. Southern Bell Tel. & Tel. Co.*, 133 F.R.D. 54, 58 (S.D. Fla. 1990).

>iv. The Class Representatives Fairly and Adequately Protect the Class

Rule 23(a)(4) requires that parties fairly and adequately protect the interests of the class. This means demonstrating (1) no substantial conflicts of interest exist between the representatives and the class, and (2) the representatives and their counsel will adequately prosecute the case. *Valley Drug*, 350 F.3d at 1189. For there to be a substantial conflict, the economic interests and objectives of the named representatives must differ significantly from those of other class members, such as where a defendant's alleged conduct has benefitted some class members, but harmed others. *Id.*

Here, neither of the Plaintiffs have any conflicts of interest—both are seeking to invalidate the same conduct. Plaintiffs and the putative class members share a common goal—an end to the unconstitutional treatment of juveniles in solitary confinement in Palm Beach County. There is no likelihood of a substantial, i.e., economic, conflict of interest developing because Plaintiffs seek only declaratory and injunctive relief—not compensatory damages. The relief sought by Plaintiffs will benefit the entire class in the same manner.

Furthermore, Plaintiffs are represented by counsel that will adequately prosecute the case. The Legal Aid Society of Palm Beach County has previously litigated class action cases[1] and provides decades of experience in education law advocacy and litigation, particularly in Palm

---

[1] *Hernandez v. Medows*, 209 F.R.D. 665 (S.D. Fla. 2002) (obtaining notice and hearing rights for Florida Medicaid recipients with claims for prescription medicine rejected at the pharmacy); *Bonnie L. v. Bush* (also known as *31 Foster Children v. Bush*) 180 F. Supp. 2d 1321 (S.D. Fla. 2001), *aff'd in part and vacated in part*, 329 F.3d 1255 (11th Cir. 2003), *cert. denied*, 540 U.S. 984 (2003).

Beach County. The Human Rights Defense Center ("HRDC") litigates constitutional challenges and prisoner rights cases around the country on behalf of prisoners.[2] And Cohen Milstein Sellers & Toll has been class counsel in hundreds of cases around the country.[3] Absent specific proof to the contrary, the adequacy of counsel is presumed. *Sanchez-Knutson v. Ford Motor Corp.*, 310 F.R.D. 529, 540 (S.D. Fla. 2015).

## 2.   Certification is Proper Under Rule 23(b)(2)

Rule 23(b)(2) allows for class certification when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or

---

[2] HRDC's attorneys and staff have testified before the U.S. Congress and state legislatures on prison-related topics and have submitted comments to numerous public agencies including the Federal Communications Commission, the National Prison Rape Elimination Commission, the Civil Rights Commission, the U.S. Department of Justice and the Consumer Financial Protection Bureau. HRDC's litigation project has been involved in prisoner rights cases across the United States both as lead and co-counsel on issues ranging from consumer class actions and public records litigation to wrongful death and prison conditions cases. Accordingly, the attorneys at HRDC have extensive experience litigating federal court actions against state and federal correctional facilities, government officials and private actors and have developed specific expertise on issues related to the operation of prisons and jails, as well as the current scope of litigation concerning the rights of prisoners. HRDC also files amicus curiae briefs at both the Circuit court and U.S. Supreme Court in other important cases that have a potential to affect prisoners, their families and the rest of society (*i.e.* police misconduct, medical care, immunity issues, etc.). The following is a list of some of the representative cases HRDC has been involved: *Gaines v. Fla. Dept. of Corr. et al.*, 4:18-cv-00367 (N.D.Fla. 2018); *Reichert v. Keefe Commissary*, 3:17-cv-05848-RBL (W.D. Wash. 2017); *Brown v. Stored Value Cards, Inc.*, 3:15-cv-01370-MO (D. Or. 2015); *Reyes v. JPay, Inc.*, 2:18-cv-00315 (C.D.Cal. 2018); *Prison Legal News v. Lehman*, 397 F.3d 692 (9th Cir. 2005); *Prison Legal News v. Washington State Department of Corrections*, Case No. 0:2000-cv-35095 (9th Cir. 2001); *Prison Legal News v. Cook*, 238 F.3d 1145 (9th Cir. 2001); *Prison Legal News v. Simmons (sub nom Jacklovich)*, 392 F.3d 420 (10th Cir. 2004); *Prison Legal News v. Schwarzenegger*, 561 F.Supp.2d 1095 (N.D. Cal. 2008); *Prison Legal News v. Lappin*, 436 F. Supp.2d 17 (D.D.C 2006); *Pope v. E.Z Card & Kiosk*, Case No. 9:15-cv-80628 (S.D. Fla. 2015); *Nunuha v. Corrections Corporation of America*, l:12-cv-00147 (D. Haw. 2012); *Prison Legal News v. Bureau of Prisons*, 1:14-cv00683 (D.D.C. 2014).

