UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Civil No. 18-cv-80810-Matthewman

H.C., *et al.*,

    Plaintiffs,

vs.

RIC BRADSHAW, *et al.*,

    Defendants.

_____/



FILED BY_____ D.C.

OCT 10 2019

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. – W.P.B.

## ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' VERIFIED MOTION FOR ATTORNEYS' FEES AND COSTS [DE 87]

THIS CAUSE is before the Court upon Plaintiffs', H.C., a minor, by and through his parent and natural guardian, Jenny C.; M.F., a minor, by and through his parent and natural guardian, Asisa Rolle; and T.M., by and through his parent and natural guardian, Jessica Joiner (collectively, "Plaintiffs") Verified Motion for Attorneys' Fees and Costs ("Motion") [DE 87]. Defendant Rick Bradshaw, Palm Beach County Sheriff ("the Sheriff"), has filed a Response [DE 92], Defendant School Board of Palm Beach County ("the School Board") has filed a Response [DE 93], and Plaintiffs have filed a Reply [DE 98]. This matter is now ripe for review.

## I.    BACKGROUND

On June 21, 2018, Plaintiffs filed a Class-Action Complaint for Injunctive and Declaratory Relief [DE 1] and a Motion for Preliminary Injunction [DE 6]. Plaintiffs filed their First Amended Complaint on August 2, 2018 [DE 38]. The Court scheduled an evidentiary hearing on the Motion for Preliminary Injunction and set other deadlines related to the motion. [DE 31]. On November 15, 2018, after the parties had engaged in discovery, filed and responded to two sets of motions to

dismiss, fully briefed the Motion for Preliminary Injunction, and filed witness and exhibit lists, the parties filed a Joint Motion to Conditionally Certify Class, Preliminarily Approve Settlement, Appoint Class Counsel, and Set Fairness Hearing [DE 78].

The Court entered an Order granting the parties' Joint Motion [DE 79]. After the Court held a fairness hearing on March 5, 2019, it entered a Final Order Approving Class-Action Settlement Agreement, Appointment of Class Counsel and Certification of Class [DE 86]. The Court dismissed the action with prejudice. *Id.* Additionally, the Court retained jurisdiction "to consider all further applications arising out of or in connection with the Settlement Agreement, including monitoring, enforcement, and attorneys' fees and costs." *Id.* at p. 4.

## II.     **MOTION, RESPONSES, AND REPLY**

In their Motion, Plaintiffs argue that they are the prevailing parties and that they are entitled to attorneys' fees and costs in the amount of $645,822.78. [DE 87, pp. 6, 22]. Plaintiffs specifically contend that they are entitled to attorneys' fees and costs pursuant to 42 U.S.C. § 1988 (for Section 1983 claims), 42 U.S.C. § 12205 (for ADA claims), 20 U.S.C. § 1415(i)(3)(B) (for IDEA claims), and 29 U.S.C. § 794a(b) (for Rehabilitation Act claims). [DE 87, p. 7]. According to Plaintiffs, Cohen Milstein billed 324.25 hours and billed $148,050.00 in fees, the Human Rights Defense Center billed 586.70 hours and billed $198,852.50 in fees, and Legal Aid Society of Palm Beach County billed 450.85 hours and billed $227,011.25 in fees. *Id.* Plaintiffs' counsel discounted all of the claimed attorneys' fees by 10% for a total attorneys' fee award of $606,526.00. *Id.* at p. 7. Plaintiffs are also claiming $39,296.78 in costs incurred by their attorneys. *Id.* Finally, Plaintiffs assert that they obtained substantial success, that the hourly rates they seek for their attorneys are reasonable, that they seek compensation for a reasonable number of hours, and that their attorneys exercised their billing judgment by cutting all billable hours by 10%. *Id.* at

2

pp. 9-20].

In his Response, the Sheriff argues that this was "not a contentious lawsuit and it was resolved rather quickly." [DE 92, p. 2]. The Sheriff concedes that Plaintiffs are the prevailing parties and are entitled to reasonable fees and costs, but he challenges the reasonableness of Plaintiffs' counsel's hourly rates and the reasonableness of the number of hours expended. *Id.* at p. 4. He also challenges the taxable costs sought by Plaintiffs as untimely and most of the non-taxable litigation expenses as unreasonable. *Id.* The Sheriff contends that Plaintiffs should be awarded $260,690.50 in attorneys' fees and $131.33 in costs, for a total of $260,821.83. *Id.* at p. 39. The Sheriff's specific arguments and objections shall be discussed in more detail later in this Order.

In its Response, the School Board joins and adopts the objections, arguments, and calculations set forth in the Sheriff's Response. [DE 93, p. 1]. The School Board also requests that the Court permit the parties to "submit supplemental memoranda regarding the apportionment of fees and costs once the Court has ruled on the reasonableness and amount of Plaintiffs' fees and costs." *Id.* at p. 2.

In reply, Plaintiffs argue that Defendants' objections "do not warrant or justify the wholesale reduction of Plaintiffs' attorneys' fees by nearly 61%, nor are their proposed hourly rates for Plaintiffs' counsel consistent with the prevailing market rates in Palm Beach County." [DE 98, p. 1]. According to Plaintiffs, Defendants' objections to the fees and costs claimed are also largely without merit. *Id.* Plaintiffs also seek attorneys' fees for the litigation based on the attorneys' fees and costs issue. *Id.* at p. 18. In their Reply, Plaintiffs seek $631,736.25 in attorneys' fees and $30,644.39 in costs, for a total of $662,380.64. *Id.* at p. 21.

### III. DISCUSSION

#### A. Attorneys' Fees

##### 1. Attorneys' Fees Are Appropriate as Plaintiffs Are the Prevailing Party

There is no dispute that Plaintiffs are entitled to an award of attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b) (for a Section 1983 claim, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs"); pursuant to 42 U.S.C. § 12205 (for ADA claims, the court, in its discretion, "may allow the prevailing party, other than the United States, a reasonable attorney's fee, including litigation expenses, and costs, and the United States shall be liable for the foregoing the same as a private individual"); pursuant to 20 U.S.C. § 1415(i)(3)(B)(I) (for IDEA claims, the court, in its discretion, "may award reasonable attorneys' fees as part of the costs to a prevailing party who is the parent of a child with a disability"); and pursuant to 29 U.S.C. § 794a(b) (for Rehabilitation Act claims, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs").