[3] *See, e.g., Hankinson et al v. R.T.G. Furniture Corp.*, No. 9:15-CV-81139 (S.D. Fla); *HEMT MBS Litigation*, No. 1:08-cv-05653 (S.D. NY); *In re Urethane Antitrust Litigation (Polyether Polyol Cases)* (D. Kan.); *RALI MBS Litigation*, No. 08-8781 (S.D. NY); *In re: Bear Stearns Mortgage Pass-Through Certificates Litigation*, No. 08-08093 (S.D. NY); *In Re Electronic Books Antitrust Litigation*, No. 11-md-02293 (S.D. NY).

corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "Generally applicable" means that "the party opposing the class has acted in a consistent manner towards members of the class so that [its] actions may be viewed as part of a pattern of activity . . . to all members." *Leszczynski v. Allianz Ins.*, 176 F.R.D. 659, 673 (S.D. Fla. 1997). This is sometimes referred to as "cohesiveness." *Barnes v. Am. Tobacco Co.*, 176 F.R.D. 479, 488 (E.D. Pa. 1997) ("When a court determines whether the defendant 'has acted or refused to act on grounds generally applicable to the class,' the court is perforce examining whether the class is cohesive in nature.").

"Subsection (b)(2) was 'intended primarily to facilitate civil rights class actions, where the class representatives typically sought broad injunctive relief against discriminatory practices.'" *Holmes v. Continental Can Co.*, 706 F.2d 1144, 1155 (quoting *Penson v. Terminal Transport Co.*, 634 F.2d 989, 993 (5th Cir. 1981)). "The very nature of a (b)(2) class is that it is homogeneous without any conflicting interests between the members of the class." *Wetzel v. Liberty Mut. Ins. Co.*, 508 F.2d 239, 256 (3d Cir.), *cert. denied*, 421 U.S. 1011 (1975).

Here, Plaintiffs' challenge to the unconstitutional treatment of juveniles held in solitary confinement in Palm Beach County falls squarely within the ambit of Rule 23(b)(2). Plaintiffs seek only prospective injunctive relief to remedy the same constitutional wrongs committed against the entire class. And, as set forth above, there are no conflicting interests between Plaintiffs and members of the class because they all seek the same relief against this unconstitutional treatment. *See Henderson v. Thomas*, 289 F.R.D. 506, 512 (M.D. Ala. 2012) ("Rule 23(b)(2) certification is appropriate for plaintiffs seeking prospective relief for the class as a whole."). Accordingly, the requirements of Rule 23(b)(2) are easily met.

### B.   Final Approval of the Settlement Agreement

Judicial review of a proposed class action settlement is a two-step process: preliminary approval and a subsequent fairness hearing. *Holman v. Student Loan Xpress, Inc.*, No. 8:08–cv–305–T–23MAP, 2009 WL 4015573, at *4 (M.D. Fla. Nov. 19, 2009); *see also* MANUAL FOR COMPLEX LITIGATION, § 21.632 (4th ed. 2006).

The Court has completed the first step of the process, and made a preliminary evaluation of the fairness of the settlement. In so doing, the Court considered (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved. *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). Accordingly, the Court preliminarily approved the Settlement Agreement at issue.

At the fairness hearing, the Court must "adduce all information necessary to enable the judge intelligently to rule on whether the proposed settlement is 'fair, reasonable, and adequate." *Armstrong v. Bd. Of Sch. Dirs.*, 616 F. 2d 305, 314 (7th Cir. 1980) (footnote omitted). At the fairness hearing, and based on all information available to the court, the court decides whether to finally approve the proposed settlement. *See Fresco v. Auto. Directions, Inc.*, No. 03-CIV-61063-MARTINEZ- SIMONTON, 2009 U.S. Dist. LEXIS 125233, at *8 (S.D. Fla. Jan. 16, 2009).

### 1.   The Settlement Agreement is Fair, Adequate and Reasonable

Under Rule 23(e), "[a] class action settlement [ ] should be approved so long as it is fair, adequate and reasonable, and is not the product of collusion between the parties." *Access No, Inc., v. Claire's Stores, Inc.*, 00-14017-CIV, 2002 WL 1162422, at *4 (S.D. Fla. May 7, 2002) (internal

quotation and citations omitted). The Eleventh Circuit has recognized that "[p]ublic policy strongly favors the pretrial settlement of class action lawsuits." *In re United States Oil and Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992). Settlement "has special importance in class actions with their notable uncertainty, difficulties of proof, and length. Settlements of complex cases contribute greatly to the efficient utilization of scarce judicial resources, and achieve the speedy resolution of justice...." *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 538 (S.D. Fla. 1988) *aff'd*, 899 F.2d 21 (11th Cir. 1990) (citations omitted). As a general matter, "unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." 4 Alba Conte & Herbert Newberg, NEWBERG ON CLASS ACTIONS §11.50, at 155 (4th ed. 2002).