The parties' settlement gives Plaintiffs prevailing party status because the settlement "yielded either an award by the court of at least some relief on the merits of his claim or the judicial imprimatur of a change in the legal relationship between the Plaintiff and the Defendants." *Madden v. Just Believe Recovery Ctr., LLC*, No. 2:18-CV-14446, 2019 WL 3282154, at *3 (S.D. Fla. July 16, 2019) (citing *Smalbein v. City of Daytona Beach*, 353 F.3d 901, 905 (11th Cir. 2003)). The settlement and the Court's approval of the settlement clearly meet the test for prevailing party status. Moreover, Defendants do not dispute that Plaintiffs are entitled to reasonable attorneys' fees and costs. Finally, in the Court's Final Order Approving Class-Action Settlement Agreement, Appointment of Class Counsel and Certification of Class [DE 86], the

4

Court explicitly retained jurisdiction to consider all further applications concerning attorneys' fees and costs. Thus, the only issue before the undersigned is the amount of the attorneys' fees and costs award.

## 2. Law Regarding Calculation of Attorneys' Fees

A reasonable attorneys' fee award is "properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Am. Civil Liberties Union v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999) (*quoting Blum v. Stenson*, 465 U.S. 886, 888 (1994)). This "lodestar" may then be adjusted for the results obtained by the attorney. *See Barnes*, 168 F.3d at 427 (*citing Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994)). "In determining what is a 'reasonable' hourly rate and what number of compensable hours is 'reasonable,' the court is to consider the 12 factors enumerated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)." *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008). These factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at 1350 n. 2 (citation omitted).

The reasonable hourly rate is defined as the "prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Barnes*, 168 F.3d at 436 (*quoting Norman v. Housing Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1999)). The fee applicant bears the burden of establishing the claimed

market rate. *See Barnes*, 168 F.3d at 427. The Court may use its own experience in assessing the reasonableness of attorneys' fees. *Norman*, 836 F.2d at 1299.

With regard to the type of evidence that the fee claimant should produce in support of a claim, in *Barnes*, the Eleventh Circuit has stated that

> [t]he "fee applicant bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates." *Norman*, 836 F.2d at 1303. That burden includes "supplying the court with specific and detailed evidence from which the court can determine the reasonable hourly rate. Further, fee counsel should have maintained records to show the time spent on the different claims, and the general subject matter of the time expenditures ought to be set out with sufficient particularity so that the district court can assess the time claimed for each activity . . . . A well-prepared fee petition also would include a summary, grouping the time entries by the nature of the activity or stage of the case." *Id.* (citations omitted).

168 F.3d at 427.

In submitting a request for attorneys' fees, fee applicants are required to exercise "billing judgment." *Barnes*, 168 F.3d at 428 (*quoting Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). If fee applicants do not exclude "excessive, redundant, or otherwise unnecessary" hours, which are hours "that would be unreasonable to bill to a client and therefore to one's adversary *irrespective of the skill, reputation or experience of counsel*," the court must exercise billing judgment for them. *See Barnes*, 168 F.3d at 428 (*quoting Norman*, 836 F.2d at 1301 (emphasis in original)). The burden rests on the movant to submit a request for fees that will enable the court to determine how much time was reasonably expended. *Loranger*, 10 F.3d at 782.

### 3. Plaintiffs' Request for a Blended Rate is Denied

Plaintiffs are seeking a blended hourly rate of $525 per hour for the work performed by all attorneys in this case. [DE 87, p. 16]. According to Plaintiffs, that blended hourly rate "takes into account the attorneys' respective experience levels, years in practice, specialized knowledge as to the salient issues, and customary market rates in the Southern District of Florida and Palm Beach

County in particular." *Id.*

Plaintiffs have provided the Declaration of Jack Scarola, Esq., to support the attorneys' rates requested. [DE 87-4]. Mr. Scarola opines that "Plaintiffs' counsel's proposed blended rates of $525 for counsel and $200 for paralegals is appropriate in this matter. These amounts are market, and not premium rates for Plaintiffs' counsel for the work performed in this case." *Id.* at p. 5. Mr. Scarola also states that "complex federal litigation in this district typically ranges from $500 to over $900 per hour, absent special circumstances such as pro bono representation.....[C]omplex federal litigation in this district typically ranges from $450 per hour to over $800." *Id.* According to Mr. Scarola, "[a]n hourly rate of even $525 is no longer a premium rate in the United States District Court for the Southern District of Florida, and is a very conservative blended rate relative to Plaintiffs' lawyers' experience and credentials." *Id.*

The Sheriff argues in response that Mr. Scarola's affidavit fails to offer useful evidence. [DE 92, p. 17]. The Sheriff maintains that "$525 is a staggering hourly rate, higher than is typically awarded in the South Florida market for non-class action civil rights lawsuits. Counsel provide no basis for such a high hourly rate for each attorney." *Id.* at p. 8. The Sheriff has filed the Declaration of Valentin Rodriguez, Esq. [DE 92-5] to support its position. After establishing his expertise, Mr. Rodriguez opines that, "the blended rate of $525 is not a fair calculation of how Plaintiffs' attorneys should be compensated." *Id.* at ¶ 23.

After careful review of the papers and in light of the Court's own experience, the Court rejects Plaintiffs' suggestion of applying a blended rate of $525 per hour to each attorney. *See TYR Tactical, LLC v. Productive Prod. Enter., LLC*, No. 15-CIV-61741, 2018 WL 3110799, at *10 (S.D. Fla. Apr. 11, 2018), *report and recommendation adopted sub nom. TYR Tactical, LLC v. Protective Prod. Enterprises, LLC*, No. 15-CV-61741, 2018 WL 3109624 (S.D. Fla. Apr. 30,

2018), *amended,* No. 15-CV-61741, 2018 WL 2672391 (S.D. Fla. June 5, 2018) (rejecting a blended rate of $525); *see also Hermosilla,* 2011 WL 9364952, at *12 (explaining that a $500-$600 hourly rate is "extraordinary" in South Florida market). The Court does not believe a blended rate is fair or appropriate in this case. A blended rate is especially inappropriate in a case like this one where the attorneys have very different levels of experience and very different levels of expertise in civil rights and class action litigation. The Court finds it more appropriate to determine the reasonable hourly rate for each attorney than to apply a blended rate. Even though this individual approach is more time-consuming and labor-intensive for the Court, it is, nonetheless, necessary to fairly determine a reasonable hourly rate for Plaintiffs' counsel. Thus, the Court will consider each attorney in turn.

### 4. **Plaintiffs' Counsels' Reasonable Hourly Rates**

Plaintiffs are represented by three law firms: Cohen Milstein, the Human Rights Defense Center, and the Legal Aid Society of Palm Beach County in this case. Each of the three entities separately billed for Plaintiffs' legal work, and each entity is separately discussed below.