Here, settlement is desirable because it brings immediate relief to the Settlement Class Members, when such relief would be uncertain otherwise. There is no guarantee that this Court (or the Eleventh Circuit) would have certified Plaintiffs' 23(b)(2) class. While Plaintiffs believe that this case is perfectly suited for class-wide treatment, if the class was denied, then the Settlement Class Members would have received no injunctive relief at all. There is also no guarantee that Plaintiffs would have succeeded at trial. While Plaintiffs are confident that they would be able to show that Defendants' policies and practices of placing juveniles in solitary confinement are unconstitutional, success before the ultimate fact finder was by no means guaranteed. Settlement of this case avoids the risk of this Court or the Eleventh Circuit rejecting class certification, or the Plaintiffs losing at trial, puts an immediate stop to the lengthy incarceration of juveniles in solitary confinement, and provides for the proper provision of educational services and programming to juveniles in the custody of the Sheriff's Office. Furthermore, in this Settlement Agreement

Plaintiffs are obtaining the relief they sought in this litigation—Plaintiffs do not believe they could

obtain greater relief if they proceeded to trial.

## CONCLUSION

The parties jointly request the Court grant the following relief:

1. Certification of the Class and Subclass Members;

2. Appointment of Class Counsel; and

3. Final Approval of the Settlement Agreement and retention of jurisdiction for purposes

    of enforcement, monitoring and attorneys' fees and costs.


Respectfully submitted this 28th day of February, 2019,


| | |
|---|---|
| **Theodore Jon Leopold**<br>Cohen Milstein Sellers & Toll, PLLC<br>2925 PGA Boulevard<br>Suite 200<br>Palm Beach Gardens, FL 33410<br>561-515-1400<br>Fax: 561-515-1401<br>Email: tleopold@cohenmilstein.com<br><br>*Attorney for Plaintiffs, H.C. et al.* | **Richard A. Giuffreda**<br>Purdy Jolly Giuffreda & Barranco PA<br>2455 E Sunrise Boulevard<br>Suite 1216<br>Fort Lauderdale, FL 33304<br>954-462-3200<br>Fax: 462-3861<br>Email: richard@purdylaw.com<br><br>*Attorney for Defendant, Palm Beach Sheriff's Office* |
| **Diana Leigh Martin**<br>Cohen, Milstein, Sellers & Toll, PLLC<br>2925 PGA Blvd.<br>Suite 200<br>Palm Beach Gardens, FL 33410<br>561-515-1400<br>Fax: 561-515-1401<br>Email: dmartin@cohenmilstein.com<br><br>*Attorney for Plaintiffs, H.C. et al.* | **Jon Erik Bell**<br>School District of Palm Beach County<br>3300 Forest Hill Blvd Rm C-323<br>West Palm Beach, FL 33406<br>(561) 434-8500<br>Fax: (561) 434-8105<br>Email: jon.bell@palmbeachschools.org<br><br>*Attorney for School District of Palm Beach County* |
| **Sabarish P Neelakanta**<br>Human Rights Defense Center<br>P.O. Box 1151 | **Laura Esterman Pincus**<br>3318 Forest Hill Blvd., Suite C-331<br>West Palm Beach, FL 33406 |

| Lake Worth, FL 33460<br>561-360-2523<br>Fax: 866-735-7136<br>Email: sneelakanta@hrdc-law.org<br><br>*Attorney for Plaintiffs, H.C. et al.* | 561-434-8748<br>Fax: 434-8105<br>Email:<br>laura.pincus@palmbeachschools.org<br><br>*Attorney for School District of Palm Beach County* |
| --- | --- |
| **Melissa Marie Duncan**<br>Legal Aid Society of Palm Beach County<br>423 Fern Street<br>Suite 200<br>West Palm Beach, FL 33401<br>561-655-8944<br>Fax: 655-5269<br>Email: mduncan@legalaidpbc.org<br><br>*Attorney for Plaintiffs, H.C. et al.* | |

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this 28th day of February, 2019, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the attorneys of record who are registered as such on the CM/ECF system.


/s/ *Sabarish Neelakanta*
Sabarish Neelakanta