### a. **Cohen Milstein Attorneys**

Theodore J. Leopold, Esq., of Cohen Milstein filed a Declaration [DE 87-3] to support Plaintiffs' Motion. Plaintiffs are seeking a blended rate of $525 per hour for Mr. Leopold, Diana L. Martin, Esq., and Adam J. Langino, Esq., while they are seeking a rate of $200 per hour for Tatum Whiddon, a paralegal at the firm. [DE 87, p. 16; DE 87-3, p. 6].

The Sheriff contends that Mr. Leopold's specialized knowledge and experience with class actions was "not needed" in this case. *Id.* at p. 14. The Sheriff also argues that Mr. Leopold's supervision of other attorneys was not required in this case because attorneys Duncan and Neelakanta were already supervising the attorneys. *Id.* at p. 14. In sum, the Sheriff asserts that Mr.

Leopold's specialized experience was not required for any of the tasks he carried out in this case. *Id.* at p. 15. The Sheriff also asserts that Mr. Langino was doing much of the same work as other attorneys in the case. *Id.* With regard to Ms. Martin, he argues that her specialized knowledge of class actions and appellate issues was unnecessary in this case. *Id.* at p. 16. The Sheriff maintains that Cohen Milstein has not provided proof of the hourly rate the attorneys bill a paying client or the hourly rate they have been awarded by any court. *Id.* According to the Sheriff, a more reasonable hourly rate for each of the Cohen Milstein attorneys is $295. *Id.* The Sheriff has filed the Declaration of Valentin Rodriguez, Esq. [DE 92-5], who opines that the appropriate hourly rate for Mr. Leopold, Mr. Langino, and Ms. Martin is $295 per hour, and the appropriate hourly rate for paralegal Whiddon is $100 per hour. *Id.* at ¶ 24.

In reply, Plaintiffs argue that Mr. Rodriguez's fee declaration makes broad conclusory opinions and "seeks to diminishes [sic] the value [sic] non-profit or legal aid lawyers can seek in civil rights actions." [DE 98, p. 14]. Plaintiffs contend that Mr. Leopold "provided strategic discretion and wise counsel based upon his many years litigating complex class actions that should be compensated at a rate consistent with his experience (which would reasonably exceed $800/hour)." *Id.* at p. 17. Plaintiffs also argue that attorneys Martin and Langino "have significant class action experience and worked to perfect Plaintiffs' action for class treatment from the initial stages of the litigation through its conclusion." *Id.* at pp. 17-18. Finally, with regard to paralegal Whiddon, Plaintiffs assert that an hourly rate of $200 per hour is consistent with other opinions in this district and that the Sheriff has provided no legal authority for his suggested rate of $100 per hour. *Id.* at p. 18.

The Court will now consider each of the three Cohen Milstein attorneys and the paralegal in turn.

**Mr. Leopold**

Mr. Leopold is a partner at Cohen Milstein and a member of the firm's Executive Committee. [DE 87-3, p. 2]. He has been practicing law for over 30 years and has tried complex lawsuits throughout the country. *Id.* Mr. Leopold has been consistently recognized by leading peer-reviewed publications. *Id.* He lectures frequently on various legal issues, has authored several legal publications, and has earned Florida Bar Civil Trial Certification. *Id.* Upon careful consideration of all of the relevant filings and based on its own independent experience, the Court finds that an hourly rate of $500 is reasonable for Mr. Leopold in this case. *See Tillman v. Advanced Pub. Safety, Inc.*, No. 15-CV-81782, 2018 WL 5768570, at *4 (S.D. Fla. Nov. 2, 2018), *report and recommendation adopted,* No. 15-81782-CIV, 2018 WL 6424899 (S.D. Fla. Nov. 21, 2018) (finding a rate of $500 reasonable for an attorney with over 30 years of experience); *Martin v. Creative Mgmt. Grp., Inc.*, No. 10-23159-CIV, 2014 WL 11804564, at *2 (S.D. Fla. Jan. 23, 2014); *Inspired Dev. Grp., LLC v. Inspired Prod. Grp., LLC*, No. 16-80076-CIV, 2018 WL 2460295, at *5 (S.D. Fla. Apr. 25, 2018), *report and recommendation adopted,* No. 9:16-CV-80076, 2018 WL 2446196 (S.D. Fla. May 31, 2018) (finding $500 per hour reasonable for lead counsel and partner who has practiced law for over 30 years).

**Mr. Langino**

Mr. Langino is of counsel at Cohen Milstein and is a member of the firm's Complex Tort Litigation practice group. [DE 87-3, p. 2]. He has tried more than 20 jury trial cases and has been consistently recognized by leading peer-reviewed publications. *Id.* at pp. 2-3. Mr. Langino is Martindale-Hubbell AV rated. *Id.* at p. 3. He has been practicing law for approximately 13 years. *Id.* at pp. 3, 52. Upon careful consideration of all of the relevant filings and based on its own independent experience, the Court finds that an hourly rate of $375 is reasonable for Mr. Langino

in this case.

**Ms. Martin**

Ms. Martin is of counsel at Cohen Milstein and is a member of the firm's Catastrophic Injury & Wrongful Death, Consumer Protection, Managed Care Abuse, and Unsafe & Defective Products practice groups. [DE 87-3, p. 3]. She focuses her practice on appellate litigation and trial support. *Id.* Ms. Martin has written numerous legal articles and has been recognized by leading peer-reviewed publications. *Id.* at pp. 4, 60-61. She has practiced law for approximately 17 years. *Id.* at p. 57. Upon careful consideration of all of the relevant filings and based on its own independent experience, the Court finds that an hourly rate of $400 is reasonable for Ms. Martin in this case.

**Ms. Whiddon**

Tatum Whiddon is a paralegal at Cohen Milstein and a member of the firm's Complex Trial Litigation practice group. [DE 87-3, p. 4]. Upon careful consideration of all of the relevant filings and based on its own independent experience, the Court finds that an hourly rate of $150 is reasonable for paralegal Whiddon in this case. *See Freestream Aircraft USA Ltd. v. Chowdry*, No. 16-CV-81232, 2017 WL 4785458, at *3 (S.D. Fla. Oct. 20, 2017) (finding a paralegal's hourly rate of $150 to be reasonable); *Brown Jordan International, Inc., v. Carmicle*, No. 14-60629-CV, 2017 WL 5633312, at *6 (S.D. Fla. Aug. 7, 2017), *report and recommendation adopted sub nom. Brown Jordan Int'l, Inc. v. Carmicle*, No. 0:14-CV-60629, 2017 WL 5632811 (S.D. Fla. Aug. 22, 2017) (reducing paralegal's hourly rate from $190.00 to $175.00); *HPC US Fund I, L.P. v. Wood*, 2016 WL 7636373, at *2 (S.D. Fla. Apr. 22, 2016) (reducing paralegal's hourly rate from $150 to $125).

### b. **The Human Rights Defense Center Attorneys**

Sabarish P. Neelakanta, Esq., filed a Declaration [DE 87-1] in support of Plaintiffs' Motion. According to the Declaration and to the Motion, Plaintiffs are seeking a blended rate of $525 per hour for Mr. Neelakanta, Daniel Marshall, Esq., and Masimba Mutamba, Esq., while they are seeking a rate of $200 per hour for Kathy Moses, a paralegal. [DE 87, p. 16; DE 87-1, p. 6, 10].

The Sheriff contends that Mr. Neelakanta, Mr. Marshall, and Mr. Massimba have failed to provide any proof of the hourly rate they have been awarded in the past. [DE 92, p. 11]. According to the Sheriff, he has discovered that Mr. Neelakanta was awarded a rate of $230 in a 2015 Eastern District of Virginia case. *Id.* The Sheriff has also identified cases where Mr. Neelakanta requested lower rates for himself and the other attorneys and paralegal, but the courts in those cases have not yet made a decision regarding fees. *Id.* at pp. 11-12. Most recently, in the April 2019 case of *Prison Legal News v. Inch*, Case No. 4:12-cv-239-MW/CAS (N.D. Fla.), Mr. Neelakanta sought an hourly rate of $425, Mr. Marshall sought an hourly rate of $375, and Mr. Mutamba sought an hourly rate of $295. *Id.* at p. 12. The Sheriff recommends that Mr. Neelkanta's rate be reduced to $400 per hour, Mr. Marshall's and Mr. Mutamba's rates be reduced to $295 per hour, and paralegal Moses' rate be reduced to $100 per hour. *Id.* at pp. 12-13.

The Sheriff has filed the Declaration of Valentin Rodriguez, Esq. [DE 92-5] to support its position. Mr. Rodriguez believes that the appropriate hourly rate for Mr. Neelakanta is $400 per hour, the appropriate hourly rate for Mr. Martin and Mr. Mutamba is $295 per hour, and the appropriate hourly rate for paralegal Moses is $100 per hour. *Id.* at ¶ 24.

In reply, Plaintiffs argue that Mr. Rodriguez's fee declaration should not be given consideration by the Court. [DE 98, p. 14]. Plaintiffs next argue that the three other cases in which the Human Rights Defense Center requested particular hourly rates "have no bearing on the

prevailing market rate that should be awarded in the Southern District of Florida. Indeed these fee petitions were predicated on the market rates unique to those jurisdictions." *Id.* at p. 16. Plaintiffs also point out that, while Mr. Neelakanta may have sought $425 per hour in *Prison Legal News v. Inch*, Plaintiffs "proffer that a blended rate of $525/hour as an average or middle point between the relative experience and contributions of the lawyers engaged in the case at bar is the better metric for determining the hourly rate." *Id.* Finally, Plaintiffs contend that the hourly rates recommendation in *Prison Legal News v. Inch* for Dan Marshall ($475.00/hour) and Masimba Mutama ($295/hour) are only instructive to the extent that the Court elects to forego the blended rate calculation. Other than Mr. Mutamba. these rates are still higher than Defendants' proposal." *Id.*

The Court notes that, out of all of the cases cited by the Sheriff, the only case that is from this Circuit and is particularly helpful in both temporal and geographical proximity is *Prison Legal News v. Inch*, which is attached to the Sheriff's Response as Exhibit D [DE 92-4]. In that case, on April 12, 2019, in the Northern District of Florida, the plaintiff sought an hourly rate of $425 for Mr. Neelakanta, $475 for Mr. Marshall, $295 for Mr. Mutamba, and $160 for paralegals. [DE 92-4, p. 15]. While there has been no Order ruling on the appropriate hourly rates at this point, it is beneficial for the Court to see the rates the attorneys requested on an individual basis int that case.

The Court will now consider each of the three Human Rights Defense Center attorneys and the paralegal in turn.

### Mr. Neelakanta

Mr. Neelakanta, the litigation director and general counsel for the Human Rights Defense Center, has been practicing law for 13 years. [DE 87-1, p. 2]. He has been lead counsel in civil rights cases in 15 states and almost exclusively focuses his practice on criminal, civil, and human

13

rights law. *Id.* Mr. Neelakanta is also an active member of several different legal committees and associations, speaks at CLE's, conferences and workshops concerning prisoner and civil rights litigation, and makes frequent media appearances on these issues. *Id.* Upon careful consideration of all of the relevant filings, based on the Court's own independent experience, and based on Mr. Neelakanta's relevant expertise, the Court finds that an hourly rate of $400 is reasonable for Mr. Neelakanta in this case.

### Mr. Marshall

Mr. Marshall is a staff attorney for the Human Rights Defense Center and has been practicing law for 17 years. [DE 87-1, p. 4]. Mr. Marshall is a board certified criminal trial law attorney and is a former public defender who served as both chief of the felony division and county court resource director. *Id.* Upon careful consideration of all of the relevant filings and based on the Court's own independent experience, the Court finds that an hourly rate of $400 is reasonable for Mr. Marshall in this case.

### Mr. Mutamba

Mr. Mutamba is a staff attorney for the Human Rights Defense Center. [DE 87-1, p. 5]. He has been practicing law since 2012 and previously worked at two civil law firms. *Id.* Upon careful consideration of all of the relevant filings and based on the Court's own independent experience, the Court finds that an hourly rate of $295 is reasonable for Mr. Mutamba in this case.

### Ms. Moses

Ms. Moses is the senior litigation paralegal with the Human Rights Defense Center. [DE 87-3, p. 5]. She holds a bachelor's degree in journalism and an associate's degree in paralegal studies. *Id.* Upon careful consideration of all of the relevant filings and based on the Court's own independent experience, the Court finds that an hourly rate of $150 is reasonable for Ms. Moses in

this case.

### c. Legal Aid Society Attorneys

Melissa Duncan, Esq., of the Legal Aid Society of Palm Beach County, Inc., filed a Declaration [DE 87-2] in support of Plaintiffs' Motion. According to the Declaration and to the Motion, Plaintiffs are seeking a blended rate of $525 per hour for Ms. Duncan and Danielle Capitini, Esq., while they are seeking a rate of $200 per hour for Tatum Coutee, a paralegal. [DE 87, p. 16; DE 87-2, p. 5].

The Sheriff contends that Ms. Duncan provided no proof of the hourly rate the Legal Aid attorneys have been awarded in the past. [DE 92, p. 13]. The Sheriff represents that, in a 2015 case against the Palm Beach County School Board, Ms. Duncan requested an hourly rate of $250, and paralegal Coutee requested an hourly rate of $95. *Id.* The Sheriff asserts that a more reasonable hourly rate for Ms. Duncan in this case is $350, and a reasonable hourly rate for paralegal Coutee in this case is $100. *Id.* The Sheriff argues that Ms. Capitini's tasks in this case were tasks that could have been completed by a paralegal and that Ms. Capitini has very little legal experience. *Id.* at pp. 13-14. According to the Sheriff, a more reasonable hourly rate for Ms. Capitini is $175, and "this is a generous hourly rate considering this was probably her first assignment as a licensed attorney, and she was clearly learning." *Id.* at p. 14.

The Sheriff has filed the Declaration of Valentin Rodriguez, Esq. [DE 92-5] to support his position. Mr. Rodriguez opines that the appropriate hourly rate for Ms. Duncan is $350, the appropriate hourly rate for Ms. Capitini is $175, and the appropriate hourly rate for paralegal Coutee is $100 per hour. *Id.* at ¶ 24.

In reply, Plaintiffs argue that a 2015 settlement letter does not actually establish that Ms. Duncan's market rate as $250 per hour. [DE 98, p. 17]. According to Plaintiffs, "Duncan's relative

experience and expertise in education law and the lead role she assumed in this case should, at the very least, suggest an hourly rate analogous to attorney Neelakanta." *Id.* Plaintiffs also contend that $175 per hour is an unreasonably low market rate for Ms. Capitini and that she is entitled to a rate of at least $225 per hour even as a first-year lawyer. *Id.*

The Court will consider each Legal Aid Society attorney in turn.

### Ms. Duncan

Ms. Duncan is the supervising attorney of the Education Advocacy Project of the Legal Aid Society of Palm Beach County, Inc. [DE 87-2, p. 1]. She has been practicing law for 15 years and has worked for the Legal Aid Society for more than 14 years. *Id.* at p. 2. Her practice focuses on children's rights law, including juvenile delinquency and dependency, as well as education law. *Id.* Ms. Duncan is a regular speaker at legal events regarding children's law and education. *Id.* Upon careful consideration of all of the relevant filings, based on the Court's own independent experience, and based on Ms. Duncan's relevant expertise, the Court finds that an hourly rate of $400 is reasonable for Ms. Duncan in this case.

### Ms. Capitini

Ms. Capitini is a staff attorney for the Legal Aid Society. [DE 87-2, p. 3]. She was admitted to the Florida Bar in 2018. *Id.* Upon careful consideration of all of the relevant filings and based on the Court's own independent experience, the Court finds that an hourly rate of $200 is reasonable for Ms. Capitini in this case.

### Ms. Coutee

Tatum Coutee is a paralegal at the Legal Aid Society. [DE 87-2, p. 4]. She holds a bachelor's degree in English and has over 15 years of experience as a paralegal, with a focus in family, juvenile and education cases. *Id.* Upon careful consideration of all of the relevant filings

and based on the Court's own independent experience, the Court finds that an hourly rate of $150 is reasonable for paralegal Coutee in this case.

### 5.   Number of Hours Reasonably Expended

The Sheriff has reviewed every time entry from each of Plaintiffs' attorneys and paralegals, specifically stated his objections, and explained his objections. [DE 92, Ex. G-Q]. He argues that many of the hours sought are excessive, redundant, and/or unnecessary. [DE 92, p. 21]. More specifically, the Sheriff argues that multiple attorneys should not have billed for attending depositions and meetings with juveniles at the jail or for completing the same projects without describing their specific contributions. *Id.* at pp. 22-27. He also contends that the attorneys billed excessively for email exchanges and conferences. *Id.* at pp. 27-28. According to the Sheriff, many of the time entries contain vague entries and block billing. *Id.* at pp. 28-29. He also maintains that Plaintiffs cannot recover for the time their attorneys billed communicating with potential clients before the first retainer was signed on or about January 29, 2018. *Id.* at pp. 29-31. Next, the Sheriff asserts that Plaintiffs cannot recover attorneys' fees for hours spent on clerical and secretarial tasks. *Id.* at pp. 31-32.

In their Reply, Plaintiffs first argue that an across-the-board reduction, rather than an hour-by-hour review, is appropriate in a case such as this one. [DE 98, p. 5]. They have categorized the Sheriff's specific objections and provided responses to each in Exhibits 1-3. *Id.* at pp. 5-6. According to Plaintiffs, pre-suit activities that are litigation-related are recoverable. *Id.* at p. 6. Next, they argue that they are entitled to attorneys' fees for work that is reasonable, necessary, and non-duplicative, and the fact that multiple attorneys worked on this case does not matter as long as they were not unreasonably doing the same work. *Id.* at p. 7. Plaintiffs contend that attendance by multiple attorneys at the depositions and meetings with juveniles was necessary and that it was

necessary and reasonable for multiple attorneys to contribute to the same projects. *Id.* at pp. 7-10. They also argue that the internal email exchanges and conferences related to litigation strategy, experts, and discovery, or to discussions with other attorneys engaged in similar litigation, and, thus, the hours billed for the emails and conferences are reasonable and recoverable. *Id.* at pp. 10-11. Plaintiffs repeatedly emphasize that they have already cut their hours by 10% to account for any deficiencies. *Id.* at p. 11. Finally, Plaintiffs assert that their attorneys' time entries are neither vague nor excessive and that their attorneys' 10% billing judgment sufficiently accounts for any clerical or administrative tasks. *Id.* at pp. 11-12.

### a. Revisions to Attorneys' Fees Requested by Plaintiffs

In the exhibits to Plaintiffs' Reply, Plaintiffs have modified the attorneys' fees they are seeking. They have both reduced some of the hours sought based on Plaintiffs' objections and also added additional time for reviewing Plaintiffs' objections, drafting the responses to the objections, drafting the Reply, and communicating with co-counsel. Thus, the Human Rights Defense Center is now claiming 594.15 attorney hours and 28.10 paralegal hours [DE 98-1, p. 3], the Legal Aid Society of Palm Beach County is now claiming 430.40 attorney hours and 29.80 paralegal hours [DE 98-2, p. 3], and Cohen Milstein is now claiming 264.50 attorney hours and 68.25 paralegal hours [DE 98-3, p. 3].

### b. The Court's Findings as to the Number of Hours Reasonably Expended

In order to determine the reasonable number of hours expended by Plaintiffs' counsel, the Court has carefully reviewed the parties' arguments, the Sheriff's objections to the time entries [DEs 92-7, 92-8, 92-9, 92-10, 92-11, 92-12, 92-13, 92-14, 92-15, 92-16, and 92-17], and Plaintiffs' responses to the objections [DEs 98-1, 98-2, and 98-3]. The Court will address each of the general categories of objections in turn.

First, it does appear that, in their annotated billing entries attached to their Reply, Plaintiffs have resolved the objections to clerical tasks, block billing, and vague billing entries. Plaintiffs have voluntarily cut their time and/or have provided further detail for these entries.

Second, the Sheriff is "correct that time spent 'looking for and soliciting potential plaintiffs' is not compensable. *Barnes*, 168 F.3d at 436. In contrast, time spent before the formal commencement of litigation, on matters such as attorney-client interviews and investigation of the case, is compensable." *Flores v. Lofts Town Villas Condo. Ass'n, Inc.*, No. 17-20368-CIV, 2017 WL 7792712, at *3 (S.D. Fla. Sept. 1, 2017), *report and recommendation adopted,* No. 1:17-CV-20368-KMM, 2017 WL 7796111 (S.D. Fla. Sept. 26, 2017) (citing *Webb v. Bd. of Educ.*, 471 U.S. 234, 250 (1985). The Court notes that there appears to be a mix of compensable and non-compensable pre-litigation activities listed in the attorney billing entries. It is impossible to the Court to discern into which category some of the billing entries fall. For example, on November 11, 2017, Mr. Neelakanta billed for "[e]mails to and from MD re: Potential juvenile plaintiffs represented by PBC public defender's office." [DE 98-1, p. 9]. Similarly, on December 13, 2017, he billed for "[m]eeting with potential plaintiffs at PBC jail re: juveniles." *Id.* at p. 12. The other attorneys in the case similarly billed for meeting with prospective plaintiffs. *See, e.g.*, DE 98-2, p. 10.

Third, while the Court will not reduce the hours billed solely on the basis that multiple timekeepers were involved, the multiple timekeepers are problematic to the extent they appeared to have performed duplicative or excessive work. *See Tillman v. Advanced Pub. Safety, Inc.*, No. 15-CV-81782, 2018 WL 5768570, at *7 (S.D. Fla. Nov. 2, 2018), *report and recommendation adopted,* No. 15-81782-CIV, 2018 WL 6424899 (S.D. Fla. Nov. 21, 2018). This issue of duplicative or excessive hours is the most prolific problem in the billing records. *See, e.g.*,

DE 98-1, p. 18; DE 98-1, p. 23; DE 98-2, p. 19; DE 98-2, p. 25; DE 98-3, p. 8; DE 98-3, p. 25.

Having considered each of the deficiencies in the billing records and Plaintiffs' voluntary reduction of some of the hours, the Court still finds it necessary to reduce the number of hours billed. "When a district court finds the number of hours claimed is unreasonably high, the court has two choices; it may conduct an hour-by-hour analysis or it may reduce the requested hours with an across-the-board cut." *Bivins*, 548 F.3d at 1350 (citing *Loranger*, 10 F.3d at 783). "[T]rial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Fox v. Vice*, 563 U.S. 826, 838 (2011) (citing Hensley, 461 U.S. at 437). Here, the Court rejects Plaintiffs' suggestion that the billable hours be cut by 10%. The Court also rejects Defendant's position that Plaintiffs' billable hours should be cut by 50%. Instead, the Court finds it appropriate to reduce Plaintiffs' counsels' hours with an across-the-board cut and reduce the hours by 20%.

### 6. Calculation of Attorneys' Fees Award

In the below chart, the Court has reduced each timekeeper's hours by 20%[1]. The Court has also reduced each hourly rate, as discussed above.

| Timekeeper | Hourly Rate | Hours Recoverable | Recoverable Fees |
|---|---|---|---|
| Sabarish Neelakanta | $400 | 414.4 (20% of 518) | $165,760.00 |
| Masimba Mutamba | $295 | 11.4 (20% of 14.25) | $3,363.00 |

---

[1] For each timekeeper, the Court is reducing the "revised hours based on Defendants' objections" listed by Plaintiffs in the attachments to their Reply [DEs 98-1, 982, and 98-3]. The Court is also reducing by 20% the additional hours spent reviewing the Sheriff's objections, drafting the reply brief, drafting the responses to the objections, and communicating with co-counsel. *Id.*

| | | | |
|---|---|---|---|
| Dan Marshall | $400 | 9.52 (20% of 11.90) | $3,808.00 |
| Kathy Moses | $150 | 19.28 (20% of 24.10) | $2,892.00 |
| Melissa Duncan | $400 | 316.76 (20% of 395.95) | $126,704.00 |
| Danielle Capitini | $200 | 18 (20% of 22.50) | $3,600.00 |
| Tatum Coutee | $150 | 17.28 (20% of 21.60) | $2,592.00 |
| Theodore Leopold | $500 | 20.2 (20% off 25.25) | $10,100.00 |
| Diana Martin | $400 | 126.8 (20% of 158.5) | $50,720.00 |
| Adam Langino | $375 | 38.4 (20% of 48) | $14,400.00 |
| Tatum Whiddon | $150 | 46.8 (20% of 58.50) | $7,020.00 |
| **TOTAL** | | | $390,959.00 |

## B. Costs

In their Motion, Plaintiffs seek costs in the amount of $39,296.78 for travel expenses, filing and service fees, legal research, depositions, printing, and expert witness fees. [DE 87, p. 21]. Plaintiffs are seeking those costs under section 1988 and section 12205 of the ADA. *Id.* In their Reply, Plaintiffs concede that their taxable costs in the amount of $8,668.77 are procedurally time-barred. [DE 98, p. 19]. They are still seeking non-taxable costs and litigation expenses in the amount of $28,198.44. *Id.* at p. 21.

Section 1988 provides: "[i]n any action or proceeding to enforce a provision of [Section 1981] ... the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). More importantly, 42 U.S.C. § 12205 "permits a prevailing party in an ADA action to recover its attorney's fees, costs, and litigation expenses." *Kennedy v. Bonom Enterprises, Inc.*, No. 18-CV-62175, 2019 WL 1429513, at *1–2 (S.D. Fla. Mar. 29, 2019); *see also* 42 U.S.C. § 12205. Specifically, § 12205 provides:

In any action or administrative proceeding commenced pursuant to this chapter, the court or agency, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee, including litigation expenses, and costs, and the United States shall be liable for the foregoing the same as a private individual.

It appears based on the filings that the parties ultimately primarily rely on the ADA statute in their arguments regarding costs.

Here, Plaintiffs entered into a settlement with Defendants. Thus, Plaintiffs are the prevailing party. *See Am. Disability Ass'n, Inc. v. Chmielarz*, 289 F.3d 1315, 1321 (11th Cir. 2002). The Sheriff does not seem to dispute Plaintiffs entitlement to non-taxable costs and litigation expenses pursuant to section 12205, but rather he disputes the amount of those costs and expenses. [DE 92, p. 35]. He does not object to $133.31 of the costs, however. *Id.*

### 1. Costs for Video-Recording, Deposition Exhibits, and Duplication Costs

Plaintiffs are seeking $2,097.55 in deposition video-recording fees and $348.40 in deposition exhibits and duplication costs. [DE 98, p. 19]. The Sheriff objects to these costs as untimely because he believes they fall within taxable costs under 19 U.S.C. § 1920, and, as explained above, the parties agree that any taxable costs are procedurally time-barred. [DE 92, pp. 33-35]. Plaintiffs argue that these costs are non-taxable because they are "extras" that are generally not taxable. [DE 98, p. 19].

"[T]he extra services provided by the stenographer are recoverable as non-taxable costs under the SCA." *Brown Jordan Int'l, Inc. v. Carmicle*, No. 14-60629-CV, 2017,WL 5633312, at *8 (S.D. Fla. Aug. 7, 2017), *report and recommendation adopted*, No. 0:14-CV-60629, 2017 WL 5632811 (S.D. Fla. Aug. 22, 2017) (citing *Cho v. Koam Med. Servs. P.C.*, 524 F. Supp. 2d 202, 212 (E.D.N.Y. 2007) (where plaintiff prevailed on federal statute that provided for recovery of non-taxable costs, court awarded combined taxable and non-taxable costs for courier services,

reproduction, telephone, facsimile, postage, deposition services, deposition/hearing transcripts, and database legal services); *see also BVS Acquisition Co., LLC v. Brown,* 2015 WL 12921971, at *9 (S.D. Fla. Aug. 5, 2015) (court awarded as non-taxable costs those expenses that were not recoverable as taxable costs under § 1920). In light of the relevant case law, the Court finds it appropriate to award Plaintiffs the $348.40 incurred by their counsel for deposition exhibits and outside duplicating as non-taxable expenses.

With regard to the $2,097.55 in deposition video-recording fees, the relevant law is "[i]n order for a video deposition to be taxable[,] the prevailing party must show why it was necessary to have both a video deposition and a transcribed deposition for use in the case." *Ow Buland v. NCL (Bahamas) Ltd.,* No. 17-24167-CIV, 2019 WL 2254829, at *2 (S.D. Fla. Apr. 29, 2019), *report and recommendation adopted,* No. 17-CV-24167-PCH, 2019 WL 2254703 (S.D. Fla. May 20, 2019); *see also George v. Fla. Dep't of Corrections,* No. 07-80019-CIV, 2008 WL 2571348, at *7 (S.D. Fla. May 23, 2008) (citation omitted). In this particular case, where Plaintiffs initially claimed both transcription fees and video deposition court reporter fees as costs in their Motion, Plaintiffs articulated no basis for claiming both sets of fees. Plaintiffs later conceded that they are no longer entitled to recover for the transcript costs because their request was untimely. [DE 98, pp. 18-19]. In light of the foregoing, the Court does find that the video court reporter fees are non-taxable costs that Plaintiffs can recover. Therefore, the Court will award Plaintiffs the $2,097.55 in deposition video-recording costs. No transcription fees shall be awarded.

### 2. Costs for Research

The Sheriff contends that the $453.70 in research costs sought by Cohen Milstein are non-compensable and that there is no evidence that the legal research was conducted in reference to the ADA claim. [DE 92, p. 36]. Plaintiffs argue that computerized legal research costs are

recoverable and that they have provided specific invoices, as required. [DE 98, p. 20]. "The Court has discretion to determine whether the cost of online legal research should be recoverable." *Rubenstein v. Fla. Bar*, No. 14-CV-20786, 2015 WL 1470633, at *7 (S.D. Fla. Mar. 31, 2015), *report and recommendation adopted,* No. 14-CIV-20786, 2015 WL 11216722 (S.D. Fla. Apr. 22, 2015); *Golf Clubs Away v. Hostaway Corp.,* 2012 WL 2912709, *6 (S.D. Fla. July 16, 2012). The Court finds that, in this case, Plaintiffs have not provided sufficient explanation for the necessity or reasonableness of the research and have failed to establish any link between the legal research and the ADA claim. Therefore, the Court will deny the cost.

### 3. Fees for Travel Agent

The Sheriff objects to the $50 in fees for use of a travel agent "as totally unnecessary and utterly unreasonable to pass on to the Defendant." [DE 92, p. 36]. In their Reply, Plaintiffs agree to exclude this cost. [DE 98, p. 21]. Therefore, the Court will not award the $50 cost.

### 4. Travel Time for Attorney Martin

The Sheriff objects to Diana Martin's request for reimbursement for $14.28 in costs she incurred for travel to and from a status conference on November 30th. [DE 92, p. 36]. According to the Sheriff, no status conference took place on that date. *Id.* It is clear to the Court that Ms. Martin's travel expenses were incurred traveling to the November 28, 2018 status conference. The Court finds that $14.28 in costs should be awarded to Plaintiff.

### 5. Cost of Meals Served at Settlement Conference

The Sheriff argues that Cohen Milstein cannot obtain reimbursement for $244.32 in costs for providing lunch at the settlement conference because meals are not compensable and the cost is "completely unreasonable." [DE 92, p. 37]. According to Plaintiffs, they did not request that lunch be provided. *Id.* In their Reply, Plaintiffs agree to exclude this cost. [DE 98, p. 21]. Therefore, the

Court will not award the $244.32 cost.

## 6.  **Expert Witness Fees**

Plaintiffs are seeking reimbursement for a $6,842.40 expert fee for Mr. Leander Parker and a $20,288.59 expert fee for Dr. Louis Kraus. [DE 92, p. 37]. According to the Sheriff, the fees have not been shown to be related to the ADA cause of action and are unreasonable. *Id.* The Sheriff submits that, to the extent the Court decides against totally excluding the fees, the "expert fees should be divided by 7, as the cause of action under Title II of the ADA represents one of the 7 causes of action brought by the Plaintiffs." *Id.* at p. 28.

Plaintiffs argue that the expert witness fees are fully recoverable under the Americans with Disabilities Act and that they have provided invoices for both of their experts. [DE 98, p. 20]. According to Plaintiffs, "Dr. Kraus provided invaluable testimony and expertise on the impact of solitary confinement policies and denial of special education services to disabled children," while Warden Leander Parker "provided insight into operational and policy considerations within the Jail concerning accommodations that can or should have been in placed for dealing with children with disabilities." *Id.* In sum, Plaintiffs assert that both experts provided testimony "directly applicable to the disabled children housed at the Jail and how Defendants' policies and practices ran afoul of the ADA." *Id.* at p. 21. Furthermore, according to Plaintiffs, there is "no legal authority supporting Defendants [sic] claim that the expert fees should be parsed or divided by seven representing each cause of action. To the contrary, such parsing have [sic] been strictly precluded." *Id.*

"A prevailing ADA plaintiff may recover expert fees as a litigation expense." *Hansen v. Deercreek Plaza, LLC*, 420 F. Supp. 2d 1346, 1353 (S.D. Fla. 2006) (citing *Lovell v. Chandler*, 303 F.3d 1039, 1058 (9th Cir. 2002)); *see also Sierra v. JRF, Inc.*, No. 16-62111-CIV,

2017 WL 1929961, at *2 (S.D. Fla. Jan. 9, 2017). "A court may reduce an expert's fee, however, where the fee is excessive." *Access 4 All, Inc. v. Atl. Hotel Condo. Ass'n, Inc.*, No. 04-61740-CIV, 2006 WL 8431482, at *7 (S.D. Fla. Apr. 27, 2006) (citing *Access for the Disabled, Inc., v. CSM Props. P'ship.*, 2005 WL 1528662, *2 (M.D. Fla. June 25, 2005)). Here, the Court finds that Plaintiffs have established that the two expert witnesses were relevant to Plaintiffs' ADA claim. The Court also agrees with Plaintiffs that the Sheriff has cited no authority to support his assertion that the expert witness fees should be divided by seven.

The Court has also reviewed the costs incurred by Plaintiffs for Leander Parker. [DE 87-3, p. 126]. Mr. Parker billed at a rate of $137.50 and billed a total of 29.8 hours for tasks including reviewing documents, taking a jail tour, participating in interviews, attending deposition, and participating in conference calls. *Id.* He also charged for his travel. *Id.* at pp. 126, 154-165. The Court finds that the $6,842.40 in expert fees incurred by Plaintiffs for Mr. Leander Parker to be reasonable.

Dr. Louis Kraus charged $15,000 ($5,000 per day for three days) for three full days assisting with the consent decree and conducting interviews in Florida. [DE 87-3, pp. 136, 139]. When he billed on an hourly basis, Dr. Kraus billed at a rate of $400. *Id.* at p. 139. He billed 8.75 hours for document review, phone consultations, and document preparation. *Id.* Dr. Kraus also charged for his travel to Florida. [DE 87-3, pp. 136, 139]. The Court finds that the $20,288.59 in expert fees incurred by Plaintiffs for Dr. Kraus to be reasonable.

### 7. <u>Total Award of Costs</u>

The Court will award Plaintiffs the following costs: $133.31 in un-objected to expenses, $348.40 for deposition exhibits and outside duplicating, $2,097.55 in deposition video-recording fees, $14.28 in costs for attorney Martin's travel, $6,842.40 in expert fees for Leander Parker, and

the $20,288.59 in expert fees for Dr. Kraus. The total costs award is $29,724.53.

## C. Post-judgment Interest

Plaintiffs are statutorily entitled to post-judgment interest pursuant to 28 U.S.C. § 1961, "which provides for interest on any money judgment recovered in district court in a civil case." *Great Lakes Ins. SE v. Aarvik*, No. 18-CV-60705, 2019 WL 2245332, at *5 (S.D. Fla. Mar. 14, 2019), *report and recommendation adopted*, No. 18-CV-60705, 2019 WL 2245146 (S.D. Fla. Mar. 29, 2019). The Supreme Court and the Eleventh Circuit have explained, "[w]hen a district court taxes costs against a losing party, the award of costs bears interest from the date of the original judgment." *BankAtlantic v. Blythe Eastman Paine Webber, Inc.*, 12 F.3d 1045, 1052 (11th Cir. 1994) (*citing Georgia Ass'n of Retarded Citizens v. McDaniel*, 855 F.2d 794, 799 (11th Cir. 1988)). Pursuant to section 1961(a), courts determine the post-judgment interest by looking to the "weekly average 1–year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding[ ] the date of the judgment." 28 U.S.C. § 1961(a); *see also BankAtlantic*, 12 F.3d at 1052; *U.S. S.E.C. v. Carrillo*, 325 F.3d 1268, 1271 (11th Cir. 2003). Plaintiffs shall, therefore, be awarded post-judgment interest when the Court enters a judgment on attorneys' fees and costs.

## D. Further Briefing on Apportionment

The School Board has requested that it be permitted to address the issue of apportionment between the Sheriff and the School Board after the Court ruled on the reasonableness of the attorneys' fees and costs. [DE 93, pp.1-2]. The Court will provide Plaintiffs, the Sheriff, and the School Board the opportunity to confer on the apportionment issue and then file a joint notice stating each party's position. The joint notice shall be filed on or before **October 24, 2019**.

# IV.  CONCLUSION

This is a case where all parties were represented by excellent, ethical, and professional counsel. The Court appreciates the efforts and hard work of all counsel in this important case. Plaintiffs' Motion sought $606,526.00 in attorneys' fees, along with $39,296.78 in costs, for a total amount sought of $645,822.78. [DE 87, p. 7]. The Sheriff's Response, which was joined and adopted by the School Board, asserts that Plaintiffs should be awarded $260,690.50 in attorneys' fees and $131.33 in costs, for a total amount of $260,821.83. [DE 92, p. 39]. Then, in Plaintiffs' Reply, Plaintiffs increased the award sought to $631,736.25 in attorneys' fees and $30,644.39 in costs, for a total of $662,380.64. The Court disagrees with both parties' positions. Plaintiffs seek too much, and the Sheriff suggests too little.

After very carefully considering the parties' papers, the applicable law, the Court's own experience, and the entire docket in this case, the Court finds that Plaintiffs are entitled to attorneys' fees in the amount of $390,959.00 and costs in the amount of $29,724.53, for a total award of $420,683.53. In reaching its award of attorneys' fees and costs in this case, the Court has endeavored to be fair to all parties and their counsel in determining a reasonable award of attorneys' fees and costs.

In light of the foregoing, the Court **ORDERS** as follows:

1.  Plaintiffs' Verified Motion for Attorneys' Fees and Costs [DE 87] is **GRANTED IN PART AND DENIED IN PART.**

2.  Plaintiffs, H.C., a minor, but and through his parent and natural guardian, Jenny C.; M.F., a minor, by and through his parent and natural guardian, Asisa Rolle; and T.M., by and through his parent and natural guardian, Jessica Joiner shall be awarded their attorneys' fees in the amount of $390,959.00 and costs in the amount of $29,724.53, for

28

a total award of $420,683.53, against Defendant Rick Bradshaw, Palm Beach County Sheriff and Defendant School Board of Palm Beach County.

3.  The parties shall file a Joint Notice on or before **October 24, 2019**, stating their positions on apportionment of the attorneys' fees and costs between the two Defendants.

4.  Thereafter, the Court will enter a judgment as to attorneys' fees and costs.

**DONE and ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this _10_ day of October, 2019.

WILLIAM MATTHEWMAN
United States Magistrate Judge